1  LAW OFFICE OF KURT DAVID HERMANSEN          FILED
   Kurt David Hermansen, Cal. Bar No. 166349
2  110 West C Street, Suite 1810               2008 MAR 12  AM 10: 40
   San Diego, California 92101-3909
3  Telephone:    (619) 236-8300                CLERK US DISTRICT COURT
   Facsimile:    (619) 236-8400                SOUTHERN DISTRICT OF CALIFORNIA
4  KDH@KurtDavidHermansen.com                  RM
                                               _____DEPUTY
5  Attorney for Petitioner
   ERNESTO RIVAS LOPEZ

| 2254 | 1983 |
| FILING FEE PAID | |
| Yes | No |
| H&P MOTION FILED | |
| Yes | No |
| COPIES SENT TO | |
| Court | ProSe |

6

7

8                 UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11
   ERNESTO RIVAS LOPEZ,                )   Case No. '08 CV 0 457 LAB AJB
12                                      )
              Petitioner,               )
13                                      )
   v.                                   )   MEMORANDUM OF
14                                      )   POINTS AND AUTHORITIES
                                        )   IN SUPPORT OF PETITION
15 MACK JENKINS, Chief Probation Officer, )  FOR WRIT OF HABEAS CORPUS
   San Diego County Probation Department, ) PURSUANT TO 28 U.S.C. § 2254
16                                      )
              Respondent,               )
17                                      )
   and                                  )
18                                      )
   EDMUND  G.  BROWN  JR.,  Attorney    )
19 General of the State of California,  )
                                        )
20            Additional Respondent.    )
                                        )
21                                      )

22

23      Petitioner ERNESTO RIVAS LOPEZ, by and through his attorney Kurt David

24 Hermansen, hereby submits this memorandum of points and authorities in support of his petition

25 for habeas corpus pursuant to 28 U.S.C. § 2254.

26

27

28



1  I.    **STANDARD OF REVIEW**

2        Habeas relief is granted to a person in state custody where the state court's decision "was

3  contrary to, or involved an unreasonable application of" clearly established United States

4  Supreme Court precedent, 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determina-

5  tion of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C.

6  § 2254(d)(2).  According to the Supreme Court's interpretation of § 2254(d)(1), a state court

7  decision involves an "unreasonable application of" Supreme Court precedent "if the state court

8  identifies the correct governing legal principle," but applies that principle in an "objectively un-

9  reasonable" manner. *Williams v. Taylor*, 529 U.S. 362, 409, 412, (2000); *see also Sarausad v.*

10 *Porter*, 479 F.3d 671, 676-77 (9th Cir. 2007).  Although a state court's decision must be judged

11 by the standard of "clearly established Federal law, as determined by the Supreme Court of the

12 United States," 28 U.S.C. § 2254(d)(1), Ninth Circuit precedent is "persuasive authority for pur-

13 poses of determining whether a particular state court decision is an 'unreasonable application'

14 of Supreme Court law," and for determining "what law is 'clearly established.'" *Duhaime v.*

15 *DuCharme*, 200 F.3d 597, 600 (9th Cir. 1999) (quoting § 2254(d)); *see also Robinson v. Ignacio*,

16 360 F.3d 1044, 1056 (9th Cir. 2004) (Supreme Court has "explicitly refused to limit" authority

17 of federal courts to interpret and apply Supreme Court doctrine).

18       When a petitioner challenges a state court's decision as "based on an unreasonable deter-

19 mination of the facts," a federal court will presume the state court's factual findings to be true,

20 and the petitioner must rebut that "presumption of correctness by clear and convincing

21 evidence." 28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

22       However, § 2254(e)(1)'s burden does not fall on the petitioner unless the state court's

23 factual determination was reasonable. *See Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004);

24 RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE

25 pp. 920-21 (5th ed. 2005) [hereinafter HERTZ & LIEBMAN] ("The 'determination[s] of a factual

26 issue made by a State court' that section 2254(e)(1) tells courts to 'presume[ ] to be correct' are

27 only those determinations that survive section 2254(d)(2)'s winnowing out of '*unreasonable*

28 *determination[s]*.'").

1    Here, § 2254(e)'s presumption of correctness does not apply because the state court

2 determination was made without the benefit of an evidentiary hearing where such a hearing was

3 required based on a material issues of fact contained in dueling declarations of counsel. Where

4 a state court did not hold an evidentiary hearing, and the facts could not properly be found

5 without a hearing, there is no presumption of correctness due state court factual determinations.

