COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, <br><br> PLAINTIFF AND RESPONDENT, <br><br> VS. <br><br> ERNESTO R. LOPEZ, <br><br> DEFENDANT AND APPELLANT. | COURT OF APPEAL <br> NO. D046705 <br><br> SUPERIOR COURT <br> NO. SCD187886 <br><br> PAGES 14 THRU 188 <br><br> TRIAL |

FROM THE SUPERIOR COURT OF SAN DIEGO COUNTY

RICHARD J. HANSCOM, JUDGE

REPORTER'S TRANSCRIPT ON APPEAL

MAY 11, 2005

VOLUME 2

APPEARANCES:

FOR THE PLAINTIFF
AND RESPONDENT:

BILL LOCKYER
ATTORNEY GENERAL
110 WEST "A" STREET, SUITE 600
SAN DIEGO, CA 92101

FOR THE DEFENDANT
AND APPELLANT:

IN PROPRIA PERSONA

BOBBIE J. HIBBLER, CSR
CSR CERTIFICATE NO. 12475
OFFICIAL COURT REPORTER
SAN DIEGO, CALIFORNIA 92101



```
          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

                  IN AND FOR THE COUNTY OF SAN DIEGO

                            CENTRAL DIVISION

       DEPARTMENT 7         HON. RICHARD J. HANSCOM, JUDGE
```

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    PLAINTIFF,<br><br>VS.<br><br>ERNESTO R. LOPEZ,<br><br>    DEFENDANT. | CASE NO. SCD187886<br><br><br><br>TRIAL |

```
                         REPORTER'S TRANSCRIPT

                            MAY 11, 2005

                              VOLUME 2

                         PAGES 14 THRU 188
```

APPEARANCES:

FOR THE PLAINTIFF:                    AMY MAUND
                                      DEPUTY DISTRICT ATTORNEY


FOR THE DEFENDANT:                    NEIL BESSE
                                      DEPUTY PUBLIC DEFENDER




```
                      BOBBIE J. HIBBLER, CSR
                    CSR CERTIFICATE NO. 12475
                       OFFICIAL COURT REPORTER
                     SAN DIEGO, CALIFORNIA  92101
```

INDEX TO EXAMINATIONS

| WITNESS | PAGE # |
|---|---|
| MITCHELL WALLACE | |
|   DIRECT EXAMINATION BY MS. MAUND | 15 |
|   CROSS EXAMINATION BY MR. BESSE | 35 |
| | |
| JON BROWN | |
|   DIRECT EXAMINATION BY MS. MAUND | 44 |
|   CROSS EXAMINATION BY MR. BESSE | 49 |
|   REDIRECT EXAMINATION BY MS. MAUND | 59 |
|   RECROSS EXAMINATION BY MR. BESSE | 60 |
| | |
| TIMOTHY NORRIS | |
|   DIRECT EXAMINATION BY MS. MAUND | 62 |
|   CROSS EXAMINATION BY MR. BESSE | 102 |
|   REDIRECT EXAMINATION BY MS. MAUND | 149 |
|   RECROSS EXAMINATION BY MR. BESSE | 157 |
| | |
| MIKE SLONEKER | |
|   DIRECT EXAMINATION BY MS. MAUND | 165 |
|   CROSS EXAMINATION BY MR. BESSE | 183 |

INDEX TO EXHIBITS

| EXHIBIT # | DESCRIPTION | MARKED | RECEIVED |
|---|---|---|---|
| PEOPLE'S 1 | TELEPHONE BILL | 28 | 190 |
| PEOPLE'S 2 | ENVELOPE WITH CONTENTS | 29 | 190 |
| PEOPLE'S 3 | ENVELOPE WITH PICTURES | 30 | 190 |
| PEOPLE'S 4 | ENVELOPE WITH KETAMINE | 31 | 190 |
| PEOPLE'S 5 | RECEIPT AND INVENTORY | 69 | 190 |
| PEOPLE'S 6 | PLASTIC BAG/ZIP-UP BAG | 75 | 190 |
| PEOPLE'S 7 | PLASTIC BAG/ZIP-UP BAG | 76 | 190 |
| PEOPLE'S 8 | PLASTIC BAG/PIPES | 77 | 190 |
| PEOPLE'S 9 | PLASTIC BAG/PIPES | 79 | 190 |
| PEOPLE'S 10 | PLASTIC BAG/PIPES | 79 | 190 |
| PEOPLE'S 11 | SYRINGES, RED CONTAINER | 80 | 190 |
| PEOPLE'S 13 | BROWN PAPER BAG/WOODEN BOX | 82 | 190 |
| PEOPLE'S 14 | SMALL WOODEN BOX | 84 | 190 |
| PEOPLE'S 15 | BLACK METAL TIN | 85 | 190 |
| PEOPLE'S 16 | SILVER METAL TIN | 85 | 190 |
| PEOPLE'S 17 | ONE-PAGE DOCUMENT | 168 | 190 |
| PEOPLE'S 18 | FIVE-PAGE REPORT | 171 | 190 |
| PEOPLE'S 19 | STIPULATION | 189 | 190 |

