NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

FILED
Stephen M. Kelly, Clerk
JUN 0 2 2006
Court of Appeal Fourth District

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERNESTO RIVAS LOPEZ,<br><br>    Defendant and Appellant. | D046705<br><br>(Super. Ct. No. SCD187886) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard J. Hanscom, Judge. (Retired judge of the San Diego Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Judgment of conviction affirmed and case remanded to redetermine terms of probation.

Ernesto Rivas Lopez was convicted of possession of cocaine for sale (Health & Saf. Code, § 11351; count 1); possession of methamphetamine for sale (Health & Saf. Code, § 11378; count 2); possession of marijuana for sale (Health & Saf. Code, § 11359; count 3); possession of ketamine (Health & Saf. Code, § 11377, subd. (b)(2); count 5);

possession of paraphernalia used for narcotics (Health & Saf. Code, § 11364; count 6) and unauthorized possession of a hypodermic needle or syringe (Bus. & Prof. Code, § 4140; count 7.)

The court suspended imposition of sentence and placed Lopez on probation for a period of five years on the condition that he serve 365 days in county jail.

Lopez appeals, asserting that (1) the court erred in instructing the jury that they could find him liable for possession for sale (counts 1-3) where he did not have the specific intent to personally sell the controlled substance, but rather the specific intent that someone else do so; and (2) the order granting probation improperly reflects terms and conditions not imposed by the court. We conclude that the court did not err in instructing the jury on the intent necessary to convict Lopez on the possession for sale counts. We also conclude, however, that because the order granting probation does not accurately reflect the terms of probation ordered by the court, we must remand this matter to the trial court to redetermine the terms of probation.

FACTUAL BACKGROUND

On December 29, 2004, at approximately 10:00 p.m., the San Diego Police Department's Narcotics Team Ten served a search warrant on an apartment in San Diego rented by Lopez.

Lopez and Richard Mancha approached the apartment after the officers had entered. They were both carrying grocery bags. San Diego Police Officer Jon Brown contacted Lopez and Mancha at the base of the stairwell and told them they were being detained for a narcotics investigation.

Both Lopez and Mancha appeared to be under the influence of a controlled substance. Mancha refused to provide his name when asked and appeared nervous. Mancha dropped his grocery bag and started to run away as Officer Brown was placing Lopez in handcuffs. Officer Brown grabbed Mancha and forced him to the ground. Lopez had $280 in his left front pants pocket.

A 38-page telephone bill in Lopez's name, immigration paperwork in Lopez's name, and photographs of Lopez were found in an armoire in the bedroom. A black tin box containing glass methamphetamine pipes, syringes, a manual weighted scale and some baggies was recovered from the living room.

A baggie containing 14.30 grams of cocaine was found in a black vinyl pouch in a plastic organizer bin next to the bed. Three baggies containing 0.2 grams of methamphetamine were recovered from the plastic organizer bin. Four baggies containing a total of 52.06 grams of marijuana were also found in the plastic organizer next to the bed. Eight glass pipes with burnt residue were found in the plastic organizer. San Diego Police Detective Timothy Norris testified that the pipes were primarily used to smoke methamphetamine.

A metal container holding four 10-milliliter bottles of ketamine was found under the bed. Three plastic containers containing a total of 20.78 grams of methamphetamine were found in a wooden box on the night stand, together with a glass methamphetamine pipe and a plastic straw used to snort cocaine or methamphetamine. A second wooden box found on the night stand contained a small bag of marijuana and an empty glass vial. The officers also recovered a black metal tin containing a baggie holding 2.53 grams of

methamphetamine, a baggie with methamphetamine residue and a digital scale, and a round metal silver tin containing five baggies, two of which contained a total of 1.46 grams of methamphetamine, and three of which contained methamphetamine residue.

