```
 1  LAW OFFICE OF KURT DAVID HERMANSEN
    KURT DAVID HERMANSEN, Cal. Bar No. 166349
 2  110 West C Street, Suite 1810
    San Diego, California 92101-3909
 3  Telephone:  (619) 236-8300
    Facsimile:  (619) 236-8400
 4  Cellular:   (619) 436-8117
    KDH@KurtDavidHermansen.com
 5  Attorney for Defendant
    ERNESTO RIVAS LOPEZ
```

## SAN DIEGO SUPERIOR COURT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | Case No. _____ |
| Plaintiff, | Superior Court No. SCD187886 |
| v. | |
| ERNESTO RIVAS LOPEZ, | DECLARATION OF **RICHARD GRANSTAFF** |
| Defendant. | |

Under penalty of perjury, I, RICHARD GRANSTAFF, declare as follows:

1. If Mr. Lopez's attorney had contacted me, I gladly would have testified at trial to the following:

2. I have know Ernesto Rivas Lopez (Mr. Lopez) since about early 2003.

3. I am aware that on December 29, 2004, at about 10:00 p.m., Mr. Lopez was arrested outside his apartment located at 3751 Third Avenue, Apartment D, San Diego, CA 92103.

4. I am familiar with that apartment because I had been there many times.

5. Mr. Lopez and I were friends.

6. I was homeless for a while (living in my car), so Mr. Lopez let me live there off and on.

7. Mr. Lopez even fed me there.

8. I would hang out there up until July of 2004.

9. I got clean of drugs in July of 2004, after I was arrested and went to jail.
10. I was a first-time, not violent offender, and therefore was given PC 1000, which I successfully completed.
11. I completed the California Penal Code § 1000 diversion program and therefore my convictions were expunged.
12. Mr. Lopez and I are currently in recovery together to make sure we don't go back to that old life of addiction.
13. His old apartment would often have three or four guys hanging out at a time.
14. Often it would be just me and Mr. Lopez there.
15. I think Mr. Lopez does not like to be alone.
16. I think Mr. Lopez let people keep there stuff in his apartment, including drugs, because he never liked being alone.
17. He offered to let me keep my stuff there not caring if my belongings included drugs.
18. Back when I stayed there I would keep some stuff there, including drugs.
19. Different men would live with Mr. Lopez temporarily in that apartment from short periods of time to three weeks or as much as two months.
20. I know that men left drugs and drug paraphernalia at the apartment.
21. I think that the syringes did not belong to Mr. Lopez.
22. As far as I know, he did not use drugs intravenously.
23. I have never seen Mr. Lopez use a syringe to inject drugs.
24. He smoked or snorted drugs.
25. I have witnessed Mr. Lopez as an addict in the past.
26. More recently, I have witnessed Mr. Lopez in recovery, and am happy to report he is drug free.
27. I have never known Mr. Lopez to possess a syringe.
28. His old apartment was a "social melting pot" where people felt comfortable hanging out and where drug use took place.
29. **I never, however, saw any drug sales at that apartment.**

30. Men would bring their own drugs to use there.
31. Men would leave some of there drugs there for later use.
32. When I used drugs, I would often do so at Mr. Lopez's apartment.
33. I am familiar with Mr. Lopez's former apartment located at 3751 Third Avenue, Apartment D, San Diego, CA 92103.
34. I was in that apartment many times.
35. Many of Mr. Lopez's friends (and drug using buddies) would come and go from the apartment to party.
36. **To my knowledge, Mr. Lopez has never sold drugs to anyone.**
37. I know Mr. Lopez cuts hair for a living and thus often has cash on hand because his clients often pay him cash.
38. I successfully completed the Episcopal Community Services' PC 1000 outpatient program.
39. I am currently attending meetings of Crystal Meth Anonymous, Narcotics Anonymous, Alcoholics Anonymous.
40. I am volunteering for Stepping Stone doing one-on-one peer counseling.

I so declare this 26TH day of August, 2006 in San Diego California.

_____
RICHARD GRANSTAFF
Declarant

3