1   LAW OFFICE OF KURT DAVID HERMANSEN
    Kurt David Hermansen, Cal. Bar No. 166349
2   110 West C Street, Suite 1810
    San Diego, California 92101-3909
3   Telephone:   (619) 236-8300
    Facsimile:   (619) 236-8400
4   KDH@KurtDavidHermansen.com
    Attorney for Petitioner
5   ERNESTO RIVAS LOPEZ

6

7

8                       UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10  ─────────────────────────────

11  ERNESTO RIVAS LOPEZ,              )   08cv0457 LAB (AJB)
                                      )
12            Petitioner,             )
                                      )   ***FIRST AMENDED* MEMORANDUM
13  v.                                )   OF POINTS AND AUTHORITIES
                                      )   IN SUPPORT OF PETITION
14                                    )   FOR WRIT OF HABEAS CORPUS
    MACK JENKINS, Chief Probation Officer, )
15  San Diego County Probation Department, )
                                      )
16            Respondent,             )
                                      )
17  and                               )
                                      )
18  EDMUND G. BROWN JR., Attorney     )
    General of the State of California, )
19                                    )
              Additional Respondent.  )
20
    ─────────────────────────────
21

22        Petitioner ERNESTO RIVAS LOPEZ, by and through his attorney Kurt David

23  Hermansen, hereby submits this first amended memorandum of points and authorities in

24  support of his petition for habeas corpus pursuant to 28 U.S.C. § 2254.

25

26

27

28

1    **I.    <u>STANDARD OF REVIEW</u>**

2        Habeas relief is granted to a person in state custody where the state court's decision "was

3    contrary to, or involved an unreasonable application of" clearly established United States

4    Supreme Court precedent, 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable

5    determination of the facts in light of the evidence presented in the State court proceeding," 28

6    U.S.C. § 2254(d)(2).

7        According to the Supreme Court's interpretation of § 2254(d)(1), a state court decision

8    involves an "unreasonable application of" Supreme Court precedent "if the state court identifies

9    the correct governing legal principle," but applies that principle in an "objectively unreasonable"

10   manner. *Williams v. Taylor*, 529 U.S. 362, 409, 412, (2000); *see also Sarausad v. Porter*, 479

11   F.3d 671, 676-77 (9th Cir. 2007).   Although a state court's decision must be judged by the

12   standard of "clearly established Federal law, as determined by the Supreme Court of the United

13   States," 28 U.S.C. § 2254(d)(1), Ninth Circuit precedent is "persuasive authority for purposes

14   of determining whether a particular state court decision is an 'unreasonable application' of

15   Supreme Court law," and for determining "what law is 'clearly established.'"   *Duhaime v.*

16   *DuCharme*, 200 F.3d 597, 600 (9th Cir. 1999) (quoting § 2254(d)); *see also Robinson v.*

17   *Ignacio*, 360 F.3d 1044, 1056 (9th Cir. 2004) (Supreme Court has "explicitly refused to limit"

18   authority of federal courts to interpret and apply Supreme Court doctrine).

19       When a petitioner challenges a state court's decision as "based on an unreasonable

20   determination of the facts," a federal court will presume the state court's factual findings to be

21   true, and the petitioner must rebut that "presumption of correctness by clear and convincing

22   evidence." 28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Plumlee v.*

23   *Masto*, 512 F.3d 1204, 1209 (9th Cir. 2008).   Deference, however, "does not by definition

24   preclude relief.  A federal court can disagree with a state court's credibility determination and,

25   when guided by AEDPA, conclude the decision was unreasonable." *Miller-El v. Cockrell*, 537

26   U.S. 322, 340 (2003).

27       In considering a habeas petition, a federal court reviews the "last reasoned decision" by

28   a state court. *Robinson v. Ignacio*, 360 F.3d at 1055.   The last reasoned decision of the state

1  court is the California Court of Appeal's order of March 13, 2007, rejecting Mr. Lopez's state

2  habeas petition. [Exhibit O.]

3  **II.   MR. LOPEZ WAS DENIED HIS SIXTH AMENDMENT RIGHT TO COUNSEL**

4  **WHEN TRIAL COUNSEL FAILED TO ADVISE HIM OF AVAILABLE PLEAS**

5  **TO NON-AGGRAVATED FELONIES (GROUND ONE).**

6  **A.   Deficient Performance**

7  A defendant in a state criminal matter is entitled, under the Sixth and Fourteenth

8  Amendments to the United States Constitution, to the effective assistance of counsel. *Strickland*

9  *v. Washington,* 466 U.S. 668 (1984).   Reasonableness is measured under "prevailing

10  professional norms." *Id.* at 688.   The *Strickland* standard of effective assistance applies in the

11  context of plea negotiations. *Wright v. Van Patten*, __ U.S. __, __, 128 S. Ct. 743, 745 (2008);

12  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).   Both state and federal courts have recognized that an

13  attorney has a duty to inform his or her client about the immigration consequences of a criminal

14  conviction.   E.g., *INS v. St. Cyr*, 533 U.S. 289, 323 (2001); *Magana-Pizano v. INS*, 200 F.3d

15  603, 612 (9th Cir. 1999) (it is "a violation of an attorney's professional duty to his client not to

16  advise him of the immigration consequences of a plea or conviction"); *People v. Bautista*, 8 Cal.

17  Rptr. 3d 862 (Cal. Ct. App. 2004); *People v. Soriano*, 240 Cal. Rptr. 328, 337 (Cal. Ct. App.

18  1987).

19  Mr. Lopez was lawfully residing in the United States on a grant of asylum — a fact

20  known by his trial counsel.   Two of the charges against Mr. Lopez were "possession for sale"

21  counts, which are aggravated felonies under federal immigration law and which would result

22  in the mandatory loss of asylum status and mandatory deportation.   Trial counsel was aware that

23  the possession-for-sale counts were aggravated felonies.   However, trial counsel failed to

24  investigate and pursue possible plea dispositions that would ***not*** include aggravated felonies, and

25  thus would not trigger Mr. Lopez's mandatory deportation.   Trial counsel was not even aware

26  that such potential dispositions existed.   Trial counsel therefore did not advise Mr. Lopez about

27  possible dispositions, including the possibility of "pleading up" to a felony which might require

28  more time in custody but which is not an aggravated felony.   Instead, Mr. Lopez went to trial

1    and was convicted of aggravated felonies.  This failure to advise was objectively unreasonable.