6 HERTZ & LIEBMAN § 20.3c & n.29. Accordingly, an evidentiary hearing must be held here. *Id.*

7 *See also Greene v. Georgia*, 519 U.S. 145 (1996) (per curiam); *Weaver v. Thompson*, 197 F.3d

8 359, 363 (9th Cir. 1999) (finding the state court determinations of fact were not entitled to

9 deference because there was not judicial procedure (such as live testimony) employed to ensure

10 accuracy); *Zilich v. Reid*, 36 F.3d 317, 322-23 (3d Cir. 1994) (holding that an evidentiary hearing

11 was needed because factual disputes turn on credibility which can only be determined based on

12 live testimony). Moreover, especially in the context of an ineffective assistance of counsel

13 claim, an evidentiary hearing is needed because such claims present mixed questions of law and

14 fact. *See* HERTZ & LIEBMAN § 20.3d & n.52.

15    In considering a habeas petition, a federal court reviews the "last reasoned decision" by

16 a state court. *Robinson v. Ignacio*, 360 F.3d at 1055. The last reasoned decision of the state

17 court is the California Court of Appeal's order of March 13, 2007, rejecting Mr. Lopez's state

18 habeas petition. [Exhibit O.]

19 **II.    MR. LOPEZ WAS DENIED HIS SIXTH AMENDMENT RIGHT TO COUNSEL**

20    **WHEN TRIAL COUNSEL FAILED TO ADVISE HIM OF AVAILABLE PLEAS**

21    **TO NON-AGGRAVATED FELONIES (GROUND ONE).**

22    **A.    Deficient Performance**

23    A defendant in a state criminal matter is entitled, under the Sixth and Fourteenth

24 Amendments to the United States Constitution, to the effective assistance of counsel. *Strickland*

25 *v. Washington* (1984) 466 U.S. 668. Reasonableness is measured under "prevailing professional

26 norms." *Id.* at 688. The *Strickland* standard of effective assistance applies in the context of plea

27 negotiations. *Wright v. Van Patten*, __ U.S. __, __, 128 S. Ct. 743, 745 (2008). Both state and

28 federal courts have recognized that an attorney has a duty to inform his or her client about the

1 | immigration consequences of a criminal conviction. *E.g.*, *INS v. St. Cyr*, 533 U.S. 289, 323
2 | (2001); *Magana-Pizano v. INS*, 200 F.3d 603, 612 (9th Cir. 1999) (it is "a violation of an
3 | attorney's professional duty to his client not to advise him of the immigration consequences of
4 | a plea or conviction"); *People v. Bautista*, 8 Cal. Rptr. 3d 862 (Cal. Ct. App. 2004); *People v.*
5 | *Soriano*, 240 Cal. Rptr. 328, 337 (Cal. Ct. App. 1987).

6 |      Trial counsel's failure to investigate, pursue, and advise Mr. Lopez about possible plea
7 | dispositions that would not include aggravated felonies under federal immigration law, and thus
8 | would not trigger Mr. Lopez's mandatory deportation, was objectively unreasonable. On
9 | January 27, 2004 — eleven months before Mr. Lopez was even arrested — the California Court
10 | of Appeal published its decision in *People v. Bautista*, which held that just such a failure could
11 | constitute ineffective assistance. In *Bautista*, trial counsel failed to advise the defendant Bautista
12 | that the charge against him — possession of marijuana for sale (Health & Safety Code section
13 | 11359) — was an "aggravated felony" under federal law, and that deportation and exclusion
14 | from readmission was mandatory for an alien convicted of an aggravated felony. *Bautista*, 8 Cal.
15 | Rptr. 3d at 868-70; *see also* 8 U.S.C. § 1101(a)(43)(B)); 8 U.S.C. § 1227(a)(2)(A)(iii).) Trial
16 | counsel did not advise Bautista — because counsel did not know — that it was possible to
17 | "pursue a negotiated plea for violation of a greater but non-aggravated offense such as sale,
18 | transport, or offer to sell or transport," such as California Health & Safety Code section 11360.
19 | *Id.* at 868-69. The state appellate court held that this failure to advise could have constituted
20 | prejudicial ineffective assistance and ordered an evidentiary hearing. *Id.* at 872. The Court
21 | noted that defense attorneys have a duty to discuss with non-citizen clients different ways of
22 | avoiding an "aggravated felony" conviction, and specifically noted that trial counsel could have
23 | offered to plead to a different but related offense, or offered to "plead up" to a non-aggravated
24 | felony, even if the penalty was stiffer. *Id.* at 871-72.

25 |      "A defendant should be able to make 'informed decisions' after 'meaningful consultation
26 | with his attorney about pleas [and trial strategy options] which will have different immigration
27 | consequences and whatever advice is given must be 'founded on adequate investigation of
28 | federal immigration law.'" *Bautista*, 8 Cal. Rptr. 3d at 870 (*quoting People v. Soriano*, 240 Cal.