1   BUT WE HAVE A NUMBER OF HOUSEKEEPING THINGS AND THINGS WE
2   HAD TO DO. THAT'S THE BAD NEWS THAT THE DELAY HAPPENED, BUT
3   THE GOOD NEWS IS THAT WE'RE READY NOW TO GO UNINTERRUPTED.
4        THERE IS A STIPULATION THAT HAS BEEN ENTERED INTO AND
5   I AM GOING TO READ IT TO YOU. BOTH PARTIES HAVE STIPULATED
6   THAT THE ATTACHED DOCUMENT WHICH HAS BEEN MARKED AS EXHIBIT
7   PEOPLE'S 19, IS A COPY OF THE RENTAL AGREEMENT ENTERED INTO
8   WITH THE OWNER OF THE PROPERTY BONNIE LEIPPER AND THE
9   LEASEE, ERNESTO LOPEZ FOR 3751 THIRD AVENUE, APARTMENT D,
10  SAN DIEGO, CALIFORNIA ON DECEMBER 1ST, 1999.
11       IN ADDITION, BOTH PARTIES STIPULATE THAT THE
12  DEFENDANT WAS STILL LIVING IN THE PREMISES ON APRIL 25, 2005
13  WHEN THIS RENTAL WAS OBTAINED BY THE DISTRICT ATTORNEY'S
14  OFFICE. REMEMBER GENERALLY WHAT THE ATTORNEYS SAY IS NOT
15  EVIDENCE, BUT THIS IS A STIPULATION SIGNED BY BOTH. SO THAT
16  IS EVIDENCE AND THE STIPULATION WILL BE AN EXHIBIT. WITH
17  THAT THE PEOPLE HAVE ANY OTHER EVIDENCE?
18       MS. MAUND: NO, YOUR HONOR. THE PEOPLE AT THIS TIME
19  SUBJECT TO THE EXHIBITS MARKED PREVIOUSLY FOR IDENTIFICATION
20  BE ENTERED INTO EVIDENCE.
21       THE COURT: THE EXHIBITS HAVE ALREADY BEEN ENTERED.
22       MS. MAUND: THE PEOPLE REST, YOUR HONOR.
23       THE COURT: ALL RIGHT. MR. BESSE.
24       MR. BESSE: THE DEFENSE REST.
25       THE COURT: ALL RIGHT. NOW, LADIES AND GENTLEMEN,
26  THAT IS IT. YOU'VE HEARD ALL THE EVIDENCE AND NOW, YOU ARE
27  GOING TO HEAR ARGUMENT THAT IS THE NEXT STEP. NOW, LET ME
28  EXPLAIN ONE OTHER THING. THERE ARE A TON OF EXHIBITS HERE.