Detective Norris testified that the methamphetamine, cocaine and marijuana recovered during the search all were in usable quantities and, based upon the amounts, the packaging and paraphernalia, were for the purpose of sale. Detective Norris testified that the methamphetamine had a street value of $1,875 and that the cocaine had a street value of $1,120.

## DISCUSSION

### I. *INSTRUCTION ON INTENT*

Lopez asserts that the court erred when, in response to a question from the jury, it instructed the jurors they could find him liable for possession for sale (counts 1-3) where he did not have the specific intent to personally sell the controlled substance, but rather had the specific intent that someone else do so. This contention is unavailing.

A. *Background*

Counsel for Rivas argued in closing argument that the evidence could reasonably be interpreted to show that the drugs police found belonged to Mancha. Defense counsel argued that the evidence could also be interpreted to show that Mancha had come to Lopez's house and left the drugs there with Lopez's permission. Defense counsel argued that permitting the drugs to be stored at the apartment would only show Lopez to be in possession of the drugs, but not necessarily in possession for the purpose of sale.

During deliberations the jury sent the court a question that read:

"Jury Note #1

"Regarding Item #4 Possession for Sale

"If Lopez has possession is he guilty of illegal possession for sale if he knowingly understands someone else is selling drugs Lopez possesses."

When the court requested clarification from the jury concerning the question, the jurors told the bailiff that that they were asking about item No. 4 in CALJIC No. 12.21, which reads: "That person possessed the substance with the specific intent to sell the same."[1]

Over counsel for Lopez's objection, the court sent this written response to the jury:

"I will try to answer your question as I understand it, and if this does not answer the question you asked you will have to clarify the question. [¶] It is my understanding that when you refer to 'Item #4' in your question you were referring to the portion of [CALJIC]

---

1   The court instructed the jury under CALJIC No. 12.21, which reads in full: "[Defendant is accused [in Count[s] _____ ] of having committed the crime of illegal possession of marijuana for sale, a violation of section 11359 of the Health and Safety Code.] [¶] Every person who possesses for sale any marijuana is guilty of the crime of illegal possession of marijuana for sale in violation of Health and Safety Code section 11359. [¶] There are two kinds of possession: actual possession and constructive possession. [¶] 'Actual possession' requires that a person knowingly exercise direct physical control over a thing. [¶] 'Constructive possession' does not require actual possession but does require that a person knowingly exercise control over or the right to control a thing, either directly or through another person or persons. [¶] [One person may have possession alone, or two or more persons together may share actual or constructive possession.] [¶] ['Sale' means any exchange of marijuana for cash, favors, services, goods or other non-cash benefits.] [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A person exercised control over or the right to control certain marijuana; [¶] 2. That person knew of its presence; [¶] 3. That person knew that the substance had a narcotic character; [¶] 4. *That person possessed the substance with the specific intent to sell the same*; and [¶] 5. The substance was in an amount sufficient to be used for sale or consumption." (Italics added.)

5

instruction [No.] 12.21 at the bottom which reads [¶] '4. That person possessed the substance with the specific intent to sell the same; and' [¶] To meet this requirement the [P]eople must prove beyond a reasonable doubt that the defendant knowingly possessed the substance and, either (1) possessed the specific intent to sell the controlled substance personally, or (2) *possessed the specific intent that someone else will sell the controlled substance.*" (Italics added.)

B. *Analysis*

In support of his contention that the court erred in instructing the jury that Lopez could be convicted of possession of controlled substances for sale under counts 1 through 3 by having the intent that someone else sell the controlled substances, Lopez relies upon this court's decision in *In re Christopher B.* (1990) 219 Cal.App.3d 455 (*Christopher B.*).