2          On January 27, 2004 — eleven months before Mr. Lopez was arrested — the California

3    Court of Appeal published its decision in *People v. Bautista*, which held that just such a failure

4    to advise could constitute ineffective assistance.  8 Cal. Rptr. 3d 862 (2004).  In *Bautista*, trial

5    counsel failed to advise the defendant that the charge against him — possession of marijuana

6    for sale (Health & Safety Code § 11359) — was an "aggravated felony" under federal law, and

7    that deportation and exclusion from readmission was mandatory for an alien convicted of an

8    aggravated felony.  *Id*. at 868-70; *see also* 8 U.S.C. § 1101, subd. (a)(43)(B)); 8 U.S.C. § 1227,

9    subd. (a)(2)(A)(iii).)  Trial counsel did not advise the defendant — because counsel did not

10   know — that it was possible to "pursue a negotiated plea for violation of a greater but non-

11   aggravated offense such as sale, transport, or offer to sell or transport," such as California

12   Health & Safety Code section 11360.  *Id*. at 868-69.  The Court of Appeal held that this failure

13   to advise could have constituted prejudicial ineffective assistance and ordered an evidentiary

14   hearing.  *Id*. at 872.  The court noted that defense attorneys have a duty to discuss with

15   non-citizen clients different ways of avoiding an "aggravated felony" conviction, and

16   specifically noted that in Bautista's case, trial counsel could have offered to plead to a different

17   but related offense, or offered to "plead up" to a non-aggravated felony, even if the penalty was

18   stiffer.  *Id*. at 871-72.

19         But Mr. Lopez's counsel did not do this.  Even though *Bautista* had been on the books

20   for about a year, trial counsel made the same mistake that *Bautista* held to be ineffective

21   assistance.  "A defendant should be able to make 'informed decisions' after 'meaningful

22   consultation with his attorney about pleas [and trial strategy options] which will have different

23   immigration consequences and whatever advice is given must be 'founded on adequate

24   investigation of federal immigration law.'"  *Bautista*, 8 Cal. Rptr. 3d at 870 (*quoting People v.

25   Soriano*, 240 Cal. Rptr. at 335.)  But here, just as in *Bautista*, trial counsel failed to advise

26   Mr. Lopez of the possibility of pleading to a non-aggravated offense.  As in *Bautista*, trial

27   counsel was not even aware that such a possibility existed.  Mr. Lopez's trial attorney should

28   have been familiar with the holding of *Bautista* and that holding should have been fresh in trial

counsel's memory.  Any competent defense attorney — especially one practicing in Southern California — would been aware of *Bautista*, and would have advised Mr. Lopez about a possible plea bargain which did not include aggravated felonies.

Trial counsel had a duty to be aware of, and advise Mr. Lopez about, the immigration consequences of a conviction.  Moreover, counsel had a duty to advise Mr. Lopez about possible ways to ***avoid or mitigate*** immigration consequences.  Trial counsel failed to perform this duty. "Counsel cannot be required to accurately predict what the jury or court might find, but he can be required to give the defendant the tools he needs to make an intelligent decision." *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002).  Trial counsel provided ineffective assistance by failing to advise Mr. Lopez that it was possible to "plead upward" — that is, pursue a negotiated plea or violation of a greater but non-aggravated offense — when such a plea would avoid the mandatory loss of Mr. Lopez's asylum.

### B.    Prejudice

To prevail on a claim of ineffective assistance, a petitioner must also show he was prejudiced by his attorney's performance — i.e., show that it is reasonably probable that the result would have been different but for counsel's error.  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Here, it is reasonably probable that a result more favorable to Mr. Lopez would have occurred if trial counsel had advised him that a *Bautista*-type plea bargain was available.  Trial counsel was familiar with the policies and procedures of the District Attorney's Office.  [Exhibit G.] Trial counsel had negotiated hundreds of cases with deputy district attorneys, including many with the opposing counsel in Mr. Lopez's case.  [Exhibit G.]  Based on this familiarity and experience, trial counsel could have offered to plead to a non-aggravated felony — a plea offer which would have been accepted by the prosecution.  [Exhibits F, G.]

Mr. Lopez would have gladly accepted such a plea, even if it meant serving more time in custody.  [Exhibit E.]  Moreover, a factual basis existed for such a plea.  [*See* Exhibits G, H, I, J, K.]  Even without an investigation, a factual basis existed for a plea to a non-aggravated offense.  Some of the drugs found at Mr. Lopez's apartment were his, and did not magically

1    appear there.  Obviously they were transported there, and thus Mr. Lopez he could have plead

2    to transportation of drugs in violation of Health & Safety Code section 11360.  Also, Mr. Lopez

3    could have pleaded to being an accessory after the fact to have a chance of avoiding the certain

4    loss of his grant of asylum.  Accessory after the fact (i.e., California Penal Code § 32) is not con-

5    sidered to be an offense "relating to" a controlled substance, so that the conviction does not

6    make the non-citizen deportable or inadmissible for a drug conviction.  (*Castaneda de Esper v.*

7    *INS* (6th Cir. 1977) 557 F.2d 79, 83-84; *see also* Katherine A. Brady, California Criminal Law

8    and Immigration (ILRC 2004) § 3.4A.1 & n.24.)  A state felony conviction for simple posses-

9    sion of a controlled substance is not an aggravated felony in immigration proceedings arising

10    in the Ninth Circuit.

11        If counsel's assistance had not been ineffective, it was reasonably probable that counsel

12    could have negotiated, and Mr. Lopez would have accepted, a plea bargain which did not

13    include "possession for sale" counts, thus making Mr. Lopez eligible for relief from deportation.