1   Rptr. at 335.) Here, just as in *Bautista*, trial counsel failed to advise Mr. Lopez of the possibility

2   of pleading to a non-aggravated offense. As in *Bautista*, trial counsel was not even aware that

3   such a possibility existed. Mr. Lopez's trial attorney should have been familiar with *Bautista*'s

4   holding and that holding should have been fresh in trial counsel's memory. Any competent

5   attorney — especially one practicing in Southern California — would been aware of *Bautista*,

6   and would have advised Mr. Lopez about a possible plea bargain which did not include

7   aggravated felonies. Trial counsel provided ineffective assistance by failing to advise Mr. Lopez

8   that it was possible to "plead upward" — that is, pursue a negotiated plea or violation of a

9   greater but non-aggravated offense — when such a plea would avoid the mandatory loss of

10  Mr. Lopez's asylum.

11      **B.    Prejudice**

12      To prevail on a claim of ineffective assistance, a petitioner must show that his trial

13  attorney's representation fell below prevailing professional norms, and that he was prejudiced

14  by this failure — i.e., that it is reasonably probable that the result would have been different but

15  for counsel's error. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability

16  sufficient to undermine confidence in the outcome." *Id.* It is reasonably probable that a result

17  more favorable to Mr. Lopez would have occurred if trial counsel had advised him that a

18  *Bautista*-type plea bargain was available. Trial counsel had experience and familiarity with the

19  District Attorney's Office and with negotiating pleas, and could have negotiated a plea to a non-

20  aggravated felony due to his significant experience negotiating cases. [Exhibits F, G.] A factual

21  basis existed for such a plea. [*See* Exhibits G, H, I, J, K.] Mr. Lopez would have gladly

22  accepted such a plea, even if it meant serving more time in custody. [Exhibit E.] Just as in

23  *Bautista*,

24
25          if [the defendant] had known before he pled guilty that there were
            alternatives that would not create the devastating immigration con-
26          sequences he is facing now, he would not have agreed to enter a
            plea to possession for sale. He would have asked his attorney to
            defend the case in every way possible to avoid or at least minimize
27          the adverse immigration consequences to him. He would have used
            the immigration consequences to request that the charge be changed
28          to simple possession or to an equivalent nonaggravated felony
            offense, and he would have offered to serve more time in custody

1      if necessary to eliminate the possibility of mandatory deportation,
       or he would have taken the case to trial.
2

3   *Bautista*, Cal. Rptr. 3d at 871.

4           Moreover, Mr. Lopez could have pleaded to being an accessory after the fact to have a

5   chance of avoiding the certain loss of his grant of asylum.  Accessory after the fact (i.e.,

6   California Penal Code section 32) is not considered to be an offense "relating to" a controlled

7   substance, so that the conviction does not make the non-citizen deportable or inadmissible for

8   a drug conviction.  (*Castaneda de Esper v. INS* (6th Cir. 1977) 557 F.2d 79, 83-84; *see also*

9   Katherine A. Brady, California Criminal Law and Immigration (ILRC 2004) § 3.4A.1 & n.24.)

10  As discussed above, a state felony conviction for simple possession of a controlled substance is

11  not an aggravated felony in immigration proceedings arising in the Ninth Circuit.

12          If counsel's assistance had not been ineffective, it was reasonably probable that he could

13  have negotiated, and Mr. Lopez would have accepted, a plea bargain which did not include

14  "possession for sale" counts, thus making him eligible for relief from deportation and loss of

15  asylum.  Even without an investigation, a factual basis existed for a plea to a non-aggravated

16  offense.  Some of the drugs found at Mr. Lopez's apartment were his, and did not magically

17  appear there.  Obviously they were "transported" there by Mr. Lopez, and thus he could have

18  plead to transportation of drugs in violation of Health & Safety Code section 11360, a non-

19  aggravated felony offense for immigration law purposes.

20          In sum, trial counsel's ignorance prevented him from advising Mr. Lopez in an effective

21  manner, and this failure to advise constituted ineffective assistance.  Mr. Lopez was prejudiced

22  because it was reasonably probable that a plea bargain mitigating immigration consequences

23  could have been negotiated.  But for counsel's ineffective assistance, Mr. Lopez would not be

24  facing deportation and loss of asylum.

25  **C.      The State Court's Decision Was Based on an Unreasonable Determination of**

26  **the Facts in Light of the Evidence Presented at the State Court Proceeding.**

27          The decision of the California Court of Appeal was based on an unreasonable

28  determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(2).  Along

1  with his habeas petition to the state appellate court, Mr. Lopez submitted a sworn declaration

2  from his trial counsel. [Exhibit F.]  The declaration stated in part that had trial counsel known

3  that it was possible for Mr. Lopez to "plead up" to non-aggravated offenses, trial counsel could

4  have negotiated such a plea.  In response, the Attorney General submitted sworn declarations

5  from Deputy District Attorneys Lewis and Walden. [Exhibits L, M.]  Those declarations stated

6  that the District Attorney's office would never have accepted an "upward plea."  With his

7  traverse, Mr. Lopez submitted a second sworn declaration from his trial counsel. [Exhibit G.]