*NO DEFENSE CASE AT ALL.*

1   IF ANY OF THEM HAD MR. MANCHA'S NAME ON IT, IF THERE
2   WERE PHOTOS OF HIM THERE, IF THERE WERE PAPERS THAT BELONG
3   TO HIM THEN WHAT'S THE DIFFERENCE BETWEEN HIM AND MR. LOPEZ.
4   MR. LOPEZ'S NAME IS ON THE LEASE. THERE IS ONE DIFFERENCE
5   BEYOND THAT. WHAT ELSE DO WE HAVE? WE HAVE TWO PEOPLE
6   ARRIVING. THEY BOTH HAVE DOMINION AND CONTROL EVIDENCE.
7   THEY BOTH HAVE A BAG OF GROCERIES. ONE DIFFERENCE IS THAT
8   MR. MANCHA DROPPED HIS GROCERY BAG AND STARTED TO RUN.
9   THEY HAD TO PIN HIM ON THE GROUND. WE KNOW FOR SURE
10  THAT MANCHA WAS UNDER THE INFLUENCE OF DRUGS. ACCORDING TO
11  THE OFFICER HE SAID MR. LOPEZ WAS TOO. THAT IS FINE. WHY
12  NOT MR. MANCHA? HOW DO WE KNOW THEY ARE NOT HIS DRUGS?
13  THERE IS NOTHING ON ANY OF THESE BOXES OR DRUGS TO DETERMINE
14  ONE WAY OR THE OTHER. THAT IS JUST ONE PERSON. <u>WHO ELSE</u> *(Include)*
15  <u>WAS COMING AND GOING?</u> <u>WE DON'T KNOW NOBODY CHECKED</u>. *(Counsel)*
16  WE CAN TREAT THAT ARGUMENT WITH AN EYE ROLL AND SAY
17  IT IS OBVIOUS. THERE'S A TENDENCY TO WANT TO DO THAT
18  BECAUSE WE WANT TO CONVICT SOMEBODY. WHEN WE SEE THIS BIG
19  CACHE OF DRUGS. YOUR OATH IS WHETHER THE CASE HAS BEEN
20  PROVEN BEYOND A REASONABLE DOUBT.
21  I WONDER IF ALL THE STUFF DID BELONG TO MR. MANCHA.
22  I WONDER IF HE IS THE GUY THAT IS SELLING DRUGS OR JUST
23  MAYBE HEAVILY USING DRUGS. IF ANY PART OF YOU IS SAYING
24  COULD BE HIM, SEEMS REASONABLE IF AFTER YOU DELIBERATE THAT
25  DOUBT IS STAYING WITH YOU THAT IS THE END OF YOUR ANALYSIS.
26  THAT GOES TO ALL OF THE DRUGS COUNTS ONE, TWO, THREE, FOUR,
27  METHAMPHETAMINE, COCAINE, MARIJUANA, KETAMINE.
28  ALL OF THAT STUFF WHICH WOULD BE LUMPED TOGETHER IN

227

```
 1    THE BEDROOM.  HOW LONG WAS IT THERE?  CIRCUMSTANTIAL
 2    EVIDENCE.  TALK TO YOU ABOUT THE PROSECUTOR.  THERE WAS NO
 3    EVIDENCE THAT MR. LOPEZ WAS SLEEPING ON THE BED, WHICH SIDE
 4    OF BED THAT HE SLEPT ON, THE NIGHTSTAND YOU.  AGAIN, WE'RE
 5    TAKING REASONABLE INFERENCES THAT IS REASONABLE BUT WHO ELSE
 6    IS SLEEPING THERE?
 7         WHO ELSE IS SLEEPING ON THE COUCH?  WHO ELSE IS
 8    STAYING THERE?  HOW LONG?  WHAT ABOUT THE VOLUME OF THE
 9    DRUGS, DO WE KNOW FOR SURE THAT THE DRUGS ARE EVEN FOR SALE
10    THAT IS ASSUMING, NUMBER TWO, THAT B EQUALS C.  THERE IS A
11    LARGE AMOUNT OF DRUGS.  AT THIS POINT WE MOVE EVEN FURTHER
12    AWAY THIS ARROW WHICH IS IN THE PROSECUTOR'S MIND A CLEAR
13    CONNECTION IN WHICH IN OUR MIND SHOULD BE REPLACED BY A
14    QUESTION MARK.
15         WELL, DOWN HERE THE QUESTION MARK IS EVEN BIGGER.  IT
16    SHOULD BE BOLD FACED AND HIGHLIGHTED BECAUSE EVERYTHING
17    ABOUT THE POSSESSION FOR SALE ASPECT IF IT WAS BASED ON ONE
18    WITNESS DETECTIVE NORRIS AND HIS EXPERIENCE.  HIS HYPOTHESIS
19    WHICH SEEM TO SHIFT ACCORDING TO WHAT THE EVIDENCE IS.
20         THERE'S A WHOLE BUNCH OF THINGS IN THE HOUSE THAT IS
21    CONSISTENT WITH ONE PERSON LIVING THERE, NOT JUST MORE THAN
22    ONE PERSON BUT ONE PERSON AND THAT PERSON IS A COLLECTOR
23    BECAUSE THAT PERSON IS SELLING DRUGS AND A DRUG ADDICT AND
24    THEREFORE WHEN PEOPLE COME THEY BRING OVER THEIR USED ITEMS
25    AND SAY HERE I WILL GIVE YOU A BROKEN DOWN BIKE IN EXCHANGE
26    FOR DRUGS.  WHAT IS THAT?  I MEAN HOW MUCH OF THAT WAS GOING
27    ON?
28         THIS IS A TREMENDOUS AMOUNT OF HYPOTHESES PUT ON BY A
```