In *Christopher B.* we were presented with a case in which the minor was alleged to have possessed cocaine for sale. The trial court found that possession for sale was not a specific intent crime and opined that it was sufficient if one participated in possessing drugs, knowing they were going to be sold, regardless of whether that person intended to do the actual selling. The court found the minor knew there was cocaine and that it was going to be sold; accordingly, it found the petition true. We reversed, stating: "Although this record may circumstantially support a true finding of specific intent, the trial court made the erroneous legal conclusion that possession of cocaine for sale is not a specific intent crime. Thus the court found it unnecessary for the People to prove the element of specific intent or to make a finding of such intent. Instead the court based its finding that Christopher possessed cocaine for sale on Christopher's knowledge the 'rocks' were to be sold. Absent a finding Christopher had the specific intent to sell, a true finding of possession for sale cannot be made." (*Christopher B., supra,* 219 Cal.App.3d at p. 466.)

6

Lopez asserts that our holding in *Christopher B.* was that a defendant must have the specific intent to *personally* sell a controlled substance. However, in *Christopher B.* we were not presented with, and did not decide, the issue of whether a defendant must personally intend to sell the substance to establish specific intent to sell. Rather, in *Christopher B.* we said only that a true finding could not be made "[a]bsent a finding Christopher had the specific intent to sell . . . ." (*Christopher B., supra,* 219 Cal.App.3d at p. 466.) We said nothing about whether the minor had to intend personally to sell the contraband. We read *Christopher B.* simply for the proposition that knowledge the contraband a defendant possesses ultimately will be sold is insufficient to warrant a conviction for possession for sale; knowledge that an ultimate result will occur does not constitute the specific intent that said result occur.

In *People v. Consuegra* (1994) 26 Cal.App.4th 1726 the Court of Appeal agreed with this analysis and held that a defendant can be convicted of possession for sale if he or she had the specific intent that someone else sell the controlled substance: "The court in *Christopher B.* was not called upon to determine whether the perpetrator must intend to sell the drugs personally, and no case since has dealt with that issue. We see no meaningful distinction in culpability between the individual who holds drugs to sell personally and the one who holds them for others to sell. The sections dealing with possession for sale do not specify that the drugs be held for the possessor to sell but only that they be 'for sale.' [Citation.] The requisite mental state is satisfied when the drugs are possessed with the specific intent that they be sold, regardless of whether the possessor intends to sell them personally." (*Id.* at p. 1732, fn. 4.)

7

Subsequently, in *People v. Parra* (1999) 70 Cal.App.4th 222 (*Parra*) the Court of Appeal reached the same result. In *Parra* the defendants were charged with transporting cocaine and possessing cocaine for sale. Although the defendants had in their possession a large quantity of cocaine, there was no evidence that the defendants had the intent to sell the cocaine personally. The People argued that it satisfied its burden at trial by proving that defendant possessed the cocaine with the intent that it would be sold by them or someone else. The Court of Appeal agreed with the court's reasoning in *Consuegra*: "On its face, Health and Safety Code section 11351 does not state that the defendant has to have the specific intent to sell the controlled substance personally, only that it be '"for sale."' [Citation.] The Use Note to CALJIC No. 12.01 does not indicate that there is a requirement that the controlled substance must be possessed with the specific intent to sell it personally. Furthermore, we find no meaningful distinction in culpability between the defendant who actually sells the controlled substance and the defendant who transports it with the specific intent that someone else will sell it, as they both share in the specific intent to sell. Therefore, we conclude that in order to be convicted of a violation of [] Health and Safety Code section 11351 the defendant needs to either (1) possess the specific intent to sell the controlled substance personally, or (2) possess the specific intent that someone else will sell the controlled substance." (*Parra, supra,* 70 Cal.App.4th at pp. 226-227, fn. omitted.)[2]

---

[2] The Court of Appeal in *Parra* interpreted our decision in *Christopher B.* as requiring a specific intent to sell the controlled substance *personally* and disagreed with that conclusion. (*Parra, supra,* 70 Cal.App.4th at p. 226.) As discussed, *ante,* however,

8

The court did not err in instructing the jury that Lopez could be found liable for possession for sale if he had the specific intent that someone else sell the controlled substance.