14    Just as in *Bautista*,

15            if [the defendant] had known before he pled guilty that there were

16            alternatives that would not create the devastating immigration con-

17            sequences he is facing now, he would not have agreed to enter a

18            plea to possession for sale.  He would have asked his attorney to

19            defend the case in every way possible to avoid or at least minimize

20            the adverse immigration consequences to him.  He would have used

21            the immigration consequences to request that the charge be changed

22            to simple possession or to an equivalent nonaggravated felony

23            offense, and he would have offered to serve more time in custody

24            if necessary to eliminate the possibility of mandatory deportation,

25            or he would have taken the case to trial.

26

27

28

1   *Bautista*, Cal. Rptr. 3d at 871.[1/]   Trial counsel's ignorance prevented him from advising

2   Mr. Lopez in an effective manner, and this failure to advise constituted ineffective assistance.

3   Mr. Lopez was prejudiced because it was reasonably probable that a plea bargain mitigating

4   immigration consequences could have been negotiated.  But for counsel's ineffective assistance,

5   Mr. Lopez would not be facing deportation and loss of asylum.

6       **C.**    **The State Court's Decision**

7       Along with his habeas petition to the California Court of Appeal, Mr. Lopez submitted

8   a sworn declaration from his trial counsel.  [Exhibit F.]  The declaration stated in part that had

9   trial counsel known it was possible for Mr. Lopez "plead up" to non-aggravated offenses, trial

10  counsel ***could have negotiated such a plea.***  In response, the Attorney General submitted sworn

11  declarations from Deputy District Attorneys Lewis and Walden.  [Exhibits L, M.]  Those

12  declarations stated that the District Attorney's office would never have accepted an "upward

13  plea." With his traverse, Mr. Lopez submitted a second sworn declaration from his trial counsel.

14  [Exhibit  G.]  This declaration stated in part that trial counsel had extensive experience

15  negotiating hundreds of cases with the District Attorney's Office, and also had knowledge of

16  the policies and procedures of that office.  Trial counsel declared that based on this knowledge

17  and experience, be believed his offer of an "upward plea" ***would*** have been accepted.  [Exhibit

18  G at 2 ("I believe a counter offer of two counts of Health & Safety Code §§ 11352, 11360, or

19  11379, with a grant of probation, would have been accepted.").]

20      The four declarations — all from sworn members of the California State Bar — clearly

21  established a contested issue of fact.  Trial counsel declared that he ***could*** have negotiated a

22  favorable plea that would have been accepted; the prosecutors declared that they ***would not*** have

23  accepted such a plea.  Faced with these dueling declarations, the Court of Appeal held the

24  following:

25

26

27

28       [1/] The fact that the defendant in *Bautista* pled guilty, whereas Mr. Lopez was convicted at trial,
is immaterial.  In both cases, the unreasonable performance is identical: counsel failed to advise about
possible pleas to non-aggravated felonies.  The prejudice is also identical: counsel's unreasonable
performance resulted in conviction for aggravated felonies.

1          Even if counsel were ineffective by not pursuing an "upward plea,"

2          Lopez cannot show he was prejudiced because the People would

3          not have agreed to the plea bargain.  In a return to the order to show

4          cause issued by the superior court, Deputy District Attorneys Greg

5          Walden and Kathleen Lewis declared they would not have accepted

6          the "upward plea" because the District Attorney "do[es] not make

7          special pleas to allow non-citizen defendants to avoid deportation

8          as a consequence of their crimes."

9    [Exhibit O at 2.]  This was the extent of the court's determination.  The Court of Appeal did not

10   address whether trial counsel's performance was ineffective.   This is the "last reasoned

11   decision" from a California court.

12        **D.**     **The State Court's Decision Was Based on an Unreasonable Determination**

13               **of the Facts in Light of the Evidence Presented.**

14         The decision of the California Court of Appeal was based on an unreasonable

15   determination of the facts in light of the evidence presented at the state court proceeding.  *See*

16   28 U.S.C. § 2254(d)(2).  The court was presented with two sworn declarations from Mr. Lopez's

17   trial counsel, both providing clear evidence that Mr. Lopez was prejudiced by counsel's

18   ineffective assistance.  But the court ***completely disregarded*** this evidence.  Instead, the court

19   took at face value two competing declarations from Deputy District Attorneys.  Faced with a

20   contested issue of fact, the court was required by California law to order an evidentiary hearing

21   to resolve it.  *See, e.g., People v. Duvall*, 886 P.2d 1252, 1258 (Cal. 1995); *In re Clark*, 855 P.2d

22   729, 750 n.16 (Cal. 1993); Cal. Penal Code § 1484.  Yet the court did not.  It chose to believe

23   the prosecutors, and to disbelieve — and disregard — the word of a defense attorney.  It is an

24   objectively unreasonable determination of the facts to take four conflicting declarations, all from

25   sworn members of the California Bar, and to adopt one side as the facts.  This was a "dismissive

26   and strained interpretation" of evidence before the state court.  *See Miller-El v. Dretke*, 545 U.S.

27   at 265 (holding that state court's determinations of fact were unreasonable under § 2254(d)(2)).

28   "[T]he state-court fact-finding process is undermined where the state court has before it, yet

1  apparently ignores, evidence that supports petitioner's claim." *Taylor v. Maddox*, 366 F.3d 992,

2  1001 (9th Cir. 2004).  Moreover, the Court of Appeal's failure to order an evidentiary hearing

3  was clear legal error, and "where the state court's legal error infects the fact-finding process, the

4  resulting factual determination will be unreasonable and no presumption of correctness can

5  attach to it." *Id*. at 1001.

6          *Miller-El v. Dretke* is illustrative.  In that case, the state court had been presented with

7  conflicting evidence: the defendant presented evidence of racial discrimination by the

8  prosecution during jury selection, and the prosecution presented conflicting evidence that the

9  prosecutors' actions were race-neutral.  *See Miller-El*, 545 U.S. at 236.  The state court then

10 effectively disregarded the defendant's evidence and found that the prosecutors' actions were

11 proper. *Id*. at 236-37.  The Supreme Court found that the defendant's evidence was compelling,

12 and that therefore "the state court's conclusion was unreasonable as well as erroneous." *Id*. at

13 265.