8  This declaration stated in part that trial counsel had extensive experience negotiating hundreds

9  of cases with the District Attorney's Office, and also had knowledge of the policies and

10  procedures of that office.  Trial counsel declared that based on this knowledge and experience,

11  be believed his offer of an "upward plea" *would* have been accepted.  [Exhibit G at 2 ("I believe

12  a counter offer of two counts of Health & Safety Code §§ 11352, 11360, or 11379, with a grant

13  of probation, would have been accepted.").]

14          The four declarations — all from sworn members of the bar — clearly established a

15  contested issue of fact.  But faced with these dueling declarations, the state appellate court held

16  that "Lopez cannot show he was prejudice because the People would not have agreed to the plea

17  bargain."  [Exhibit O at 2.]  This determination of the facts was clearly and objectively

18  unreasonable in light of the evidence before the court.  It was clearly unreasonable for the court

19  to disregard two sworn declarations from a member of the California bar, and instead take at face

20  value two contradictory declarations from Deputy District Attorneys.  The court, faced with a

21  contested issue of fact, was required by California law to order an evidentiary hearing to resolve

22  it.  *See, e.g., People v. Duvall*, 886 P.2d 1252, 1258 (Cal. 1995).  Yet the court did not.  It chose

23  to believe the prosecutors and disregard the word of a defense attorney.  This was a "dismissive

24  and strained interpretation" of evidence before it.  *See Miller-El v. Dretke*, 545 U.S. at 265

25  (holding that state court's determinations of fact were unreasonable under § 2254(d)(2)).

26          *Miller-El v. Dretke* is illustrative here.  In that case, the state court had been presented

27  with, by the defendant, evidence of racial discrimination by the prosecution during jury selection,

28  and by the prosecution, evidence that the prosecutors' actions were race-neutral.  *See Miller-El,*

1   545 U.S. at 236. However, the state court effectively disregarded the defendant's evidence and

2   found that the prosecutors' actions were proper. *Id.* at 236-37. The Supreme Court found that

3   the defendant's evidence was compelling, and that "the state court's conclusion was unreason-

4   able as well as erroneous." *Id.* at 265.

5          It was an unreasonable determination of the facts for the state court to state categorically

6   that an "upward plea" offer would not have been accepted when the court had persuasive

7   evidence that it would have been. It was unreasonable for the court to determine the facts as it

8   did without an evidentiary hearing.

9          **D.    The State Court's Decision Was an Unreasonable Application of Clearly**

10               **Established Supreme Court Precedent.**

11         A state court decision involves an "unreasonable application" of Supreme Court

12   precedent "if the state court identifies the correct governing legal principle," but applies that

13   principle in an "objectively unreasonable" manner. *Williams v. Taylor*, 529 U.S. at 412, 409;

14   *Sarausad v. Porter*, 479 F.3d at 676-77. *Williams* noted that the *Strickland* standard for effective

15   assistance of counsel is unquestionably clearly established law as determined by the Supreme

16   Court. *Williams*, 529 U.S. at 391. The Court also noted that "rules of law may be sufficiently

17   clear for habeas purposes even when they are expressed in terms of a generalized standard rather

18   than as a bright-line rule." *Id.* at 382. "As *Williams* points out, a rule is designed for the specific

19   purpose of evaluating a myriad of factual contexts, and thus a novel factual situation may

20   nonetheless be dictated by Supreme Court precedent." *Robinson v. Ignacio*, 360 F.3d at 1057.

21

22         It was patently unreasonable for the state appellate court to find that Mr. Lopez could not

23   have been prejudiced by his counsel's performance because the District Attorney would have

24   never accepted an "upward plea." Because the court did not order an evidentiary hearing, we

25   are left to wonder whether trial counsel would have been successful in pleading his client "up"

26   to a non-aggravated felony. We know he did not even try. And, his failure to pursue this avenue

27   certainly falls below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

28

III.    **MR. LOPEZ WAS DENIED HIS SIXTH AMENDMENT RIGHT TO COUNSEL WHEN TRIAL COUNSEL FAILED TO INVESTIGATE READILY AVAILABLE DEFENSES TO THE AGGRAVATED FELONY CHARGES (GROUND TWO).**

A.    **Deficient Performance**

All attorneys have a duty to conduct a reasonable investigation of the case enabling counsel to make informed decisions about how best to represent the client. *Strickland*, 466 U.S. at 691. Counsel has a duty to make all reasonable investigations and may only decline to make a particular investigation if that decision is reasonable under all the circumstances. *Strickand* at 691. Trial counsel is ineffective "where he neither conducted a reasonable investigation nor made a showing of strategic reasons for failing to do so." *Avila v. Galaza*, 297 F.3d 911, 918-19 (9th Cir. 2002) (*quoting Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). "A lawyer who fails adequately to investigate, and to introduce into evidence, records that demonstrate his client's factual innocence, or that raise sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999).