1   PERSON WHO DIDN'T SEE ANYTHING OF IT.  WE'RE JUST BASED ON
2   THE VOLUME OF DRUGS.  YES, THERE IS A SCALE THERE, BUT WE
3   KEPT ASKING HIM IN YOUR EXPERIENCE IT SEEMS UNLIKELY THAT A
4   PERSON WOULD BE USING THAT VOLUME OF DRUGS.  IS IT JUST AS
5   POSSIBLE THAT HEAVY USERS COULD BE PERSONALLY USING AND NOT
6   SELLING THOSE DRUGS?  YES.  IS THERE ANY REASON WHY A PERSON
7   COULD NOT BE?  NO.  OKAY.
8        WELL DOES THAT PROVE THAT THERE IS DRUG SALES GOING
9   ON BEYOND A REASONABLE DOUBT IN YOUR MIND WHEN THE ONLY
10  WITNESS WHO IS ENGAGING IN HYPOTHESES THEN FLIPPED RIGHT
11  BACK OVER WHO SAYS THERE IS NO REASON WHY TWO OR THREE
12  PEOPLE CANNOT JUST GO IN ON THE SALE OF DRUGS.  THERE IS NO
13  REASON WHY ONE PERSON COULD NOT BUY THE DRUGS AND JUST HAVE
14  A PARTY.  PEOPLE USE THEM.
15       SURE I DON'T KNOW ANYTHING ABOUT THE FINANCES OF
16  MR. LOPEZ.  WE DON'T KNOW.  NO ONE CHECKED.  DOES HE HAVE A
17  TRUST FUND?  DOES HE HAVE SOME SORT OF INCOME?  WE NEVER
18  HEARD.  WHAT KIND OF EMPLOYMENT DOES HE HAVE?  WHAT KIND OF
19  MONEY DOES HE EARN?  WHAT KIND OF BENEFITS?  NO IDEA.  NO
20  ONE CHECKED.  THERE IS A LOT OF TALK ABOUT THE HIGH STREET
21  VALUE OF THE DRUGS IF YOU WERE TO PORTION THEM OUT AND SELL
22  THEM YOU COULD MAKE THOUSANDS OF DOLLARS.
23       THEREFORE, THEY MUST BE FOR SALE.  WHY?  IF
24  CIGARETTES WERE ILLEGAL -- YOU CAN BUY CARTONS OF THEM.
25  PEOPLE WOULD BUY CARTONS.  PEOPLE DO BUY CARTONS.  CARTONS
26  MIGHT LAST A PERSON WEEKS, FIVE CARTONS WHICH LAST MONTHS.
27  IT DOESN'T MEAN THEY ARE ON THE STREET CORNER SELLING EACH
28  ONE.  THE TOTAL AMOUNT THEY MAKE IS A LARGE AMOUNT.  THEY