## II. TERMS OF PROBATION

Lopez asserts that the court must strike certain items from the court's minute order and formal probation order as they contain terms and conditions of probation that the court did not impose at the time of sentencing. The People agree that terms were placed in the probation order that were not actually ordered by the court, but contend that the matter should be remanded for resentencing so that the terms of probation can be clarified. We conclude that the matter must be remanded to redetermine the terms of probation only.

### A. Background

In imposing probation in this matter, the court made it subject to the following terms: That Lopez (1) serve 365 days in county jail; (2) violate no law; (3) not associate with any known drug users or use drugs; (4) go to a treatment program if directed by the probation officer; (5) pay a restitution fine of $200 and a probation revocation fine of $239, stayed pending successful completion of probation; (6) if deported he must return to the country legally and report to the probation officer within 72 hours; (7) report to probation within 72 hours of his release from custody; (8) submit to search and testing; (9) refrain from the use of alcohol; (10) seek and maintain full employment; (11)

---

the Court of Appeal in *Parra* has misread our decision in *Christopher B., supra,* 219

9

participate in Narcotics Anonymous or Alcoholics Anonymous as directed by the probation officer; (12) not leave the country; and (13) submit samples as required by Penal Code section 296.

However, the minute order and formal probation order contained the following terms that the court did not impose at the time it granted probation: (1) pay a fine in the amount of $239, with penalty assessments; (2) pay a lab fee in the amount of $50 pursuant to Health and Safety Code section 11372.5; (3) pay a drug education fee in the amount of $100 under Health and Safety Code section 11372.7; (4) pay a court security fee in the amount of $20 under Penal Code section 1465.8; (5) pay the cost of probation supervision in the amount of $889; (6) pay fines and restitution totaling $25 per month to probation through the Office of Revenue and Recovery; (7) not possess a firearm, ammunition or deadly weapon; (8) carry a photo identification card on his person at all times; (9) report any change of address to probation and the Office of Revenue and Recovery within 72 hours; (10) obtain consent of the probation officer before leaving the county; (11) make all physical and mental health records available to the court and probation; (12) provide a true name, address and date of birth if contacted by law enforcement; (13) report any contacts with or arrests by law enforcement within seven days; and (14) go into a treatment center after release from custody.

---

Cal.App.3d 455.

B. *Analysis*

If a trial is free from reversible error, but prejudicial error is committed at the sentencing stage, reversal is allowed solely to redetermine the sentence. (*People v. Green* (1956) 47 Cal.2d 209, 234, overruled on another ground in *People v. Morse* (1964) 60 Cal.2d 631, 648-649.) "It is well established that when the trial court pronounces a sentence which is unauthorized by the Penal Code that sentence must be vacated and a proper sentence imposed whenever the mistake is appropriately brought to the attention of the trial court or the reviewing court. When the mistake is discovered while the defendant's appeal is pending, the appellate court should remand the case for a proper sentence." (*People v. Benton* (1979) 100 Cal.App.3d 92, 102.)

The conflict between the court's grant of probation and the formal order of probation requires that we remand this case to reconsider the terms of probation. First, the court failed to order terms of probation that are required by law, such as payment of a drug lab fee (Health & Saf. Code, § 11372.5) and a court security fee (Pen. Code, § 1465.8). Moreover, the minute order and formal order contain several terms the court did *not* order. Accordingly, we are presented with an unauthorized sentence, and we must remand the matter to reconsider the terms of probation only. (*People v. Flores* (2003) 30 Cal.4th 1059, 1068 [trial court made reimbursement order without giving defendant notice and a hearing as required by statute; matter remanded to redetermine reimbursement order only].)

11

DISPOSITION

The matter is remanded to redetermine the terms of probation only. In all other respects, the judgment is affirmed.

_____
NARES, Acting P. J.

WE CONCUR:

_____
O'ROURKE, J.

_____
IRION, J.