14         Another illustrative case is *Nunes v. Mueller*, 350 F.3d 1045 (9th Cir. 2003).  In *Nunes*,

15 the petitioner had claimed to the California Court of Appeal that he was the victim of ineffective

16 assistance during plea bargaining because his trial counsel had not fully communicated the terms

17 of a plea offer.  *Id*. at 1049-50.  Nunes claimed he suffered prejudice because if counsel had

18 effectively communicated the offer, Nunes would have accepted it.  *Id*.  The Court of Appeal

19 rejected the claim without an evidentiary hearing, holding that Nunes's contentions were

20 meritless "on their face" and "simply not credible," and therefore the petition did not state a

21 prima facie claim of ineffective assistance.  *Id*. at 1053-54.  The Ninth Circuit held "the state

22 court's rejection of Nunes' habeas claim is unreasonable under ***both*** Sections 2254(d)(1) and

23 (2)." *Id*. at 1054 (emphasis added).  The Ninth Circuit noted that Nunes's assertions — "(1) that

24 Nunes' attorney gave him the wrong information and advice about the state's plea offer and

25 (2) that if Nunes had instead been informed accurately, he would expressly have taken the

26 bargain" — clearly sufficed to support a claim of ineffective assistance.  *Id*.  The court further

27 held:

28

1                      With the state court having purported to evaluate Nunes' claim for

2                      sufficiency alone, it should not have required Nunes to prove his

3                      claim without affording him an evidentiary hearing — and it surely

4                      should not have required Nunes to prove his claim with absolute

5                      certainty.  Nunes needed only to demonstrate that he had sufficient

6                      evidence for a reasonable fact finder to conclude with "reasonable

7                      probability" that he would have accepted the plea offer, a

8                      probability "sufficient to undermine the result" (*Strickland*, 466

9                      U.S. at 694).  ***He met that burden, and to the extent that the state***

10                    ***court demanded more it applied the* Strickland *test unreasonably.***

11                   In other words, ***it was objectively unreasonable for the state court***

12                    ***to conclude on the record before it that no reasonable factfinder***

13                    ***could believe that Nunes had been prejudiced.***

14

15   *Id.* at 1054-55 (emphasis added).

16

17       In *Taylor v. Maddox*, the Ninth Circuit again granted habeas relief where the California

18   Court of Appeal "overlooked or ignored evidence . . . highly probative and central to petitioner's

19   claim." 366 F.3d at 1001.  Taylor, a juvenile convicted of murder, had argued to the state courts

20   that his confession was the result of coercion.  *Id.* at 966.  At a pre-trial suppression hearing,

21   four witnesses testified:  the two officers who obtained the confession (testifying that no

22   coercion occurred), Taylor (testifying that his confession was involuntary), and an attorney who

23   spoke with Taylor soon after the confession was given.  *Id.* at 1005.  The attorney testified that

24   Taylor called him in tears, highly agitated, saying that he had falsely confessed to a murder after

25   being interrogated for four straight hours; that Taylor said he had asked at least four times to

26   have his attorney present, had asked to have his mother present, and had asked to make a phone

27   call, but was denied; and that Taylor said he only confessed so that he could call his mother and

28   attorney.  *Id.* at 1007 n.11.  Yet the trial court and Court of Appeal virtually ignored the lawyer's

1  testimony in determining that the confession was voluntary — and this dismissal of probative

2  evidence constituted a procedural flaw which made the state court's determination unreasonable:

3

4            While Close's testimony is perhaps not conclusive, it is certainly

5            highly probative.  A rational fact-finder might discount it or,

6            conceivably, find it incredible, ***but no rational fact-finder would***

7            ***simply ignore it.***  Yet this is precisely what the state courts did . . . .

8            The state appellate court . . . utterly fail[ed] to discuss the

9            significance, or even the existence, of Close as a witness at the

10           suppression hearing, even though the importance of his testimony

11           was vigorously argued in Taylor's brief.  A decision on which turns

12           whether a teenager will spend the rest of his days behind bars

13           merits closer judicial attention from the state courts.

14

15  *Id.* at 1006-07 (emphasis added).  The Ninth Circuit went on to note:

16

17           In making findings, a judge must acknowledge significant portions

18           of the record, particularly where they are inconsistent with the

19           judge's findings.  The process of explaining and reconciling

20           seemingly inconsistent parts of the record lays bare the judicial

21           thinking process, enabling a reviewing court to judge the rationality

22           of the fact-finder's reasoning. . . . [F]ailure to take into account and

23           reconcile key parts of the record casts doubt on the process by

24           which the finding was reached, and hence on the correctness of the

25           finding.

26

27  *Id.* at 1007-1008.  *See also id.* at 1001 ("where the state courts plainly misapprehend or misstate

28  the record in making their findings, and the misapprehension goes to a material factual issue that

1    is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding

2    process, rendering the resulting factual finding unreasonable.") (citing *Wiggins v. Smith*, 539

3    U.S. 510, 527-28 (2003)).

4          Here, the California Court of Appeal has unreasonably disregarded probative and credible

5    evidence in making a critical factual finding.  It was an unreasonable determination of the facts

6    for the court to state ***categorically*** that an "upward plea" offer would not have been accepted by

7    the District Attorney's Office when the court had before it persuasive evidence that such a plea

8    offer ***would*** have been accepted.  The Court of Appeal had two sworn declarations from trial

9    defense counsel stating his belief, based on extensive experience, that he ***would*** have been able

10   to negotiate a plea deal.  This evidence is far from mere "[s]elf-serving statements by a

11   defendant that his conviction was constitutionally infirm . . . ." *See United States v. Allen*, 153

12   F.3d 1037, 1041 (9th Cir. 1998) (*quoting Cuppett v. Duckworth*, 8 F.3d 1132, 1139 (7th Cir.

13   1993) (en banc)).  To the contrary, it is clear and convincing evidence that the appellate court's

14   factual determination was unreasonable and not entitled to deference.  It was simply unreason-

15   able for the court to determine the facts as it did without an evidentiary hearing.  *See Nunes v.*

16   *Mueller*, 350 F.3d at 1055 n.6 ("Nunes *did* present objective corroborative evidence to the state

17   court, but the state court unreasonably rejected it as not credible and hence as unpersuasive.");

18   *Taylor v. Maddox*, 366 F.3d at 1008 ("Failure to consider key aspects of the record is a defect

19   in the fact-finding process.").