Trial counsel's failure to investigate the charges against Mr. Lopez was objectively unreasonable. Here, trial counsel did no investigation whatsoever of the charges against Mr. Lopez. He only met with Mr. Lopez on one occasion. [Exhibit E.] He made no investigation, even though he knew of Mr. Lopez's immigration status, and even though he was under the impression that any drug conviction would mean the mandatory loss of Mr. Lopez's immigration status. [Exhibit F.] Any reasonably competent attorney would made an investigation into charges which carried such severe immigration consequences to his or her client. Counsel's lack of investigation showed at trial, where counsel put on no defense whatsoever to the "possession for sale" counts. [Exhibit F.] Despite numerous, easily located witnesses, Mr. Lopez's trial attorney failed to investigate and present witnesses in Mr. Lopez's favor to show the jury that the drugs were not possessed for sale. Given that trial counsel obviously knew the government had an expert who would testify that the drugs were possessed

1   for sale, the lack of contrary evidence — when such evidence was readily available — cannot

2   be deemed reasonable representation.

3   **B.    Prejudice**

4           It is virtually certain that a result more favorable to Mr. Lopez would have occurred if

5   trial counsel had followed his duty to investigate.  Even a cursory investigation would have

6   uncovered copious admissible evidence that Mr. Lopez was guilty only of possession, not pos-

7   session for sale.  Mr. Lopez's friends have readily admitted that Mr. Lopez never sold drugs.

8   The drugs found at Mr. Lopez's apartment belonged mainly to his friends.  Mr. Lopez's

9   apartment was a place where he and his friends would hang out and use drugs.  Moreover, the

10  large amount of drugs found was there only because Mr. Lopez and his friends were preparing

11  to go to Los Angeles for a New Year's party.  [Exhibits E, H, I, J, K.]

12          Given that the undersigned obtained this exculpatory evidence with minimal effort, an

13  investigation by trial counsel would have been reasonably likely to uncover it.  It is reasonably

14  probable that a result more favorable to Mr. Lopez would have occurred if trial counsel had

15  followed his duty to investigate.  This readily available evidence would have provided a factual

16  basis for Mr. Lopez to "plead up" to transporting or offering to sell in violation of Health &

17  Safety Code section 11360, which is not an aggravated felony in immigration proceedings

18  arising in the Ninth Circuit.  (*Oliveria-Ferreira v. Ashcroft* (9th Cir. 2004) 382 F.3d 1045; *see*

19  *also In re McDonald & Brewster* (BIA 1975) 15 I&N Dec. 203 [importation and possession for

20  one's own use is not trafficking]; *People v. Bautista*, *supra*, 8 Cal. Rptr. 3d at 872.  Because

21  Mr. Lopez already had asylum, a plea bargain which did not include "possession for sale" counts

22  would have made him eligible for discretionary immigration relief called "Cancellation of

23  Removal" even with a conviction for "offering" to sell marijuana under Health & Safety Code

24  section 11360.  Trial counsel could have easily negotiated such a deal.  [Exhibit G at p. 2.]

25  Mr. Lopez would have accepted such a plea bargain, even if it had meant spending a longer time

26  in custody.  [Exhibit E.]  If counsel's assistance had not been ineffective, Mr. Lopez would have

27  entered into a favorable plea bargain.  The government's contrary declarations merely create a

28  factual dispute that requires an evidentiary hearing.

1    In addition, the evidence uncovered by an investigation would have provided a strong

2    defense to the "possession for sale" counts at trial, making it reasonably probable that Mr. Lopez

3    would have been acquitted of those charges had he gone to trial.  Trial counsel would have had

4    several witnesses to call on Mr. Lopez's behalf; those witnesses would have testified that the

5    drugs found were theirs, and that Mr. Lopez did not sell drugs.  [H, I, J, K.]  If Mr. Lopez had

6    been acquitted of the "possession for sale" counts, he would have been eligible for Cancellation

7    of Removal, thus radically changing the outcome (i.e., immigration consequences).

8    In sum, trial counsel's complete failure to investigate clearly constituted ineffective

9    assistance, especially in light of the knowledge that Mr. Lopez faced loss of asylum and

10   deportation.[1]  Mr. Lopez was prejudiced because an investigation would have produced

11   evidence that provided a factual basis for a plea to non-aggravated offenses, or a defense at trial

12   to the aggravated offenses.  It is reasonably probable that had trial counsel's assistance been

13   effective, Mr. Lopez would not today be facing the loss of his asylum and deportation.