1  MIGHT BE ABLE TO DO THAT OR THEY MIGHT JUST USE THEM.
2      WE'RE TALKING ABOUT THE STIGMA OF DRUGS. I BRING UP
3  CIGARETTES. IT IS A SILLY COMPARISON ON THE ONE SENSE, BUT
4  AGAIN THERE IS THIS STIGMA OF DRUGS. THERE IS NO STIGMA OF
5  CIGARETTES. IMAGINE IF THEY WERE ILLEGAL IF YOU WENT TO
6  COSTCO, YOU TAKE THEM TO YOUR HOUSE AND YOU WOULD USE THEM.
7  WHY WOULDN'T YOU? IF YOUR FRIENDS COME OVER AND THEY SMOKED
8  THEY WOULD HAVE CIGARETTES.
9      DOES IT NECESSARILY MEAN THAT YOU'RE THEN TAKING THEM
10 OUT OF THE HOUSE AND SELLING THEM. IS THERE ANYTHING
11 MAGICAL ABOUT HAVING CARTONS OF CIGARETTES? YOU CAN TAKE
12 FIVE CIGARETTES AND PUT IN A FLAT PACKAGE AND CARRY THEM OUT
13 IN THEIR POCKET. DOES THAT MEAN THEY ARE BEING SOLD?
14     THERE IS NO WITNESSES BEYOND ONE PERSON WHO IS PART
15 OF THE PROSECUTION TEAM WHO IS GIVING HIS OPINIONS. THE
16 DOMINION AND CONTROL EVIDENCE, EXHIBIT ONE, TWO AND THREE.
17 THE DOMINION AND CONTROL EVIDENCE YOU WILL HAVE A CHANCE TO
18 LOOK AT IT. WE URGE THAT YOU TAKE A LOOK AT IT. IT IS A
19 LITTLE BIT STRANGE IN THE SENSE THAT IT WAS ALL IN ONE
20 PLACE, ON ONE SURFACE AND NO ONE FOUND ANYMORE.
21     SO YOU HAVE A PHONE BILL WHICH IS NOT FROM THE MONTH
22 OR EVEN THE COUPLE MONTHS PRECEDING BUT FROM MARCH TO APRIL
23 OF 2004, BUT THERE IS NO PHONE BILL FROM OCTOBER, NOVEMBER,
24 DECEMBER, OR THE IMMEDIATE PRECEDING MONTHS. NOBODY IS
25 TELLING US THAT THEY CHECKED FILE CABINETS AND FOUND SOME
26 KIND OF ADDITIONAL PAPERWORK. THERE IS PHOTOS. ALL IT
27 WOULD APPEAR ACCORDING TO THE PROSECUTOR AND SHE COULD
28 LIKELY BE RIGHT.

1  HIS MOST IMPORTANT PHOTOGRAPHS THEY SEEM TO STRETCH
2  OVER A PERIOD OF TIME DIFFERENT EVENTS AND APPARENTLY HIS
3  FRIENDS.  THERE IS ABOUT 20 DIFFERENT OTHERS.  THERE IS
4  ABOUT 20 PICTURES IN THERE THAT SHOW PEOPLE OTHER THAN
5  MR. LOPEZ.  HE WOULD APPEAR NOT TO BE A WALL FLOWER BASED ON
6  THE PHOTOS, BUT YOU WILL SEE.  YOU CAN DEDUCT AND INFER
7  WHETHER OR NOT HE IS A SOCIAL PERSON.
8  BUT IN ANY EVENT WE GOT THESE PHOTOGRAPHS THAT ARE
9  RIGHT NEXT TO THE PAPERS WHICH ARE DEEMED IMPORTANT AND THE
10 ONE PHONE BILL AND THEY ARE FOUND IN ONE PLACE.  THEY ARE
11 FOUND IN SUCH A WAY THAT THEY COULD BE SCOOPED UP AND
12 CARRIED AWAY.  THE POINT I AM MAKING IS THEY ARE NOT IN A
13 FILE CABINET.  THEY ARE NOT BURIED AWAY.
14 NO ONE CHECKED THE STUFF THAT IS SUPPOSE TO BE THERE,
15 THE FILE CABINETS, PAPERS.  NO ONE.  A BUNCH OF THINGS THAT
16 SAYS HE IS THERE.  HE IS ONLY THERE.  HE IS LIVING THERE
17 EVERY MONTH.  HE NEVER GOES TO MEXICO.  HE NEVER TRAVELS.
18 HE NEVER VISITS ANYBODY ELSE.  <u>NO ONE CHECKS ALL THESE OTHER</u>
19 <u>BOXES OF PAPERWORK TO SAY NO ONE ELSE STAYS HERE.</u>  <u>ARE THERE</u>
20 <u>OTHER BIG PILES OF PAPERWORK?</u>  <u>YES.</u>  <u>DO THEY BELONG TO</u>
21 <u>SOMEONE OTHER THAN MR. LOPEZ?</u>  <u>NO ONE KNOWS.</u>  <u>NO ONE CHECKED</u>
22 <u>APPARENTLY IN THIS CASE.</u>
23 THE ASSUMPTION THAT THIS PILE OF PAPERS ON ONE
24 SURFACE IN THE DESK THAT ASSUMPTION WAS ENOUGH.  YOU WILL
25 DECIDE WHETHER THAT WAS ENOUGH BECAUSE YOU ARE THE JURY.
26 PLACE OF EMPLOYMENT AS THE PROSECUTOR MENTIONED AT THE
27 OUTSET OF THE CASE THAT THERE WAS THE EVIDENCE THAT
28 MR. LOPEZ WAS UNEMPLOYED.  THERE WASN'T ANY.  THE EVIDENCE