20         In sum, the state appellate court's determination, because it failed to consider key aspects

21   of the record before it, was procedurally defective and thus deserves no deference.  Even under

22   any standard of deference, however, the determination was unreasonable.  It is unreasonable for

23   a court of law to categorically accept the sworn declaration of a prosecutor while rejecting the

24   contradictory sworn declaration of a defense attorney.  This blatant favoritism belies the basic

25   principles of fairness guaranteed by the United States Constitution, and it was an unreasonable

26   determination of the facts.

27

28

**E.**     **The State Court's Decision Was an Unreasonable Application of Clearly Established Supreme Court Precedent.**

The decision of the California Court of Appeal was also an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal principle," but applies that principle in an "objectively unreasonable" manner. *Williams v. Taylor*, 529 U.S. at 412, 409; *Sarausad v. Porter*, 479 F.3d at 676-77. *Williams* noted that the *Strickland* standard for effective assistance of counsel is unquestionably clearly established law as determined by the Supreme Court. *Williams* at 391. The Court also noted that "rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule." *Id.* at 382. "As *Williams* points out, a rule is designed for the specific purpose of evaluating a myriad of factual contexts, and thus a novel factual situation may nonetheless be dictated by Supreme Court precedent." *Robinson v. Ignacio*, 360 F.3d at 1057.

It was patently unreasonable for the state appellate court to find that Mr. Lopez ***could not have been*** prejudiced by his counsel's performance becasue the District Attorney would have never accepted an "upward plea." Under *Strickland*, a petitioner must show "a reasonable probability that, but for his attorney's deficient performance, the result would have been different." *United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir. 1994); *see also Strickland*, 466 U.S. at 694. In *Blaylock*, the Ninth Circuit remanded for an evidentiary hearing to determine whether a defendant would have accepted a plea offer, because the plea bargain was a more favorable disposition. *Blaylock* at 1466-68. Mr. Lopez has more than met this standard. He submitted evidence to the state court showing a reasonable probability that he ***was*** in fact prejudiced. Yet the state court ignored it and dismissed his claim without holding an evidentiary hearing. This is an unreasonable application of *Strickland*; the failure to consider relevant legal factors and/or relevant evidence when considering a claim of ineffective assistance is an unreasonable application of Supreme Court precedent. *See, e.g., Wiggins v. Smith*, 539 U.S. at 527-28.

III.    **MR. LOPEZ WAS DENIED HIS SIXTH AMENDMENT RIGHT TO COUNSEL WHEN TRIAL COUNSEL FAILED TO INVESTIGATE READILY AVAILABLE DEFENSES TO THE AGGRAVATED FELONY CHARGES (GROUND TWO).**

A.    **Deficient Performance**

All attorneys have a duty to conduct a reasonable investigation of the case enabling counsel to make informed decisions about how best to represent the client. *Strickland*, 466 U.S. at 691. Counsel has a duty to make all reasonable investigations and may only decline to make a particular investigation if that decision is reasonable under all the circumstances. *Strickand* at 691. Trial counsel is ineffective "where he neither conducted a reasonable investigation nor made a showing of strategic reasons for failing to do so." *Avila v. Galaza*, 297 F.3d 911, 918-19 (9th Cir. 2002) (*quoting Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994)); *see also Reynoso v. Giurbino*, 462 F.3d 1099, 1112-13 (9th Cir. 2006) ("the failure to investigate may in itself constitute ineffective assistance of counsel."). "A lawyer who fails adequately to investigate, and to introduce into evidence, records that demonstrate his client's factual innocence, or that raise sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999).

Trial counsel's failure to investigate the charges against Mr. Lopez was objectively unreasonable. Here, trial counsel did no investigation whatsoever of the charges against Mr. Lopez. He only met with Mr. Lopez on one occasion. [Exhibit E.] He made no investigation, even though he knew of Mr. Lopez's immigration status, and even though he was under the impression that a conviction would mean the mandatory loss of Mr. Lopez's immigration status. [Exhibit F.] Any reasonably competent attorney would had conducted an investigation into charges which carried such severe immigration consequences to his or her client. Counsel's lack of investigation showed at trial, where counsel put on no defense whatsoever to the "possession for sale" counts. [Exhibit F.] Despite numerous, easily located witnesses, Mr. Lopez's trial attorney failed to investigate and present witnesses in Mr. Lopez's favor to show the jury that the drugs were not possessed for sale. Given that trial counsel obviously knew the government had an expert who would testify that the drugs were possessed for sale,

1    the lack of contrary evidence — when such evidence was readily available — cannot be deemed

2    reasonable representation.

3        **B.    Prejudice**

4        It is virtually certain that a result more favorable to Mr. Lopez would have occurred if

5    trial counsel had followed his duty to investigate.  Even a cursory investigation would have

6    uncovered copious admissible evidence that Mr. Lopez was guilty only of possession, not pos-

7    session for sale.  Mr. Lopez's friends have readily admitted that Mr. Lopez never sold drugs.

8    The drugs found at Mr. Lopez's apartment belonged mainly to his friends; Mr. Lopez's

9    apartment was a place where he and his friends would hang out and use drugs.  Moreover, the

10   large amount of drugs found by police was there only because Mr. Lopez and his friends were

11   preparing to go to Los Angeles for a New Year's party.  [Exhibits E, H, I, J, K.]