14   **C.     The State Court's Decision Was Based on an Unreasonable Determination of**

15   **the Facts in Light of the Evidence Presented in State Court.**

16   Along with his habeas petition to the California Court of Appeal, Mr. Lopez presented

17   declarations from himself and four of his friends, attesting to the fact that Mr. Lopez's apartment

18   was a place where he and his friends would hang out and do drugs; that Mr. Lopez did not like

19   to be alone and would often let people stay at his apartment and store their possessions there; that

20   Mr. Lopez's friends would store their own drugs in his apartment because it was convenient; that

21   a large quantity of drugs was found because the friends were getting ready for a New Year's Eve

22   celebration in West Hollywood; and that Mr. Lopez used drugs, but never sold drugs or

23   possessed them for sale.  [Exhibits E, H, I, J, K.]  This evidence *was not controverted* by the

24   Attorney General.  However, state appellate court made the conclusory determination that "[t]he

25   proffered evidence does not establish a meritorious defense that would have resulted in a better

26

27

---

28   [1] Notably, deportation, while certainly a prejudicial outcome, pales in comparison to the loss of asylum.  While deportation means being sent back to your native country, loss of asylum means being sent back to your native country to face harassment, rape, torture or death.

1    outcome for Lopez," and therefore any failure to investigate could not have prejudiced

2    Mr. Lopez.[2/] [Exhibit O at 2.]

3        This determination of the facts, made without an evidentiary hearing, was patently

4    unreasonable in light of the evidence presented. It hardly constitutes a determination of fact at

5    all, and is instead a conclusory statement without live testimony. Mr. Lopez submitted evidence

6    supporting a defense to the aggravated felony charges against him, and therefore showing he was

7    prejudiced by his trial counsel's failure to investigate. The Attorney General produced no

8    evidence to rebut the declarations submitted by Mr. Lopez. Because Mr. Lopez had alleged facts

9    which, if true, entitled him to relief, the court was required to order an evidentiary hearing.

10   *People v. Duvall*, 886 P.2d at 1258. It was objectively unreasonable for the court to completely

11   reject this evidence without benefit of an evidentiary hearing.

12       **D.    The State Court's Decision Was an Unreasonable Application of Clearly**

13          **Established Supreme Court Precedent.**

14       Moreover, the state appellate court's decision — that no prejudice occurred — was a

15   clearly unreasonable application of *Strickland*. The Ninth Circuit has granted habeas relief in

16   a situation very similar to Mr. Lopez's. In *Riley v. Payne*, 352 F.3d 1313 (9th Cir. 2003), the

17   petitioner (Riley) had been convicted of assault after a trial in which he claimed self-defense.

18   *Id.* at 1315-16. Riley filed a personal restraint petition in the Washington state courts, alleging

19   that his trial counsel (Clower) had been ineffective by not interviewing a key witness (Pettis) or

20   calling him at trial. *Id.* at 1316-17. Along with his petition, Riley submitted a declaration from

21   Pettis in which Pettis claimed that Pettis was present at the confrontation where the victim

22   (Jamarillo) threatened to shoot Riley, that Pettis took Jamarillo's threat seriously (he ran away)

23   and that Riley later told Pettis that Jamarillo had tried to shoot him. *Id.* at 1317-18. The

24   Washington Supreme Court rejected the petition on the grounds that "there is no reasonable

25

26

27
_____

28   [2/] The state appellate court, in noting that the declarations "are from addicts who used drugs with
     Lopez," was perhaps suggesting that the proffered evidence was not credible. However, the state
     appellate court did not make such a determination and instead only stated that the evidence would not
     have resulted in a better outcome.

1  probability that Pettis's testimony would have changed the outcome." *Id.* at 1322.  The state

2  court affirmed the factual findings of its commissioner, who found that

3              Mr. Riley fails to show that there was no legitimate tactical reason
             not to pursue Pettis as a witness. Pettis had a criminal record, and
4              he might well have been implicated as an accomplice in Mr. Riley's
             crimes. And as Pettis admits, he initially misled the police about his
5              knowledge of the incident. Under the circumstances, counsel could
             have legitimately decided to concentrate on attacking the credibility
6              of Jaramillo and Calloway, who had criminal backgrounds.
             Moreover, according to his declaration, Pettis would have verified
7              only that someone threatened to shoot Mr. Riley.  He evidently did
             not know whether Jaramillo or Calloway actually had a gun, and he
8              was not a witness to the critical events which ensued.

9  *Id.*  The Ninth Circuit found this application of *Strickland* to be objectively unreasonable,

10  because the trial attorney's failure to investigate "would be soundly decried by any reasonable

11  defense counsel":

12              Clower's failure to interview Pettis resulted in actual prejudice to
             Riley.  Clower never interviewed Pettis, so Clower could not have
13              evaluated Pettis's potentially helpful testimony for use in Riley's
             defense.  The Commissioner of the Washington State Supreme
14              Court incorrectly considered Pettis's potential testimony to be
             inconsequential. But the Commissioner's analysis not only ignored
15              the significance of Pettis's potential testimony about Jaramillo's
             verbal threat precipitating the initial confrontation, but also that
16              Pettis could testify Riley told Pettis minutes after the shooting that
             Jaramillo's movement to his gun provoked Riley's shooting. This
17              was also an unreasonable application of *Strickland*.