12       Given that the undersigned obtained this exculpatory evidence with minimal effort, an

13   investigation by trial counsel would have been reasonably likely to uncover it.  It is more than

14   reasonably probable that a result more favorable to Mr. Lopez would have occurred if trial

15   counsel had followed his duty to investigate.  This readily available evidence would have

16   provided a factual basis for Mr. Lopez to "plead up" to "sale, transport, or offer to sell or trans-

17   port a controlled substance" in violation of Health & Safety Code section 11360, which is not

18   an aggravated felony in immigration proceedings arising in the Ninth Circuit.  (*Oliveria-*

19   *Ferreira v. Ashcroft* (9th Cir. 2004) 382 F.3d 1045; *see also In re McDonald & Brewster* (BIA

20   1975) 15 I&N Dec. 203 [importation and possession for one's own use is not trafficking];

21   *People v. Bautista*, *supra*, 8 Cal. Rptr. 3d at 872.  Because Mr. Lopez already had asylum, a plea

22   bargain which did not include "possession for sale" counts would have made him eligible for

23   discretionary immigration relief called "Cancellation of Removal" even with a conviction for

24   "transporting" or "offering" to sell marijuana under Health & Safety Code section 11360.  Trial

25   counsel could have easily negotiated such a deal.  [Exhibit G at p. 2.]  Mr. Lopez would have

26   accepted such a plea bargain, even if it had meant spending a longer time in custody.

27   [Exhibit E.] If counsel's assistance had not been ineffective, Mr. Lopez would have entered into

28   a favorable plea bargain.

In addition, the evidence uncovered by an investigation would have provided a strong defense to the "possession for sale" counts and convicted of simple possession at trial, making it reasonably probable that Mr. Lopez would have been acquitted of those charges had he gone to trial.  Trial counsel would have had several witnesses to call on Mr. Lopez's behalf; those witnesses would have testified that the drugs found were theirs, and that Mr. Lopez did not sell drugs.  [H, I, J, K.]  If Mr. Lopez had been acquitted of the "possession for sale" counts, he would have been eligible for Cancellation of Removal, thus radically changing the outcome (i.e., immigration consequences).

In sum, trial counsel's complete failure to investigate clearly constituted ineffective assistance, especially in light of the knowledge that Mr. Lopez faced loss of asylum and deportation.[2]  Mr. Lopez was prejudiced because an investigation would have produced evidence that provided a factual basis for a plea to non-aggravated offenses, or a defense at trial to the aggravated offenses.  It is reasonably probable that had trial counsel's assistance been effective, Mr. Lopez would not be facing the loss of his asylum and deportation.

**C.     The State Court's Decision**

Along with his habeas petition to the California Court of Appeal, Mr. Lopez presented declarations from himself and four of his friends, attesting to the fact that Mr. Lopez's apartment was a place where he and his friends would hang out and do drugs; that Mr. Lopez did not like to be alone and would often let people stay at his apartment and store their possessions there; that Mr. Lopez's friends would store their own drugs in his apartment because it was convenient; that a large quantity of drugs was found because the friends were getting ready for a New Year's Eve celebration in West Hollywood; and that Mr. Lopez used drugs, but never sold drugs or possessed them for sale.  [Exhibits E, H, I, J, K.]  In sum, this was probative evidence that Mr. Lopez was not guilty of possession for sale — the aggravated felony counts.  This evidence ***was not controverted*** by the Attorney General.

---

[2]  Notably, deportation, while certainly a prejudicial outcome, pales in comparison to the loss of asylum.  While deportation means being sent back to your native country, loss of asylum means being sent back to your native country to face harassment, rape, torture or death.

1     In the face of this uncontroverted evidence, the Court of Appeal made the conclusory

2   determination that "[t]he proffered evidence does not establish a meritorious defense that would

3   have resulted in a better outcome for Lopez." [Exhibit O at 2.]  This was the extent of the

4   court's determination.[3/]  The Court of Appeal did not address whether trial counsel's perform-

5   ance was ineffective; it instead held that Mr. Lopez could not have been prejudiced by

6   ineffective assistance because effective assistance would have been unavailing.  This is the "last

7   reasoned decision" from a California court.

8       **D.**     **The State Court's Decision Was Based on an Unreasonable Determination**

9             **of the Facts in Light of the Evidence Presented at the State Court**

10            **Proceeding.**

11     This "determination" of the facts, made without an evidentiary hearing, was patently un-

12   reasonable in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(2).  It hardly constitutes

13   a determination of fact at all, and is instead a conclusory statement of law supported by nothing.

14   *See Nunes v. Mueller*, 350 F.3d at 1055 (noting weakness of state court's findings, and holding

15   that "with the state court having refused Nunes an evidentiary hearing, we need not of course

16   defer to the state court's factual findings — if that is indeed how those stated findings should

17   be characterized — when they were made without such a hearing.").  Mr. Lopez submitted

18   evidence supporting a defense to the aggravated felony charges against him, and which therefore

19   showed he was prejudiced by his trial counsel's failure to investigate.  The Attorney General

20   produced ***no evidence*** to rebut the declarations submitted by Mr. Lopez.  Because Mr. Lopez

21   had alleged facts which, if true, entitled him to relief, the court was required to order an

22   evidentiary hearing.  *People v. Duvall*, 886 P.2d at 1258.  It was objectively unreasonable for

23   the court to completely reject this evidence with no explanation and without benefit of an

24   evidentiary hearing.  *See Miller-El v. Dretke*, 545 U.S. at 265; *Taylor v. Maddox*, 366 F.3d at

25   1006-07; *Nunes v. Mueller* at 1055.

26

27

28   [3/]  The Court of Appeal, in noting that the declarations "are from addicts who used drugs with Lopez," was perhaps suggesting that the proffered evidence was not credible.  However, the Court of Appeal did not state ***why*** the declarations did not establish a meritorious defense; the court only stated that the evidence would not have resulted in a better outcome.