18                  The state court's reasoning also speculated that counsel
             might have had some "tactical reason not to pursue Pettis as a wit-
19              ness," and noted that Pettis had a criminal record, might have been
             implicated as an accomplice to Riley and misled police about his
20              knowledge of the incident. Notwithstanding whether such concerns
             might have justified counsel bypassing the possible use of Pettis as
21              a witness after interviewing him, the record is undisputed that
             counsel did not contact Pettis, so counsel cannot be presumed to
22              have made an informed tactical decision.  Those accusing Riley
             were gang members.  It would have been reasonable for his defense
23              counsel to defend him not only with his own bare testimony but also
             with that of Pettis who was with him when the alleged threat was
24              made, and who heard Riley's excited comment a few minutes after
             the shooting.
25
                  Further, it was not objectively reasonable for the state court
26              to reject Riley's claim based on the undisputed premise that Pettis
             did not know for sure if Jaramillo or Calloway had a gun and did
27              not see the final critical events that followed Pettis's flight. The
             relevant testimony of Pettis, as we have explained, was that
28              Jaramillo had threatened Riley's life and that shortly after the
             shooting, Riley told Pettis that Jaramillo had tried to shoot Riley.

1    This testimony, if credited by the jury, would have made Riley's
      story more believable and acceptable as a tale of self-defense. The
2    Washington Court of Appeals acknowledged that Pettis might "have
      corroborated Riley's assertion that he was threatened," but that
3    court, with all respect, failed to attach sufficient significance to the
      importance of material, corroborating evidence in this case.

4

5    *Id.* at 1323-24 (footnote omitted). The Ninth Circuit concluded:

6    a reasonably effective defense counsel with Riley's interests in
      mind should have been alert to and interested in having Pettis testify
7    to back up Riley's story of threat . . . . A reasonably effective
      defense counsel *should have at least interviewed* Pettis to confirm
8    that Riley's statement about Pettis's knowledge was true and to
      make an informed judgment about whether Pettis's testimony would
9    help Riley's claim of self-defense. Because Riley's counsel did not
      interview or call a key witness who would have corroborated
10   Riley's testimony that Riley was not the first aggressor and drew his
      gun in response to a threat, a key witness who himself fled from the
11   threat, fearful of violence, our confidence in the verdict is
      undermined, and we are left with the firm conviction that Riley did
12   not get a fair shake from the legal system.

13   *Id.* at 1325. As in *Riley*, the state court unreasonably applied Strickland when it found that no

14   prejudice could have occurred.

15   **IV.    ANY DISPUTED FACTUAL ISSUES MUST BE RESOLVED WITH AN**

16   **EVIDENTIARY HEARING.**

17       Mr. Lopez moves this Court to hold an evidentiary hearing. "[W]here a petitioner raises

18   a colorable claim of ineffective assistance, and where there has not been a state or federal

19   hearing on this claim, we must remand to the district court for an evidentiary hearing."

20   *Stankewitz v. Woodford*, 365 F.3d 706, 708 (9th Cir.2004) (*quoting Smith v. McCormick*, 914

21   F.2d 1153, 1170 (9th Cir.1990)). Mr. Lopez has certainly raised a "colorable claim" of

22   ineffective assistance, and should have been afforded an evidentiary hearing on his claim.

23   Because he requested and was denied a hearing in state court proceedings, Mr. Lopez cannot be

24   faulted for "fail[ing] to develop the factual basis of [his] claim in State court." *Insyxiengmay v.*

25   *Morgan*, 403 F.3d 657, 670 (9th Cir.2005) (citing 28 U.S.C. § 2254(e)(2)). When a habeas

26   petitioner has not failed to develop the factual basis of his claim in state court, he is entitled to

27   an evidentiary hearing in federal court if he can show:

28       (1) the merits of the factual dispute were not resolved in the state
          hearing; (2) the state factual determination is not fairly supported by

1         the record as a whole; (3) the fact-finding procedure employed by
         the state court was not adequate to afford a full and fair hearing;
2         (4) there is a substantial allegation of newly discovered evidence;
         (5) the material facts were not adequately developed at the
3         state-court hearing; or (6) for any reason it appears that the state
         trier of fact did not afford the habeas applicant a full and fair
4         hearing.

5 *Townsend v. Sain*, 372 U.S. 293, 313 (1963) (*overruled on other grounds in Keeney v.*

6 *Tamayo-Reyes*, 504 U.S. 1, 5 (1992)); *Earp v. Ornoski*, 431 F.3d 1158, 1167 (9th Cir. 2005).

7 "Assuming that the petitioner has not failed to develop his claim and can meet one of the

8 *Townsend* factors, 'an evidentiary hearing on a habeas corpus petition is required whenever

9 petitioner's allegations, if proved, would entitle him to relief.'" *Insyxiengmay*, 403 F.3d at 670

10 (*quoting Turner v. Marshall*, 63 F.3d 807, 815 (9th Cir. 1995)). Mr. Lopez is entitled to an

11 evidentiary hearing because the California Court of Appeal's factual determinations were not

12 fairly supported by the record as a whole, and the court's fact-finding procedure — i.e., making

13 credibility determinations on the basis of conflicting testimonial declarations without an

14 evidentiary hearing — was not adequate to afford Mr. Lopez a full and fair hearing.