1    The declarations were persuasive evidence for several reasons.  The four declarations

2    corroborate each other and Mr. Lopez.  Each sworn declaration admits drug use, against the

3    declarant's interest.  Moreover, the declarations are from citizens who, like Mr. Lopez, are

4    turning away from drugs and turning their lives around.  Richard Granstaff's declaration states

5    that he has been clean of drugs since 2004, that his convictions have been expunged after

6    successful completion of diversion, and that he is currently in a recovery program with

7    Mr. Lopez.  [Exhibit H.]    Richard Mancha also successfully completed diversion and is

8    currently in Crystal Meth Anonymous, Alcoholics Anonymous, and Narcotics Anonymous.

9    [Exhibit K.]    Jose Clark completed a drug treatment program and is in Crystal Meth

10   Anonymous.  [Exhibit J.]  The Court of Appeal was simply unreasonable in rejecting these

11   witnesses' declarations without holding an evidentiary hearing.  *See Nunes v. Mueller*, 350 F.3d

12   at 1054; *Taylor v. Maddox*, 366 F.3d at 1006-07.

13        **E.    The State Court's Decision Was an Unreasonable Application of Clearly**

14             **Established Supreme Court Precedent.**

15        Moreover, the Court of Appeal's determination that no prejudice occurred was a clearly

16   unreasonable application of *Strickland*.  *See* 28 U.S.C. § 2254(d)(1).  *See also, e.g., Sanders v.*

17   *Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) (holding that the failure to investigate and present

18   the confession of a third party deprived defendant "of the most critical evidence supporting his

19   best defense"); *Brown v. Myers*, 137 F.3d 1154, 1157-58 (9th Cir. 1998) (holding that failure

20   to interview and present alibi witnesses who would have supported the defendant's version of

21   events was prejudicial); *Luna v. Cambra*, 306 F.3d 954, 961-66 (9th Cir.) (holding that the

22   failure to interview and present alibi witnesses and to admit a third party out-of-court confession

23   to the crime was prejudicial), *amended by* 311 F.3d 928 (9th Cir. 2002).

24        The Ninth Circuit has granted habeas relief in a situation very similar to Mr. Lopez's.

25   In *Riley v. Payne*, 352 F.3d 1313 (9th Cir. 2003), the petitioner (Riley) had been convicted of

26   assault after a trial in which he claimed self-defense.  *Id.* at 1315-16.  Riley filed a personal

27   restraint petition in the Washington state courts, alleging that his trial counsel (Clower) had been

28   ineffective by not interviewing a key witness or calling him at trial.  *Id.* at 1316-17.  Along with

his petition, Riley submitted a declaration from the witness in which the witness claimed he was present at the confrontation where the purported victim of the assault (Jamarillo) threatened to shoot Riley, that the witness took Jamarillo's threat seriously (the witness fled) and that Riley later told the witness that Jamarillo had tried to shoot him.  *Id.* at 1317-18.  The Washington Supreme Court rejected the petition on the grounds that "there is no reasonable probability that [the witness]'s testimony would have changed the outcome."  *Id.* at 1322.  The state court affirmed the factual findings of its commissioner, who found:

> Mr. Riley fails to show that there was no legitimate tactical reason not to pursue Pettis as a witness.  Pettis had a criminal record, and he might well have been implicated as an accomplice in Mr. Riley's crimes.  And as Pettis admits, he initially misled the police about his knowledge of the incident.  Under the circumstances, counsel could have legitimately decided to concentrate on attacking the credibility of Jaramillo and Calloway, who had criminal backgrounds.  Moreover, according to his declaration, Pettis would have verified only that someone threatened to shoot Mr. Riley.  He evidently did not know whether Jaramillo or Calloway actually had a gun, and he was not a witness to the critical events which ensued.

*Id.*  The Ninth Circuit found this application of *Strickland* to be objectively unreasonable, because the trial attorney's failure to investigate "would be soundly decried by any reasonable defense counsel":

> Clower's failure to interview Pettis resulted in actual prejudice to Riley.  ***Clower never interviewed Pettis, so Clower could not have evaluated Pettis's potentially helpful testimony for use in Riley's defense.***  The Commissioner of the Washington State Supreme

1    Court incorrectly considered Pettis's potential testimony to be

2    inconsequential. But the Commissioner's analysis not only *ignored*

3    *the significance* of Pettis's potential testimony about Jaramillo's

4    verbal threat precipitating the initial confrontation, but also that

5    Pettis could testify Riley told Pettis minutes after the shooting that

6    Jaramillo's movement to his gun provoked Riley's shooting.  This

7    was also an unreasonable application of *Strickland*.

8

9         The state court's reasoning also speculated that counsel

10   might have had some "tactical reason not to pursue Pettis as a

11   witness," and noted that Pettis had a criminal record, might have

12   been implicated as an accomplice to Riley and misled police about

13   his knowledge of the incident.  Notwithstanding whether such

14   concerns might have justified counsel bypassing the possible use of

15   Pettis as a witness after interviewing him, the record is undisputed

16   that counsel did not contact Pettis, so counsel cannot be presumed

17   to have made an informed tactical decision.  Those accusing Riley

18   were gang members.  It would have been reasonable for his defense

19   counsel to defend him not only with his own bare testimony but

20   also with that of Pettis who was with him when the alleged threat

21   was made, and who heard Riley's excited comment a few minutes

22   after the shooting.

23

24        Further, it was not objectively reasonable for the state court

25   to reject Riley's claim based on the undisputed premise that Pettis

26   did not know for sure if Jaramillo or Calloway had a gun and did

27   not see the final critical events that followed Pettis's flight.  The

28   relevant testimony of Pettis, as we have explained, was that

1      Jaramillo had threatened Riley's life and that shortly after the
2      shooting, Riley told Pettis that Jaramillo had tried to shoot Riley.
3      ***This testimony, if credited by the jury, would have made Riley's
4      story more believable and acceptable as a tale of self-defense.*** The
5      Washington Court of Appeals acknowledged that Pettis might
6      "have corroborated Riley's assertion that he was threatened," but
7      that court, with all respect, failed to attach sufficient significance
8      to the importance of material, corroborating evidence in this case.

9

10   *Id.* at 1323-24 (footnote omitted) (emphasis added).