15       Mr. Lopez's petition states a prima facie claim for relief. He has submitted two sworn

16 declarations from a member of the California bar, in which trial counsel Neil Besse states that,

17 based on his experience negotiating cases with the District Attorney's Office and his knowledge

18 of the policies and procedures of the District Attorney's office, he would have been able to

19 successfully negotiate a plea bargain that did not include aggravated felonies. Mr. Besse's

20 declarations state his belief that an offer to "plead up" would have been accepted, and that there

21 was a factual basis for such a plea. Mr. Lopez has also submitted declarations from himself and

22 from four other witnesses, showing that he had a factual basis to an "upward plea" and a strong

23 defense to the aggravated felonies at trial. If the Attorney General submits conflicting

24 declarations, this Court would face a contested issue of fact, and must order an evidentiary

25 hearing to resolve them. Where the resolution of disputed facts depends on the district court's

26 credibility determination, the court may not rely on documentary testimony and must instead

27 order an evidentiary hearing so that the court can judge the credibility of witnesses through their

28

1  live testimony. *Earp v. Ornoski*, 431 F.3d at 1169-70.  This court must order an evidentiary

2  hearing.

3  **V.      CONCLUSION**

4        Mr. Lopez prays that this Court order an evidentiary hearing to resolve any contested

5  factual issues and that this Court grant the writ.

6  Dated:  3·11-08

7                                              Respectfully submitted,

8                          By      *Kurt David Hermansen*

9

10                                 KURT DAVID HERMANSEN
                                   Attorney for Petitioner Ernesto Rivas Lopez

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                           UNITED STATES DISTRICT COURT

3                           SOUTHERN DISTRICT OF CALIFORNIA

4

5    ERNESTO RIVAS LOPEZ,
     Petitioner,
                                                 No._____
6    On Habeas Corpus.

7                                                **PROOF OF SERVICE BY MAIL**

8    I, the undersigned, say:

9          1.    I am over eighteen (18) years of age, a resident of the County of San Diego,

10   California, not a party in the within action, and my business address is 110 West C St., Suite

11   1810, San Diego, California, 92101-3909;

12         2.    I served the within **PETITION FOR WRIT OF HABEAS CORPUS,** by hand
                                      AND MEMO OF POINTS & AUTHORITIES ^
13   delivering an original and 2 copies thereof to the Clerk of the Court, United States District Court,

14   Southern District of California, 880 Front Street, Room 4290, San Diego, CA 92101-8900;

15         3.    I served the within on the Office of the Attorney General by causing to be mailed

16   a copy thereof to: San Diego Attorney General's Office, 110 West "A" St., Suite 1100, P.O. Box

17   85266, San Diego, CA 92186-5266;

18         4.    I served the within on the petitioner, Ernesto Rivas Lopez by hand delivery.

19

20   I certify under penalty of perjury that the foregoing is true and correct.  Executed March

21   _____12_____, 2008, at San Diego, CA.

22

23                                                    Kurt David Hermansen

24   C:\_KDH-docs\Habeas\Rivas Lopez\HC.Pet.CASD.can3.wpd

25

26

27

28

JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS *PETITIONER*  FILED

ERNESTO RIVAS LOPEZ

(b) County of Residence of First Listed Plaintiff  *San Diego*
(EXCEPT IN U.S. PLAINTIFF CASES)

2008 MAR 12  AM 10: 44
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

(c) Attorney's (Firm Name, Address, and Telephone Number)  *619 236 8300*
KURT DAVID HERMANSEN
110 W C ST STE 1810, SAN DIEGO CA 92101

**DEFENDANTS** *respondents*
Mack Jenkins, Chief Probation Officer

County of Residence of First Listed Defendant  *San Diego*
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

08 CV 0457 LAB AJB

Attorneys (If Known)
CA Attorney General

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☑ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
  **Habeas Corpus:**
- ☒ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 2254

Brief description of cause: Habeas Corpus

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE ___  DOCKET NUMBER ___

DATE 3.12.08   SIGNATURE OF ATTORNEY OF RECORD  Kurt David Hermansen

FOR OFFICE USE ONLY

RECEIPT # 148690  AMOUNT $5.00  APPLYING IFP 6/10 3/12/08  JUDGE ___  MAG. JUDGE ___

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 148690      — KD
* * C O P Y * *
March 12. 2008
10:42:30

## Habeas Corpus
USAO #.: 08CV0457
Judge..: LARRY A BURNS
Amount.:                    $5.00 CC


Total—>   $5.00


FROM: HABEAS CORPUS
      RIVAS V. JENKINS. ET AL
      08CV0457