11

12        The Ninth Circuit concluded that:

13

14      a reasonably effective defense counsel with Riley's interests in
15      mind should have been alert to and interested in having Pettis
16      testify to back up Riley's story of threat . . . .   A reasonably
17      effective defense counsel ***should have at least interviewed*** Pettis to
18      confirm that Riley's statement about Pettis's knowledge was true
19      and to make an informed judgment about whether Pettis's
20      testimony would help Riley's claim of self-defense.   Because
21      Riley's counsel did not interview or call a key witness who would
22      have corroborated Riley's testimony that Riley was not the first
23      aggressor and drew his gun in response to a threat, a key witness
24      who himself fled from the threat, fearful of violence, our
25      confidence in the verdict is undermined, and ***we are left with the
26      firm conviction that Riley did not get a fair shake from the legal
27      system.***

28

1  *Id.* at 1325 (emphasis added). As in *Riley*, the state court unreasonably applied *Strickland* when

2  it found that no prejudice could have occurred to Mr. Lopez. The evidence was produced to the

3  court. The evidence provided a factual basis to a non-aggravated-felony plea. And the jury may

4  well have credited the witnesses and acquitted Mr. Lopez of the possession for sale counts. Yet

5  the Court of Appeal, applying *Strickland* to this evidence, held that it could not establish

6  prejudice. This was an unreasonable application.

7  **IV.    ANY DISPUTED FACTUAL ISSUES MUST BE RESOLVED WITH AN**

8  **EVIDENTIARY HEARING UNLESS THE WRIT IS GRANTED WITHOUT A**

9  **HEARING.**

10  "[W]here a petitioner raises a colorable claim of ineffective assistance, and where there

11  has not been a state or federal hearing on this claim, we must remand to the district court for an

12  evidentiary hearing." *Stankewitz v. Woodford*, 365 F.3d 706, 708 (9th Cir.2004) (*quoting Smith*

13  *v. McCormick*, 914 F.2d 1153, 1170 (9th Cir.1990)). Mr. Lopez has certainly raised a "colorable

14  claim" of ineffective assistance, and should have been afforded an evidentiary hearing on his

15  claim. Because he requested and was denied a hearing in state court proceedings, Mr. Lopez

16  cannot be faulted for "fail[ing] to develop the factual basis of [his] claim in State court."

17  *Insyxiengmay v. Morgan*, 403 F.3d 657, 670 (9th Cir.2005) (citing 28 U.S.C. § 2254(e)(2)).

18  When a habeas petitioner has not failed to develop the factual basis of his claim in state court,

19  he is entitled to an evidentiary hearing in federal court if he can show that:

20

21  (1) the merits of the factual dispute were not resolved in the state

22  hearing; (2) the state factual determination is not fairly supported

23  by the record as a whole; (3) the fact-finding procedure employed

24  by the state court was not adequate to afford a full and fair hearing;

25  (4) there is a substantial allegation of newly discovered evidence;

26  (5) the material facts were not adequately developed at the

27  state-court hearing; or (6) for any reason it appears that the state

28

1            trier of fact did not afford the habeas applicant a full and fair

2            hearing.

3

4   *Townsend v. Sain*, 372 U.S. 293, 313 (1963) (*overruled on other grounds in Keeney v.*

5   *Tamayo-Reyes*, 504 U.S. 1, 5 (1992)); *Earp v. Ornoski*, 431 F.3d 1158, 1167 (9th Cir. 2005).

6   "Assuming that the petitioner has not failed to develop his claim and can meet one of the

7   *Townsend* factors, 'an evidentiary hearing on a habeas corpus petition is required whenever

8   petitioner's allegations, if proved, would entitle him to relief.'" *Insyxiengmay*, 403 F.3d at 670

9   (*quoting Turner v. Marshall*, 63 F.3d 807, 815 (9th Cir. 1995)). Mr. Lopez is entitled to an

10  evidentiary hearing because the California Court of Appeal's factual determinations were not

11  fairly supported by the record as a whole, and the court's fact-finding procedure — i.e., making

12  credibility determinations on the basis of conflicting declarations without an evidentiary hearing

13  — was not adequate to afford Mr. Lopez a full and fair hearing.

14           As argued above, the state court was unreasonable in rejecting Mr. Lopez's claims with-

15  out an evidentiary hearing. Mr. Lopez's petition states a prima facie claim for relief. He has

16  submitted two sworn declarations from a member of the California bar, in which trial counsel

17  states that, based on his experience negotiating cases with the District Attorney's Office and his

18  knowledge of the policies and procedures of the District Attorney's office, he would have been

19  able to successfully negotiate a plea bargain that did not include aggravated felonies. Trial

20  counsel's declarations state his belief that an offer to "plead up" would have been accepted, and

21  that there was a factual basis for such a plea. Mr. Lopez has also submitted declarations from

22  himself and from four other witnesses, showing that he had a factual basis to an "upward plea"

23  and a strong defense to the aggravated felonies at trial.

24           If the Attorney General submits conflicting declarations, this Court would face a con-

25  tested issue of fact, and must order an evidentiary hearing to resolve them. Where the resolution

26  of disputed facts depends on the district court's credibility determination, the court may ***not*** rely

27  on documentary testimony and must instead order an evidentiary hearing so that the court can

28  judge the credibility of witnesses through their live testimony. *Earp v. Ornoski*, 431 F.3d at

1169-1170; *see also United States v. Navarro-Garcia*, 926 F.2d 818, 822 (9th Cir. 1991) ("Unless the court is able to determine without a hearing that the allegations are without credibility or that the allegations if true would not warrant a new trial, an evidentiary hearing must be held."). This court must order an evidentiary hearing unless the writ is granted without a hearing.

## V.    CONCLUSION

Mr. Lopez prays that this Court order an evidentiary hearing to resolve any contested factual issues or that this Court grant the writ without an evidentiary hearing.

Dated: _____

                         Respectfully submitted,

            By    _____
                         KURT DAVID HERMANSEN
                         Attorney for Petitioner Ernesto Rivas Lopez