1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GARY W. SCHONS
   Senior Assistant Attorney General
4  KEVIN VIENNA
   Supervising Deputy Attorney General
5  ANTHONY DA SILVA, State Bar No. 159330
   Deputy Attorney General
6    110 West A Street, Suite 1100
     San Diego, CA 92101
7    P.O. Box 85266
     San Diego, CA 92186-5266
8    Telephone:  (619) 645-2608
     Fax:  (619) 645-2271
9    Email:  Anthony.DaSilva@doj.ca.gov

10  Attorneys for Respondent

11             IN THE UNITED STATES DISTRICT COURT

12          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14  **ERNESTO RIVAS LOPEZ,**                      08CV0457-LAB (AJB)

15                         Petitioner,   **MEMORANDUM OF POINTS
                                         AND AUTHORITIES IN**
16           **v.**                      **SUPPORT OF ANSWER TO
                                         PETITION FOR WRIT OF**
17  **MACK JENKINS, Chief Probation Officer, et. al.,**   **HABEAS CORPUS**

18                         Respondents.

19

20

21

22

23

24

25

26

27

28

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GARY W. SCHONS
   Senior Assistant Attorney General
4  KEVIN VIENNA
   Supervising Deputy Attorney General
5  ANTHONY DA SILVA, State Bar No. 159330
   Deputy Attorney General
6    110 West A Street, Suite 1100
     San Diego, CA 92101
7    P.O. Box 85266
     San Diego, CA 92186-5266
8    Telephone:  (619) 645-2608
     Fax:  (619) 645-2271
9    Email:  Anthony.DaSilva@doj.ca.gov

10  Attorneys for Respondent

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14  **ERNESTO RIVAS LOPEZ,**                    08CV0457-LAB (AJB)

15                              Petitioner,     **MEMORANDUM OF POINTS
                                                AND AUTHORITIES IN**
16        **v.**                                **SUPPORT OF ANSWER TO
                                                PETITION FOR WRIT OF**
17  **MACK JENKINS, Chief Probation Officer, et. al.,**   **HABEAS CORPUS**

18                              Respondents.

19
                            **INTRODUCTION**
20

21        Ernesto Rivas Lopez ("Lopez") filed a Petition for Writ of Habeas Corpus pursuant to 28

22  U.S.C. § 2254 alleging that he received ineffective assistance from his trial counsel because counsel

23  failed: (1)  to pursue an "upward plea" to a greater but non-aggravated offense which would have

24  made Lopez eligible for relief from deportation; and, (2) to investigate and present evidence that

25  would have shown that Lopez was guilty only of possession or transportation of drugs, leaving

26  Lopez eligible for relief from deportation.  Lopez is not entitled to federal habeas corpus relief

27  because the state courts' denial on his claims on habeas corpus was not contrary to or an

28  unreasonable interpretation of established United States Supreme Court precedent and was not based

1    on an unreasonable determination of the facts presented to the state courts. *See* 28 U.S.C. §

2    2254(d). Lopez is also not entitled to an evidentiary hearing in this Court because he has not alleged

3    facts that, if true, would entitle him to habeas relief.

4                                    **STATEMENT OF THE CASE**

5             A San Diego County jury convicted Lopez of possession of cocaine for sale (Cal. Health

6    & Safety Code § 11351; count 1); possession of methamphetamine for sale (Cal. Health & Safety

7    Code § 11378; count 2); possession of marijuana for sale (Cal. Health & Safety Code § 11359; count

8    3); possession of ketamine (Cal. Health & Safety Code § 11377(b)(2); count 5); possession of

9    paraphernalia used for narcotics (Cal. Health & Safety Code § 11364; count 6); and unauthorized

10   possession of a hypodermic needle or syringe (Cal. Bus. & Prof. Code § 4140; count 7) in Case No.

11   SCD187886. (Lod. 1 - Clerk's Transcript (CT) at 1-4; 52-57; Lod. 3 - Reporter's Transcript (RT)

12   at 283-284.) The court suspended imposition of the sentence and placed Lopez on probation for five

13   years on the condition that he serve 365 days in county jail. (Lod. 1 - CT at 132-134, 161; Lod. 3 -

14   RT at 362-364.)

15            Lopez appealed, contending that: (1) the trial court erred in instructing the jury that they

16   could find him liable for possession for sale (counts 1-3) where he did not have the specific intent

17   to personally sell the controlled substance, but rather the specific intent that someone else do so; and

18   (2) the order granting probation improperly reflected the terms and conditions imposed by the court.

19   (Lod. 4 - Lopez's Opening Brief at 7-19.) In an unpublished opinion, the California Court of

20   Appeal, Fourth Appellate District, Division One, affirmed the judgment and remanded the case for

21   the trial court to redetermine the terms of probation. (Lod. 7 - *People v. Lopez*, No. D046705, slip.

22   op. at 1-12 (June 2, 2006).) Lopez filed a review petition raising the same claims (Lod. 8), which

23   was denied by the California Supreme Court in Case No. S144907, on August 16, 2006. (Lod. 9.)

24            On September 7, 2006, Lopez filed a habeas petition in San Diego County Superior Court

25   Case No. HC18635, wherein he alleged that he received ineffective assistance by his trial counsel

26   because he failed: (1) to pursue an "upward plea" to a greater but non-aggravated offense which

27   would have made Lopez eligible for relief from deportation; and, (2) to investigate and present

28   evidence that would have shown that Lopez was only guilty of possession or transportation of drugs,

leaving Lopez eligible for relief from deportation. (Lod. 10.) The Superior Court issued an order to show cause (Lod. 11), and the San Diego County District Attorney's Office filed a return. (Lod. 12.) Lopez filed a traverse. (Lod. 13.) The superior court issued an order denying Lopez's petition on January 24, 2007. (Lod. 14.)

On February 27, 2007, Lopez filed a habeas petition raising the same claims in California Court of Appeal, Fourth Appellate District, Division One, Case No. D050345.) (Lod. 15.) The Court of Appeal issued an order denying the petition on March 13, 2007. (Lod. 16.)

On June 25, 2007, Lopez filed a habeas petition raising the same claims in California Supreme Court Case No. S154133. (Lod. 17.) The Supreme Court requested an informal response, which was filed by Office of the Attorney General. (Lod. 18.) Lopez filed a reply. (Lod. 19.) The California Supreme Court issued an order denying the Petition on February 13, 2008. (Lod. 20.)

Lopez filed the instant Petition in this Court on March 12, 2008.

## STATEMENT OF FACTS

The facts relevant to the determination of Lopez's Petition are summarized in the opinion of the California Court of Appeal. (Lod. 7 - *People v. Lopez*, No. D046705, slip. op. at 2-4.) The state court's recitation is presumed to be correct. *Briggs v. Galaza*, 242 F.2d 1082, 1087 (9th Cir. 2001). The state appellate court summarized the facts as follows:

> On December 29, 2004, at approximately 10:00 p.m., the San Diego Police Department's Narcotics Team Ten served a search warrant on an apartment in San Diego rented by Lopez. Lopez and Richard Mancha approached the apartment after the officers had entered. They were both carrying grocery bags. San Diego Police Officer Jon Brown contacted Lopez and Mancha at the base of the stairwell and told them they were being detained for a narcotics investigation.
>
> Both Lopez and Mancha appeared to be under the influence of a controlled substance. Mancha refused to provide his name when asked and appeared nervous. Mancha dropped his grocery bag and started to run away as Officer Brown was placing Lopez in handcuffs. Officer Brown grabbed Mancha and forced him to the ground. Lopez had $280 in his left front pants pocket.
>
> A 38-page telephone bill in Lopez's name, immigration paperwork in Lopez's name, and photographs of Lopez were found in an armoire in the bedroom. A black tin box containing glass methamphetamine pipes, syringes, a manual weighted scale and some baggies were recovered from the living room.
>
> A baggie containing 14.30 grams of cocaine was found in a black vinyl pouch in a plastic organizer bin next to the bed. Three baggies containing 0.2 grams of methamphetamine were recovered from the plastic organizer bin. Four baggies containing

08CV0457

a total of 52.06 grams of marijuana were also found in the plastic organizer next to the bed. Eight glass pipes with burn residue were found in the plastic organizer. San Diego Police Detective Timothy Norris testified that the pipes were primarily used to smoke methamphetamine.

A metal container holding four 10-millimeter bottles of ketamine was found under the bed. Three plastic containers containing a total of 20.78 grams of methamphetamine were found in a wooden box on the night stand, together with a glass methamphetamine pipe and plastic straw used to snort cocaine or methamphetamine. A second wooden box found on the night stand contained a small bag of marijuana and an empty glass vial. The officers also recovered a black metal tin containing a baggie holding 2.53 grams of methamphetamine, a baggie with methamphetamine residue and a digital scale, and a round metal silver tin containing five baggies, two of which contained a total of 1.46 grams of methamphetamine, and three of which contained methamphetamine residue.

Detective Norris testified that the methamphetamine, cocaine and marijuana recovered during the search were all in usable quantities and, based upon the amounts, the packaging and paraphernalia, were for the purpose of sale. Detective Norris testified that the methamphetamine had a street value of $1,875 and that the cocaine had a street value of $1,120.

**ARGUMENT**

**I.**

**STANDARD OF REVIEW**

Lopez's Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because it was filed after its enactment on April 26, 1996. 110 Stat. 1214. *See Woodford v. Garceau*, 538 U.S. 202, 207, 123 S. Ct. 1398, 155 L. Ed. 2d 363 (2003) (habeas application filed after the AEDPA's effective date of April 24, 1996, is reviewed under the AEDPA); *Lockyer v. Andrade*, 538 U.S. 63, 70, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). To obtain federal habeas relief, Ma must satisfy either 28 U.S.C. § 2254(d)(1) or § 2254(d)(2). *Williams v. Taylor*, 529 U.S. 362, 403, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). As amended by the AEDPA, 28 U.S.C. § 2254 reads:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

08CV0457

To obtain federal habeas relief, Lopez must satisfy either § 2254(d)(1) or § 2254(d)(2). *Williams v. Taylor*, 529 U.S. at 403.  The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. at 412-13; *Lockyer v. Andrae*, 538 U.S. at 73-74.

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected (*Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1993); *Harris v. Nelson*, 394 U.S. 286, 290, 89 S. Ct. 1082, 22 L. Ed. 2d 281 (1969)), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction.  *Brecht v. Abrahamson*, 507 U.S. 619, 633, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993).  In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765, 769, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995); *Thompson v. Keohane*, 516 U.S. 99, 109, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995); *Langford v. Day*, 110 F.3d 1380, 1388 (9th Cir. 1997).

## II.

### LOPEZ FAILS TO SHOW THAT HIS TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE

As on state habeas corpus, Lopez claims that he received ineffective assistance by his trial counsel because he failed: (1)  to pursue an "upward plea" to a greater but non-aggravated offense which would have made Lopez eligible for relief from deportation; and, (2) to investigate and present evidence that would have shown that Lopez was guilty only of possession or transportation of drugs, leaving Lopez eligible for relief from deportation.  Lopez is not entitled to federal habeas corpus relief because the state courts' denial on his claims on habeas corpus was not contrary to or an unreasonable interpretation of established United States Supreme Court precedent and was not based on an unreasonable determination of the facts presented to the state courts.  *See* 28 U.S.C. §

08CV0457

1 | 2254(d).

2 |     **A.    Analysis of Claims of Ineffective Assistance of Counsel**

3 |         The Sixth Amendment to the Constitution provides that every criminal defendant has the

4 | right to the effective assistance of counsel.  The law governing ineffective assistance of counsel

5 | claims is clearly established for the purposes of the AEDPA deference standard set forth in 28

6 | U.S.C. § 2254(d).  *Canales v. Roe*, 151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of

7 | habeas corpus alleging ineffective assistance of counsel, this Court must consider two factors.

8 | *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Lowry v.*

9 | *Lewis*, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance

10 | was deficient, requiring a showing that counsel made errors so serious that he or she was not

11 | functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 687.  The

12 | petitioner must show that counsel's representation fell below an objective standard of

13 | reasonableness, and must identify counsel's alleged acts and omissions that were not the result of

14 | reasonable professional judgment considering the circumstances.  *Id.* at 688; *United States v.*

15 | *Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995).  In assessing claims of ineffective assistance,

16 | courts must "assess counsel's overall performance throughout the case *(Kimmelman v. Morrison*,

17 | 477 U.S. 365, 366, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)), and further evaluate it "from counsel's

18 | perspective at the time of the alleged error and in light of all the circumstances. (*Id.* at 384).)

19 | Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong

20 | presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

21 | *Strickland*, 466 U.S. at 687; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).  Ineffective

22 | assistance of counsel claims are analyzed under the "unreasonable application" prong of the AEDPA

23 | as indicated in *Williams v. Taylor*, 529 U.S. at 412-13.  *Weighall v. Middle*, 215 F.3d 1058, 1062

24 | (9th Cir. 2000).

25 |         Second, the petitioner must demonstrate that "there is a reasonable probability that, but

26 | for counsel's unprofessional errors, the result . . . would have been different."  *Strickland*, 466 U.S.

27 | at 694.  The petitioner  must show that counsel's error's were so egregious as to deprive him or her

28 | of a fair trial, one whose result is reliable. *Id.* at 688.  The court must evaluate whether the entire trial

08CV0457

1  was fundamentally unfair or unreliable because of counsel's ineffectiveness. *Id.*; *Quintero-Barraza*,

2  78 F.3d at 1345; *United States v. Palomba*, 31 F.3d 1456, 1461 (9th Cir. 1994).

3  ### B.    State Court Review

4  Lopez raised the instant claims in three habeas petitions (Lods. 10, 15, 17) that were

5  denied by the superior court, Court of Appeal, and California Supreme Court.  (Lods. 14, 16, 20.)

6  In support of his petitions, Lopez proffered the same declarations that he presents to this Court –

7  declarations by his trial counsel, Deputy Public Defender Neil Besse, Lopez's own declaration, and

8  the declarations of his friends, Richard Granstaff, Jose Carlos Clark, Carlos Estrada, and Richard

9  Mancha. (Lod. 10 - Exhs. A-F; Lod. Lod. 13 - Ex. A; Lod. Lod. 15 - Exhs. A-F, Lod. 17 - Appendix

10 - Exhs. A-F; *see* Lopez's Pet. - Exhs. E-K.)  In opposing the petition, the People provided the

11 declarations of Deputy District Attorney Kathleen Lewis, who represented the People at a readiness

12 conference and offered a plea in Lopez's case, and Deputy District Attorney Greg Walden, who was

13 Chief of the Disposition Division.  (Lod. 12 - Exhs. 1-2;  Lod. 18 - Exhs. 3-4; *see* Lopez's Pet. -

14 Exhs. L-M.)

15 The San Diego County Superior Court properly noted the *Strickland* standard in its

16 analysis of Lopez's claims.  (Lod. 14 at 3.)  The superior court rejected Lopez's contention that his

17 trial counsel rendered ineffective assistance by failing to advise him that a conviction for any of the

18 three possession for sale counts would result in deportation and loss of asylum.  (Lod. 14 at 3-4.)

19 The superior court noted that:

20 However, counsel's declaration affirmatively states that: 1) [Lopez] was advised that he
   would be deported as a result of a conviction in the case; 2) that there were harsh
21 immigration consequences stemming from the pending charges against [Lopez]; which
   may result in a loss of his asylum; and 3) that deportation and exclusion from readmission
22 was mandatory for possession for sale offenses, which are aggravated felonies.

23 (Lod. 14 at 4, citing Declaration of Neil Besse, Petition Exhibit F, ¶¶ 3-5.)

24 The superior court distinguished Lopez's case from the cases that he relied on in support

25 of his claim.  The court noted the state supreme court's holding an attorney's affirmative misadvisal

26 regarding immigration consequences could constitute ineffective assistance (*see In re Resendiz*, 25

27 Cal.4th 230, 105 Cal. Rptr. 2d 431, 19 P.3d 1171 (2001)), but  concluded that there was no such

28 affirmative misadvice by attorney Besse because "the statements made by counsel were correct, in

08CV0457

1    that conviction would result in deportation and could result in a loss of asylum." (Lod. 14 at 4.)

2    　　　　The superior court also distinguished Lopez's cases with the immigration consequence

3    cases that he cited (*see People v. Soriano*, 194 Cal. App. 3d 1470, 240 Cal. Rptr. 328 (1987)), and

4    *People v. Bautista*, 115 Cal. App. 4th 229, 8 Cal. Rptr. 3d 862 (2004)),  because:

> 　　　the defendants in those cited cases plead guilty, thereby giving up their right to a trial,
> based on the advice of counsel concerning the immigration consequences.  (Footnote
> omitted.)   It was in those situations that the courts found that incomplete advice
> concerning immigration consequences constituted ineffective assistance of counsel due
> to a defendant's decision to waive his right to trial.  However, central to these holdings
> was the fact that the defendants' acceptance of the plea offer which ultimately led to their
> deportation, deprived them of their opportunity to take their cases to trial and seek
> acquittal.  [¶]  Here, no such issue exists as [Lopez] did not plead guilty and did not waive
> his right to trial.  Rather, the plea offer made to [Lopez] in this case was for one count of
> possession of methamphetamine and one count of possession for sale of cocaine,
> both of which are aggravated felonies.  Based on the plea offer from the People, [Lopez]
> made the decision to go to trial and seek acquittal, the **only** other alternative aside from
> accepting the offer and facing deportation.

12    (Lod. 14 at 4-5.)

13    　　　　The superior court found that Lopez failed to show that his trial counsel rendered

14    ineffective assistance by failing  investigate and present evidence of his alleged innocence of the

15    charged crimes.  (Lod. 14 at 5.)  The superior court noted that:

> With regard to [Lopez]'s claim that counsel failed to put on a defense at trial, it appears
> that counsel did defend the case, albeit by cross-examination of the People's witnesses.
> Although [Lopez] submits declarations from various potential witnesses asserting
> [Lopez]'s alleged innocence, (Petition, Exhibits A-E) [Lopez] has failed to show that
> counsel was aware of the existence of such issues, or that the decision not to call such
> witnesses was anything other than a strategic decision by counsel. Counsel's declaration
> merely states that he did not consider the strategy of focusing an attack on the aggravated
> felony counts and that he may have conducted the trial differently had been aware of the
> "upward plea" as discussed in *Bautista* may not have resulted in deportation. (Declaration
> of Neil Besse, Petition, Exhibit F, ¶¶ 23-24.)  **Noticeably absent is any statement by
> counsel that he would have called such witnesses at trial or that he was even aware
> that such witnesses existed. [¶] Nor is there any evidence presented  regarding what
> investigation was undertaken by counsel, or conversely, that no investigation was
> conducted**. . . .

24    (Lod. 14 at 5 (emphasis added).)

25    　　　　The superior court also rejected Lopez's claim that his trial counsel rendered ineffective

26    assistance by failing to consider an "upward plea" to a more serious, but non-aggravated felony to

27    avoid the immigration consequence as indicated in *Bautista*. (Lod. 14 at 6-7.)  The superior court

28    distinguished *Bautista* from Lopez's case as follows:

08CV0457

First, as previously discussed above, unlike the defendant in *Bautista*, [Lopez] did not plead guilty and thus did not waive his right to a jury trial. Rather, [Lopez] went to trial and sought an acquittal, which was the only other option available to [Lopez] to avoid deportation and/or loss of asylum. [¶] Second, and perhaps most importantly, the People have **quite clearly** established that they would have never have agreed to an "upward plead." As stated in the People's Return, the People would have opposed an offer that would give special treatment to non-citizens. (Declaration of DDA Greg Walden, People's Return, Exhibit 2, ¶¶ 1-11.) Thus, no special offer proposed by the defense, such than an "upward plea" would have been agreed to by the People. The People further state that they would have flatly rejected any offer to plead up to a crime such as transporting or offering to sell drugs because there was no evidence that [Lopez] either transported, or offer to sell, drugs in this case. There was no factual basis for those charges and the People, and the Court, would have required [Lopez] to make some admission that would have satisfied the statute. The People would not accept a factual basis that falsely stated that [Lopez] merely offered to sell or transport narcotics or possessed them for personal use. There was no non-aggravated felony that the People would have accepted had it been offered by [the] defense. (Declaration of DDA Kathleen Lewis, People's Return, Exhibit 1, ¶¶ 6-7.)

(Lod. 14 at 6-7.)

The California Court of Appeal took judicial notice of Lopez's direct appeal and habeas corpus proceedings in the Superior Court when it considered and denied Lopez's habeas petition. (Lod. 16.) The state appellate court rejected Lopez's claim that his trial counsel rendered ineffective assistance because he did not advise him, pursuant to *Bautista*, that it was possible to "plead upward" to a greater but non-aggravated felony which would make him eligible for relief from deportation as follows:

In the petition filed in San Diego Superior Court, Lopez provided a declaration of trial counsel Neil Addison Besse stating Besse did not consider offering to have Lopez "plead up" to a non-aggravated felony because he did not know it would have been more beneficial for avoiding immigration consequences. Besse declared that if he had known about the "upward plea" under *Bautista*, he "would have negotiated the case differently and [he] may have conducted the trial differently. [¶] Even if counsel were ineffective by not pursuing an "upward plea," Lopez cannot show he was prejudiced because the People would not have agreed to the plea bargain. In return to the order to show cause issued by the superior court, Deputy District Attorneys Greg Walden and Kathleen Lewis declared they would not have accepted the "upward plea" because the District Attorney "do[es] not make special pleas to allow non-citizen defendants to avoid deportation as a consequence of their crimes."

(Lod. 16 at 1-2.)

The state appellate court also rejected Lopez's claim that his trial counsel rendered ineffective assistance by failing to investigate and present evidence that would have shown that he was guilty only of possession of drugs, leaving him eligible for relief from deportation. The

9

08CV0457

appellate court rejected this claim because:

> The declarations offered in support of this claim are from addicts who used drugs with Lopez and state, among other things, that they have never seen Lopez sell drugs and believe that he has never sold drugs.  The proffered evidence does  not establish a meritorious defense that would have resulted in a better outcome for Lopez.

(Lod. 16 at 2.)

The California Supreme Court denied Lopez's petition raising the same claims without comment or citation.  (Lod. 20.)  The California Supreme Court's summary denial is construed as an adjudication on the merits.  *Luna v. Cambra*, 306 F.3d 954, 960 (9th Cir. 2002), amended 311 F.3d 928 (9th Cir. 2002); *Hunter v. Aispuro*, 983 F.2d 344, 347-48 (9th Cir. 1992).  To determine the reasonableness of the California Supreme Court's decision with regard to the claim presented by Lopez, this Court must analyze the written opinion of the superior court and the state appellate court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-803, 111 S. Ct. ,115 L. Ed. 22 706 (1991).  Thus, in conducting habeas review of this claim, this Court must apply the deferential standards of review articulated in 28 U.S.C. § 2254(d).

## C.   Analysis of Lopez's Claim of Ineffective of Trial Counsel

### 1.   Failure to Advise About an "Upward Plea"

Lopez contends he is entitled to federal habeas corpus relief because the state courts' denial of his claim that his trial counsel rendered ineffective assistance by failing to advise him of an "upward plea" as in *Bautista* to make him eligible for relief from deportation was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  (Pet. at 6 - Ground One; First Amend.  Mem. P&A at 7-12.)  But the state courts properly evaluated the evidence before them when they concluded that: (1) there was no factual basis for the "upward pleas" that Lopez claimed should have been made – transportation of narcotics, or accessory after the fact; and (2) Lopez failed to provide substantial or credible evidence that the San Diego County District Attorney's Office would have accepted such a plea.  Accordingly, Lopez is not entitled to federal habeas corpus relief as to this claim. *See* 28 U.S.C. § 2254(d).

In plea proceedings, to satisfy the deficient performance prong of the *Strickland* test, the petitioner must show that his counsel's advice as to the consequences of the plea was not within the

08CV0457

range of competence demanded of criminal attorneys. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). In considering this issue, there is a "strong presumption that counsel's conduct falls within a wide range of acceptable professional assistance." *Strickland*, 466 U.S. at 689. Moreover, post-hoc complaints about the strategy or tactics employed by defense counsel are typically found insufficient to satisfy the first prong of *Strickland*. *See*, *e.g.*, *United States v. Simmons*, 923 F.2d 934, 956 (2nd Cir. 1991) (appellant's displeasure with strategy employed by trial counsel insufficient to establish ineffectiveness).

To satisfy the prejudice prong of *Strickland*, the petitioner must show that but for counsel's advice, he would not have pleaded guilty but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. at 58-59; *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990). The focus of the prejudice analysis is on whether the result of the proceeding was fundamentally unfair or unreliable because of counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1991).

This Court may also grant relief if a state court's adjudication "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The AEDPA directs federal courts to presume that state court factual findings are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts. *Tinsley v. Borg*, 895 F.2d 520, 525 (9th Cir. 1990). Those factual findings may not be overturned "absent clear and convincing evidence" that they are "objectively unreasonable." 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *Purkett v. Elem*, 514 U.S. 765, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995); *Langford v. Day*, 110 F.3d at 1388 . Clear and convincing evidence "requires greater proof than preponderance of the evidence" and "to meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of its factual contentions are [sic] highly probable.'" *Sophanthavong v. Palmateer*, 365 F.3d 726, 733 (9th Cir. 2004) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S. Ct. 2433, 81 L. Ed. 2d 247 (1984) (presumption not rebutted where state court made credibility determinations and petitioner presents no new evidence in federal court.)).

08CV0457

1

2          In the instant case, Lopez claims that, "It is an objectively unreasonable determination of

3   the facts to take four conflicting declarations (two from Besse, as well as those of Deputies Lewis

4   and Walden), all from sworn members of the California Bar, and adopt one side of the facts." Lopez

5   argues that the state courts choice to believe the prosecutors and disregard the word of Attorney

6   Besse was a "dismissive and strained interpretation" of the evidence before the state courts. (First

7   Amend. Mem. P&A at 8.) But the only fact that was presented to the state courts was that the San

8   Diego County District Attorney's Office would not have accepted the "upward plea" counter-offer

9   as proposed by Attorney Besse.  Attorney Besse's "belief" that his "novel" counter-offer "would

10  have been accepted" by the District Attorney's Office is not supported by any evidence and is

11  speculative, indeed inadmissible.  Accordingly, it was objectively reasonable, based upon the

12  evidence presented, for the state courts to conclude that District Attorney's Office would have never

13  accepted such a counter-offer. (Lod. 14 at 6-7; (Lod. 16 at 1-2.)

14          As previously discussed, ineffective assistance of counsel claims are analyzed under the

15  "unreasonable application" prong of the AEDPA as indicated in  *Williams v. Taylor*, 529 U.S. at

16  412-13. *Weighall v. Middle*, 215 F.3d at1062.  Under the "unreasonable application" clause of the

17  AEDPA, a federal habeas court may grant the writ if the state court identifies the correct governing

18  legal principle from this Court's decisions but unreasonably applies that principle to the facts of the

19  prisoner's case. *Williams v. Taylor*, 529 U.S. at 412-13; *Lockyer v. Andrade*, 538 U.S. at  73-74.

20  Here, the state courts did not unreasonably apply *Strickland* when they denied Lopez's claim.

21          The state trial court properly concluded that Lopez had failed to show that attorney Besse

22  failed to act within the range of competence demanded of attorneys in criminal cases.  The state trial

23  court assessed attorney Besse's overall performance throughout the case *(Kimmelman v. Morrison*,

24  477 U.S. at 366), and further evaluated it "from counsel's perspective at the time of the alleged error

25  and in light of all the circumstances. (*Id.* at 384)  It also concluded that Lopez had failed to show

26  any resulting prejudice. (Lod. 14 at 1-2, 4-5.) The Court of Appeal denied the claim by finding that,

27  even if attorney Besse had rendered ineffective assistance, he could not establish any prejudice from

28  the plea advisal. (Lod. 16 at 1-2.)  A court need not determine whether counsel's performance was

08CV0457

1  deficient before examining any prejudice suffered by the petitioner as a result of the alleged

2  deficiencies. *Strickland*, 466 U.S. at 697. "Failure to satisfy either prong of the *Strickland* test

3  obviates the need to consider the other." *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002).

4       Under California law, because a plea agreement is a contract, it is interpreted according

5  to ordinary contractual principles. *People v. Shelton*, 37 Cal. 4th 759, 767, 37 Cal. Rptr. 3d 354,

6  358, 125 P.3d 290, 294 (2006). The fundamental goal of contractual interpretation is to give effect

7  to the mutual intention of the parties, and such intention is determined by the objective

8  manifestations of the parties' intent, including the words used in the agreement, extrinsic evidence

9  of the surrounding circumstances under which the parties negotiated the contract, the object, nature

10 and subject matter of the contract, and the subsequent conduct of the parties. *Ibid.* Here, based on

11 the evidence presented it was reasonable for the state courts to conclude that Lopez could not get

12 a plea deal that would make him eligible for relief from deportation.

13      In this case, Lopez was charged with possession of cocaine, methamphetamine and

14 marijuana for sale (counts 1-3), possession of ketamine (count 5), possession of paraphernalia used

15 for narcotics (count 6), and unauthorized possession of a hypodermic needle or syringe (count 7).

16 (Lod. 1 - CT at 1-4.) At a trial readiness conference, Deputy District Attorney Kathleen Lewis

17 offered Lopez a plea to possession of cocaine for sale (count one) and possession of

18 methamphetamine for sale (count two). The offer included felony probation and no opposition to

19 local time served if Lopez did not have any prior felonies. (*See* Pet. Ex. L - Decl. of Kathleen Lewis

20 ("Lewis Decl."), at 1-2, ¶¶ 3-4.) Lopez's trial counsel, Deputy Public Defender Neil Addison Besse,

21 made a counter offer of simple possession of the narcotics to avoid immigration consequences. But

22 the offer was rejected by the prosecutor and the case was set for trial. (Pet. Ex. F - Decl. of Neil

23 Addison Besse ("Besse Decl."), at 2, ¶ 7; Pet. Ex. L - Lewis Decl., at 2, ¶¶ 5; Pet. Ex. Ex. M -

24 Declaration of Greg Walden ("Walden Decl.") at 2, ¶ 9.)

25      Attorney Besse declared that, if he had been aware of *Bautista*, he would have made an

26 alternative counter-offer to "plea up" to two counts of transportation of narcotics for personal use,

27 or offering to sell or transport narcotics in violation of California Health and Safety Code sections

28 11352, 11360, or 11379, to give Lopez a chance to retain his asylum. (Pet. Ex. F - Besse Decl. at

08CV0457

2, ¶¶ 9-10; Pet. Ex. G - Besse Decl. at 2-3, ¶¶ 6-12.) In response to the declarations by Deputies

Lewis and Walden, Attorney Besse stated that:

> In my experience negotiating cases with Ms. Lewis and Mr. Walden, I believe a counter offer of two counts of Health and Safety Code §§ 11352, 11360, or 11379, with a grant of probation, would have been accepted. This is because such an offer would provide the D.A. with substantially the same factual basis and an *increased* potential sentence in the event of a probation violation.

(Pet. Ex. F - Besse Decl. at 2, ¶ 10.)

Attorney Besse then admitted that would be "novel approach" to negotiating a plea in a

case where the defendant was charged with possession of narcotics for sale. Besse further admitted

that he had never presented such a counter-offer, and declared that he was "not aware of the D.A.

ever rejecting such a counteroffer." (Pet. Ex. F - Besse Decl. at 2, ¶ 11.)

Deputy District Attorney Lewis declared that she would have rejected such a counter-offer

by Attorney Besse because her office does not allow acceptance of "special pleas to allow non-

citizen defendants to avoid deportation as a consequence of their crimes." (Pet. Ex. L - Lewis Decl.

at 2, ¶ 6.) Deputy Lewis further stated that the fact the crimes contained in Attorney Besse's

counter-offer provide:

> for a greater prison term than the crimes we offered would not have persuaded me to accept the offer. Even if Lopez pleaded to transportation or offering to sell narcotics, he would likely get felony probation, not prison. He would then face a maximum of 365 days in jail, the same maximum he faced pursuant to our offer.

(Pet. Ex. L - Lewis Decl. at 2, , ¶ 7.)

Deputy District Attorney Greg Walden, who was in charge of the Case Disposition Unit,

confirmed that the possible counter-offer proposed by Attorney Besse would not have been

accepted. Deputy Walden declared that, as matter of policy, a defendant's "immigration status is

simply not a relevant factor in the consideration of plea offers []" by the San Diego County District

Attorney's Office. (Pet. Ex. M - Walden Decl. at 2, ¶ 4.) That is because "it undermines federal

immigration laws, and is contrary to the efforts of law enforcement agencies." (*Id.* at 2, ¶ 7.)

Deputy Walden explained that, based on his review of Lopez's case file, the counter-offer proposed

by Attorney Besse in his declarations would have been rejected as follows:

If the defense had offered to plead to transportation of narcotics for personal use, or

08CV0457

1   offering to transport or sell narcotics, in violation of Health and Safety Code sections
2   11352, 11360, or 11379, the People would have rejected that offer.  I would not authorize
    a special plea designed to allow Lopez to avoid the legal consequences of his crimes based
3   on his immigration status.  [¶] It makes no difference that sections 11352, 11360, and
    11378 carry a greater prison term than the possession for sale crimes offered by the
4   People.  Lopez has no prior felonies and would almost certainly not be sentenced to prison
    even if he pleaded to transportation or offering to sell narcotics.  Instead, he would get
5   felony probation with a maximum of 365 days of local custody, the same limit he would
    face pursuant to the [no opposition to local time] we offered him.

6   (Pet. Ex. M - Walden Decl. at 2-3, ¶¶ 8-11.)

7        Attorney Besse's "belief" that his "novel" counter- offer "would have been accepted" was

8   clearly speculative because, as properly concluded by the state courts, the District Attorney's Office

9   would have never accepted such a counter-offer.  (Lod. 14 at 6-7; (Lod. 16 at 1-2.)  Accordingly,

10  the state courts reasonably rejected Lopez's claim of ineffective assistance for failure to advise him

11  about an "upward plea" that would permit relief from deportation because it was not supported by

12  the evidence presented before them on habeas corpus.

13       Lopez claims he was prejudiced by his counsel's failure to pursue a *Bautista*-type "upward

14  plea" because a factual basis existed for a plea to the non-aggravated felonies of transportation of

15  narcotics or accessory after the fact.  ((First Amend. Mem. P&A at 5-7.)  But no factual basis existed

16  to support such a plea, as properly determined by the superior court. (Lod. 14 at 7.)

17       Lopez claims that, even without an investigation by his trial counsel, a factual basis

18  existed for him to plead to transportation of drugs (Cal. Health and Safety Code § 1160) because

19  some of the drugs found in his apartment were his, they "did not magically appear" there, and

20  "[o]bviously they were transported there."  (First Amend. Mem. P&A at 5-6; *see* Pet. Ex. F - Besse

21  Decl. at 3, ¶ 14.)  But there was no evidence presented to the state courts to show that there was a

22  factual basis to support a plea by Lopez for transportation of drugs.

23       California Penal Code section 1191.5 requires a trial court to determine by independent

24  inquiry, before accepting a plea of guilty or nolo contedere to a felony offense, whether there exists

25  a factual basis for the plea.  The purpose behind the inquiry is to "'protect against the situation

26  where the defendant, although he realizes what he has done, is not sufficiently skilled in law to

27  recognize that his acts do not constitute the offense with which he is charged.'"  *People v. Tigner*,

28  133 Cal. App. 3d  430, 432-33, 184 Cal. Rptr. 61, 62 (1982); *People v. Watts*, 67 Cal. App. 3d 173,

178, 136 Cal. Rptr. 496, 499 (1977); *see also North Carolina v. Alford*, 400 U.S. 25, 38 n.10, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1977); 3 ABA Standards for Criminal Justice, std. 14-1.6 (2nd ed. 1980) at 14.32.          Under California law, a person transports a controlled substance by carrying or conveying a usable quantity of the substance with knowledge of its presence and illegal character. *People v. Rogers*, 5 Cal. 3d 129, 133-34, 137, 95 Cal. Rptr. 601, 606, 606, 486 P.2d 129, 131, 134 (1971); *see also* CALJIC No. 12.02.  However, there mere presence of the controlled substances at Lopez's apartment, standing alone, would not be sufficient to justify a finding of guilt that he transported those substances.  *See People v. Phillips*, 22 Cal. 4th 226, 237, 92 Cal. Rptr. 2d 58, 65, 99 P.2d 145, 152 (2000).  In Lopez's case, he approached his apartment after police officers had entered pursuant to a warrant and they subsequently located the narcotics, paraphernalia and syringe. There is no evidence that anyone saw him transport any of the narcotics.  (Lod. 7 - *People v. Lopez*, No. D046705, slip. op. at 2-4.)  In his own declaration, Lopez does not admit to transporting the drugs found in his apartment, but only states that, "Many different guys would leave there (sic.) stuff, including drugs, in that apartment.  (Pet. Ex. A - Declaration of Ernesto Rivas Lopez at 3, ¶ 31.)  Lopez's friends, Richard Granstaff, Jose Carlos Clark, Carlos F. Estrada, and Richard Mancha, all declared that persons, including some of them, left items including drugs in Lopez's apartment. But all of them do not state that Lopez transported drugs to his apartment.  (*See* Pet. Exs. H-K.) Accordingly, the superior court properly concluded that there was no factual basis to support a plea by Lopez to transportation of narcotics.  (Lod. 14 at 7.)

Lopez also claims his trial counsel could have offered that he plea to being an accessory after the fact because it is not an offense "relating to" a controlled substance and such conviction would not make him deportable.  (First Amend. Memo P&A at 6; *see* Pet. Ex. G - Besse Decl. at 3, ¶¶ 18-19.)  But again, there is no evidence that would support a factual basis for Lopez to plead guilty to being an accessory after the fact.  California Penal Code section 32 states:

> Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony.

Lopez and his friends deny that anyone purchased or sold narcotics in Lopez's apartment.

08CV0457

16

1   They all merely declare that  they used drugs, and left items including drugs, when they visited

2   Lopez at his apartment.  (*See* Pet. Exs. A, H-K.)  Neither Lopez nor his friends state that one of them

3   committed a felony and that Lopez harbored, concealed or aided them to escape from arrest, trial,

4   conviction or punishment.  Accordingly, there was no factual basis for support a plea by Lopez to

5   the crime of being an accessory after the fact.

6          Based on this evidence, it was reasonable for the superior court to conclude that there was

7   no deficient performance because: (1) the plea offer made by the People to Lopez was one count of

8   possession of methamphetamine and one count of possession for sale of cocaine, both of which are

9   aggravated felonies; (2) the People rejected attorney Besse's counter-offer to a plea of simple

10  possession; and (3) based on the plea offer by the People, Lopez made the decision to go trial and

11  seek acquittal, which was the only alternative aside from accepting the offer and facing deportation;

12  and  (Lod. 14 at 4-5.)  It was also reasonable for the superior court to conclude that Lopez could not

13  show any prejudice because: (1) the People **quite clearly** established they would not have agreed

14  to an "upward plea" in this case; and, (2) the People would have flatly rejected any offer to plead

15  up to a crime such as offering to sell or transporting narcotics because there was no evidence that

16  Lopez did that in this case.  (Lod. 14 at 6-7.)

17         Lopez relied on the same evidence when he presented the same claims to the Court of

18  Appeal.  Accordingly, it was proper for the Court of Appeal to conclude that, even if attorney Besse

19  rendered ineffective assistance by not pursuing a *Bautista*-type "upward plea," Lopez could not

20  show he was prejudiced because the evidence presented showed that "the People would not have

21  accepted the plea bargain."  (Lod. 16 at 1-2.)

22         Lopez also makes a conclusory allegation that the state courts unreasonably applied

23  *Strickland* to deny his claim regarding his trial counsel's failure to offer an "upper plea" as indicated

24  in *Bautista* because, "He submitted evidence to the state court showing a reasonable probability that

25  he **was** in fact prejudiced.  Yet the state court ignored it and dismissed his claim without holding an

26  evidentiary hearing.  (First Amend. Memo P&A at 13.)  But since Lopez failed to make a prima

27  facie case for state habeas corpus relief on his claim that his trial counsel rendered ineffective

28  assistance by not informing him about an "upward plea" that would have made him eligible for relief

08CV0457

1    from deportation, he was not entitled to an evidentiary hearing.

2           California Rules of Court, rule 4.552(f) states, in pertinent part:

3      An evidentiary hearing is required if, after considering the verified petition, the return, any
       denial, any affidavits or declarations under penalty of perjury, and matters of which
4      judicial notice may be taken, the court finds there is a reasonable likelihood that the
       petitioner may be entitled to relief and the petitioner's entitlement to relief depends on the
5      resolution of an issue of fact.

6           Before an order to show cause will issue, and before an evidentiary hearing on a petition

7    for writ of habeas corpus can be granted, the petitioner must allege specific facts which establish a

8    prima facie case for relief. *In re Sassounian*, 9 Cal. 4th 535, 547, 37 Cal. Rptr. 2d 446, 453, 887

9    P.2d 527, 534 (1995); *People v. Romero*, 8 Cal. 4th 728, 739-40, 35 Cal. Rptr. 2d 270, 274-75, 883

10   P.2d 388.)  Where there is no basis for habeas relief, it is futile for a court to conduct an evidentiary

11   hearing. *In re Olden*, 69 Cal. 2d 845, 848, 73 Cal. Rptr. 229, 231, 447 P.2d 341, 343 (1968).  The

12   regularity of proceedings are presumed on habeas and "the burden is on petitioner to establish

13   grounds for his release." *People v. Duvall*, 9 Cal. 4th 464, 474, 37 Cal. Rptr. 2d 259, 265, 886 P.2d

14   1252, 1258 (1995).  Lopez did not meet his pleading burden as he failed to state a prima facie case

15   of this claim of ineffective assistance of counsel in the state courts.  Therefore, no state evidentiary

16   hearing was warranted.

17          **2.    Failure to Investigate Witnesses and Present a Defense of Merge Drug
                    Possession**
18

19          Lopez claims that the state courts unreasonably applied *Strickland* and unreasonably

20   determined the facts when they denied his claim that trial counsel Besse rendered ineffective

21   assistance by failing to investigate witnesses that would support a defense that drugs in his

22   apartment were not possessed for sale.  (Pet. at 6-7,  Ground Two; First Amend. Memo P&A at 14-

23   22.) But the state courts properly evaluated the evidence and properly applied *Strickland* when they

24   concluded that: (1) Lopez failed to present evidence to show that attorney Besse would even have

25   called those witnesses at trial; and, (2) Lopez failed to show how that, if the witnesses had been

26   called, he would have a meritorious defense that would result in a better outcome at trial.

27   Accordingly, Lopez is not entitled to federal habeas corpus relief as to this claim. *See* 28 U.S.C. §

28   2254(d).

08CV0457

1    Defense counsel has a "duty to make reasonable investigations or to make a reasonable

2 decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[A]

3 particular decision not to investigate must be directly assessed for reasonableness in all the

4 circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* When an

5 attorney has decided not to investigate because of reasonable tactical evaluations, his or her

6 performance is not constitutionally deficient. *Siripongs v. Calderon*, 133 F.3d 732, 734 (9th Cir.

7 1998). "[I]neffective assistance claims based on a duty to investigate must be considered in light

8 of the strength of the government's case." *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001)

9 (citation omitted). Federal habeas review must be "highly deferential," avoid "the distorting effects

10 of hindsight," and "indulge a strong presumption that counsel's conduct falls within the wide range

11 of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

12    Lopez argues that, in *Riley v. Payne*, 352 F.3d 1313 (9th Cir. 2003), the Ninth Circuit

13 granted habeas corpus relief "in a situation very similar to Mr. Lopez's." (First. Amend. Memo

14 P&A at 18-22.) But *Riley* is distinguishable from Lopez's case. In *Riley v. Payne*, petitioner Riley

15 sought habeas relief by arguing that he was denied the effective assistance of counsel for his

16 counsel's failure to interview or call witnesses who were present at the scene of Riley's alleged

17 crime. *Riley*, 352 F.3d at 1317. The witness filed a declaration with the court stating that he would

18 have testified in a way that would have supported Riley's claim of self-defense. *Id.* at 1317. The

19 court held that counsel's failure to interview the witness rendered his performance below an

20 objective standard of reasonableness. *Id.* at 1319.) Here, in contrast, Lopez failed to offer any

21 evidence to show that attorney Besse would have called the witnesses he proffers even if he had

22 been aware of them, and failed to show that their testimony would have supported a defense that he

23 did not possess the drugs for sale.

24    In support of his contention that attorney Besse failed to investigate and pursue a defense

25 that he was not guilty of possession of narcotics for sale, Lopez offers the same evidence that he

26 proffered to the state courts. In addition to his own declaration, he offers the declarations of Richard

27 Granstaff, Jose Carlos Clark, Carlos Estrada, and Richard Mancha, who state that they frequently

28 stored belongings, including drugs, in Lopez's apartment. They also deny ever seeing drugs sold

08CV0457

in the apartment. (Lod. 10 - Exhs. A-F; Lod. Lod. 13 - Ex. A; Lod. Lod. 15 - Exhs. A-F, Lod. 17 - Appendix - Exhs. A-F; *see* Lopez's Pet. - Exhs. E-K.) But notably absent from those declarations is any allegation that Lopez told attorney Besse about the existence of those witnesses. (*See* Pet. Ex. E - Lopez Decl.) Also notably absent is a statement from attorney Besse that, if he had known about those witnesses, he would have called them to testify at Lopez's trial. (*See* Pet. Exs. F&G - Besse Decls.) Based on this evidence, the superior court properly concluded that, "Noticeable absent is any statement by counsel that he would have called such witnesses at trial or that he was even aware that such witnesses existed." (Lod. 14 at 5.)

Even if attorney Besse should have been aware of these witnesses, he could not be faulted if he made a tactical decision not to call them at trial. Proffered witnesses Granstaff, Clark, Estrada and Mancha are friends of Lopez, some are in drug treatment and recovery programs with Lopez, some are admitted drug users, and their credibility is clearly questionable. (Pet. - Exhs. H-K.) Further, their proffered testimony would not have been particularly helpful to Lopez's case. Testimony that other persons that other persons stored drugs at Lopez's apartment did not disprove that Lopez possessed the drugs for sale on the date at issue. *See People v. Johnson*, 158 Cal. App. 3d 850, 854, 204 Cal. Rptr. 877, 879 (1984). Lopez acknowledges in his declaration that he lived in the apartment at issue and the knew a large quantity of drugs were stored there. (Pet. Ex. E - Lopez Decl. at 3, ¶ 23 & 4, ¶ 47.) Also, the large quantity of cocaine, methamphetamine, and marijuana, their approximate street value of $3,000, packaging as well as the presence of a digital scale demonstrated that the drugs were possessed for sale. (Lod. 3 - RT at 21, 32-33, 36, 46, 68, 77-88, 91-98, 171.) Further, any proffered witness that Lopez was an addict who knowingly allowed other to store drugs at his apartment because he never liked being alone and the large number of drugs on that date of his arrest was because their plan to party on New Year's Eve (see Pet. Ex. E - Lopez Decl. at 4, ¶¶ 46-47; Ex. H - Granstaff Decl. at 2, ¶ 16; Ex. I - Clark Decl. at 1, ¶ 6; Ex. k - Mancha Decl. at 1, ¶¶ 6-7 & at 2, ¶ 9.), it would have contravened attorney Besse's trial strategy of attempting to show that Lopez did not know that the drugs were at his apartment.

Although Lopez declares that attorney Besse "did nothing whatsover" to investigate the charges against him and claims he only met with him once (First Amend. Memo P&A at 14; Pet. Ex.

08CV0457

E - Lopez Decl. at 2, ¶ 9), he has not provided any credible factual basis to support that claim.  In his declaration, attorney Besse asserts that, because of his limited knowledge of immigration law, he never considered a trial strategy of focusing an attack on the aggravated felony (possession for sale) counts.  (Pet. Ex. G - Besse Decl. at 4, ¶ 23.)  The record, however, demonstrates that is exactly what he did.

First, attorney Besse tried to show that the evidence at trial did not prove that Lopez had knowledge of the drugs in his apartment.  Attorney Besse highlighted facts such as the extent of clutter and disarray in Lopez's apartment.  (Lod. 3 - RT at 102-110.)  Besse also elicited testimony that: (1) the drugs were kept in closed, non-transparent, portable containers that could have been brought into the apartment by others without Lopez being alerted to their contents; (2) there was no showing of dominion and control over the containers; (3) the officers had no idea how much time Lopez spent in the apartment; and, (4) the officers also did not know how many other persons had been present in the apartment.  (Lod. 3 - RT at 114-124, 148-149.)  During closing, attorney Besse argued that the drugs could have belonged to Mancha, who had been carrying groceries to the apartment with Lopez at the time of his arrest and started to run away when Lopez was being handcuffed. (Lod. 3 - RT at 226.)

Second, attorney Besse alternatively attempted to show that the drugs could have been for personal use and not possessed for purpose of sales.  (Lod. 3 - RT at 227-228, 233.)  Besse extensively cross-examined Detective Norris on the imprecision of determining standard dosage units, and the amounts that heavy cocaine and methamphetamine users could consume over the course of a few days. (Lod. 3 - RT at 130-132, 137-138.)  Attorney Besse also highlighted the fact that some drug users are sufficiently affluent to allow them to purchase drugs in quantity for personal use, and that the officers neglected to look into Lopez's finances to see if he could have afforded to do so.  Besse also elicited testimony that drug users can pool their money to purchase larger quantities and share them with other users.  (Lod. 3 - RT at 130, 134-135, 163-164.)

Besse's cross-examination of the People's witnesses, as well as his argument that the People failed to prove that Lopez had knowledge of the drugs or that he possessed them for sale indicates his effective representation of Lopez at trial.  Besse's tactical decision to rely on his cross-

1  examination of the People's witnesses to establish reasonable doubt about the charged crimes was

2  a reasonable tactical choice that was not second-guessed by the state courts on habeas corpus.

3  Based on the foregoing, the superior court properly concluded that: (1) Lopez failed to show that

4  attorney Besse was aware of these witnesses prior to trial; (2) Lopez failed to show that even if he

5  had known about these witnesses, the decision not to call them to testify was not based on a strategic

6  decision by attorney Besse; and, (3) Lopez failed to provide any evidence regarding what

7  investigation was undertaken by attorney Besse, or conversely that no investigation was conducted

8  (Lod. 14 at 5.)   The Court of Appeal also properly concluded that:

9      The declarations offered in support of this claim are from addicts who used drugs with
    Lopez and state, among other things, that they have never seen Lopez sell drugs and
10     believe that he has never sold drugs.  The proffered evidence does  not establish a
    meritorious defense that would have resulted in a better outcome for Lopez.
11

12 (Lod. 16 at 2.)

13     Lopez is not entitled to federal habeas corpus relief because the state courts' denial on his

14 claims of ineffective assistance of counsel on habeas corpus were not an unreasonable application

15 of *Strickland*  was were not  based on an unreasonable determination of the facts presented to the

16 state courts.   Accordingly, he is not entitled to federal habeas corpus relief as to these claims.  *See*

17 28 U.S.C. §  2254(d); *Williams v. Taylor*, 529 U.S. at 412-13; *Lockyer v. Andrade*, 538 U.S. at 73-

18 74; *Weighall v. Middle*, 215 F.3d at 1062.

19 **III.**

20 **LOPEZ IS NOT ENTITLED  TO AN EVIDENTIARY HEARING**

21     Lopez claims that he is entitled to an evidentiary hearing because he has raised a

22 "colorable claim" of ineffective assistance of counsel and he should have been given such a hearing

23 by the state courts.  (Pet. at 8; First Amend. Memo P&A at 22-24.)   But the Ninth Circuit's

24 "colorable claim" standard on which Lopez relies (First Amended Memo P&A at 22, citing

25 *Stankewitz v. Woodford*, 365 F.3d 706, 708 (9th Cir. 2002) (quoting *Smith v. McCormick*, 914 F.2d

26 1153, 1170 (9th Cir. 1990)), has been overruled by the Supreme Court's decision in *Schriro v.*

27 *Landrigan*, (2007) 550 U.S. ___, 127 S. Ct. 1933, 167 L. Ed. 2d 482 (2007).  The analysis in

28 evaluating the merits of a petition under § 2254(d) also applies when considering whether to grant

08CV0457

1    an evidentiary hearing on the petition: "[I]f the record refutes the applicant's factual allegations or

2    otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."

3    *Schriro v. Landrigan*, 127 S. Ct. at 1940. In *Schriro*, a death-penalty defendant, Landrigan, objected

4    when his attorney tried to present mitigating evidence at sentencing. *Schriro*, 127 S. Ct. at 1937-38.

5    After his conviction and death sentence were affirmed, Landrigan argued that his attorney had been

6    ineffective by failing to investigate and present mitigating evidence — including extra mitigating

7    evidence that Landrigan claimed he would not have objected to had he known about it at sentencing.

8    *Id.* at 1938. The Arizona courts and a federal district court rejected Landrigan's arguments, and no

9    court conducted an evidentiary hearing regarding Landrigan's factual allegation that he would have

10   permitted counsel to introduce the extra mitigating evidence at sentencing. *Id.* But the en banc

11   Ninth Circuit held that an Arizona court's factual finding that Landrigan refused to permit his

12   attorney to introduce "any" mitigating evidence at sentencing was unreasonable under § 2254(d)(2),

13   and it remanded for an evidentiary hearing to permit Landrigan to prove his allegations. *Id.* at 1939.

14   The Supreme Court, however, reversed the Ninth Circuit. *Id.* at 1940, 1944. The Supreme Court

15   held that federal district courts need not "reopen factual disputes that were conclusively resolved in

16   the state courts." *Id.* at 1940. The Supreme Court held that the district court had acted within its

17   discretion by relying on the Arizona court's ruling that Landrigan would have objected to all

18   mitigating evidence, including the extra mitigating evidence, even without conducting an evidentiary

19   hearing. *Id.* at 1941-42, 1944.

20            *Schriro v. Landrigan* overrules Ninth Circuit authority regarding evidentiary hearings.

21   Relying on pre-AEDPA authority, the Ninth Circuit previously held that petitioners must receive

22   an evidentiary hearing when they satisfy the relatively "'low bar'" of alleging a "colorable claim" for

23   relief. *See Landrigan v. Schriro*, 441 F.3d 638, 643, 650 (9th Cir. 2006) (en banc), *rev'd* 127 S. Ct.

24   1933, 1944 (2007); *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005) (citing *Insyxiengmay v.*

25   *Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005)); *also Horton v. Mayle*, 408 F.3d 570, 581-82 & n.6

26   (9th Cir. 2005); *cf. Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2004) (pre-AEDPA); *Phillips*

27   *v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001) (pre-AEDPA). In *Schriro v. Landrigan*, however,

28   the Supreme Court linked the Ninth Circuit's "colorable claim" language to the statutory text of §

08CV0457

1    2254(d), which requires a petitioner to demonstrate not simply incorrectness but the "substantially

2    higher threshold" of unreasonableness. *See Schriro v. Landrigan*, 127 S. Ct. at 1337-39, 1943. The

3    Supreme Court's reversal of the en banc Ninth Circuit indicates that a petitioner's allegation of a

4    "colorable claim" is no longer sufficient to guarantee a federal evidentiary hearing — at least not

5    as the phrase "colorable claim" was used in pre-AEDPA cases. *See Landrigan v. Schriro*, 441 F.3d

6    at 643, 650, *rev'd* 127 S. Ct. at 1943-44.

7            The Supreme Court's decision in *Schriro v. Landrigan* belies the Ninth Circuit's

8    conclusion that a further development of the record is necessary to determine whether attorney Besse

9    rendered ineffective assistance in Lopez's case.   Under *Schriro v. Landrigan*, this Court should

10    conduct an analysis of the underlying merits of a claim under § 2254(d) when determining whether

11    an evidentiary hearing analysis is appropriate; the Ninth Circuit's "colorable claim" standard must

12    now be viewed in light of *Schriro v. Landrigan*.  The petitioner's burden in establishing a "colorable

13    claim" is now much more difficult than discussed in the Ninth Circuit's authority because after

14    *Schriro v. Landrigan* "a colorable claim" requires a demonstration that a state court acted

15    unreasonably under § 2254(d).  *See Schriro v. Landrigan*, 127 S. Ct. at 1340 n.2 (noting that a §

16    2254(d)(2) analysis was necessary before conducting a federal evidentiary hearing).  Stating a

17    "colorable claim" is no longer a relatively "low bar." *Contra Landrigan v. Schriro*, 441 F.3d at 643,

18    650, *rev'd* 127 S. Ct. at 1943-44.  Now, any analysis of whether a petitioner has established a

19    "colorable claim" for relief should occur, at minimum, after a federal court has considered whether

20    a state court's decision was unreasonable under § 2254(d).  *See Earp v. Ornoski*, 431 F.3d 1158,

21    1166-67 (9th Cir. 2005) ("a federal court may not grant an evidentiary hearing without *first*

22    determining whether the state court's decision was an unreasonable determination of the facts")

23    (emphasis added); *also Alberni v. McDaniel*, 458 F.3d 860, 871-873 (9th Cir. 2006) (remanding for

24    an evidentiary hearing after determining that a state court decision was "contrary to" clearly

25    established federal law); *Horton v. Mayle*, 408 F.3d at 581-82 (same regarding a holding that was

26    "objectively unreasonable"); *cf. Schriro v. Landrigan*, 127 S. Ct. at 1340 n.2 (noting that the en banc

27    Ninth Circuit recognized that a § 2254(d)(2) analysis was necessary before remanding for an

28    evidentiary hearing).

08CV0457

1    With Lopez, state courts have already considered his evidence, made findings, and reached

2  legal conclusions regarding his claims that attorney Besse rendered ineffective assistance.   No

3  further development of the record is necessary because  the state courts have already considered and

4  rejected the evidence proffered by Lopez.  Accordingly, Lopez cannot show that  an evidentiary

5  hearing could enable him to prove that the factual allegations of his Petition, if true, would entitle

6  him to federal habeas relief.  *Schriro v. Landrigan*,  127 S. Ct. at 1940.

7                                    **CONCLUSION**

8    Based on the foregoing, Respondent respectfully requests that Lopez's Petition for Writ

9  of Habeas Corpus be dismissed because it is wholly unexhausted and he is not entitled to relief under

10  28 U.S.C. § 2254(b)(1)(A), or be denied on the merits, that all further proceedings be terminated,

11  and that this Court deny any request for a certificate of appealability.

12    Dated:  June 18, 2008

13                    Respectfully submitted,

14                    EDMUND G. BROWN JR.
                      Attorney General of the State of California

15                    DANE R. GILLETTE
                      Chief Assistant Attorney General
16
                      GARY W. SCHONS
17                    Senior Assistant Attorney General

18                    KEVIN VIENNA
                      Supervising Deputy Attorney General

19

20
                      s/Anthony DaSilva
21                    ANTHONY DA SILVA
                      Deputy Attorney General
22
                      Attorneys for Respondent
23  ADS:jr
    80251496.wpd
24  SD2008700230

25

26

27

28

                                    08CV0457

                                      25

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................... 1

STATEMENT OF THE CASE ................................. 2

STATEMENT OF FACTS .................................... 3

ARGUMENT .............................................. 4

   I.          **STANDARD OF REVIEW** ..................... 4

  II.   **LOPEZ FAILS TO SHOW THAT HIS TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE** ............ 5

      A.   Analysis of Claims of Ineffective Assistance of Counsel ... 6

      B.   State Court Review .................................. 7

      C.   Analysis of Lopez's Claim of Ineffective of Trial Counsel ... 10

          1.   Failure to Advise About an "Upward Plea" ..... 10

          2.   Failure to Investigate Witnesses and Present a Defense of Merge Drug Possession .... 18

  III.   **LOPEZ IS NOT ENTITLED TO AN EVIDENTIARY HEARING** ... 22

CONCLUSION ............................................ 25

08CV0457

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

5   *Alberni v. McDaniel*
    458 F.3d 860 (9th Cir. 2006)                                24

6   *Barefoot v. Estelle*
    463 U.S. 880
7   103 S. Ct. 3383
    77 L. Ed. 2d 1090 (1993)                                     5

8
    *Bragg v. Galaza*
9   242 F.3d 1082 (9th Cir. 2001)                               19

10  *Brecht v. Abrahamson*
    507 U.S. 619
11  113 S. Ct. 1710
    123 L. Ed. 2d 353 (1993)                                     5

12
    *Canales v. Roe*
13  151 F.3d 1226 (9th Cir. 1998)                                6

14  *Colorado v. New Mexico*
    467 U.S. 310
15  104 S. Ct. 2433
    81 L. Ed. 2d 247 (1984)                                     11

16
    *Doganiere v. United States*
17  914 F.2d 165 (9th Cir. 1990)                                11

18  *Earp v. Ornoski*
    431 F.3d 1158 (9th Cir. 2005)                           23, 24

19
    *Harris v. Nelson*
20  394 U.S. 286
     89 S. Ct. 1082
21  22 L. Ed. 2d 281 (1969)                                      5

22  *Hill v. Lockhart*
    474 U.S. 52
23  106 S. Ct. 366
    88 L. Ed. 2d 203 (1985)                                 10, 11

24
    *Horton v. Mayle*
25  408 F.3d 570 (9th Cir. 2005)                            23, 24

26  *Hunter v. Aispuro*
    983 F.2d 344 (9th Cir. 1992)                                10

27
    *Insyxiengmay v. Morgan*
28  403 F.3d 657 (9th Cir. 2005)                                23

**TABLE OF AUTHORITIES  (continued)**

**Page**

*In re Olden*
69 Cal. 2d 845
73 Cal. Rptr. 229
447 P.2d 341 (1968)                                                      18

*In re Resendiz*
25 Cal.4th 230
105 Cal. Rptr. 2d 431
19 P.3d 1171 (2001)                                                       7

*In re Sassounian*
9 Cal. 4th 535
37 Cal. Rptr. 2d 446
887 P.2d 527, 534 (1995)                                                 18

*Kimmelman v. Morrison*
477 U.S. 365
106 S. Ct. 2574
91 L. Ed. 2d 305 (1986)                                                6, 12

*Landrigan v. Schriro*
441 F.3d 638 (9th Cir. 2006)
 (en banc), *rev'd* 127 S. Ct. 1933 (2007)                            23, 24

*Langford v. Day*
110 F.3d 1380 (9th Cir. 1997)                                          5, 11

*Lockyer v. Andrade*
538 U.S. 63
123 S. Ct. 1166
155 L. Ed. 2d 144 (2003)                                         4, 5, 12, 22

*Lowry v. Lewis*
21 F.3d 344 (9th Cir. 1994)                                               6

*Luna v. Cambra*
306 F.3d 954 (9th Cir. 2002)
amended 311 F.3d 928 (9th Cir. 2002)                                     10

*Miller-El v. Cockrell*
537 U.S. 322
123 S. Ct. 1029
154 L. Ed. 2d 931 (2003)                                                 11

*North Carolina v. Alford*
400 U.S. 25
91 S. Ct. 160
27 L. Ed. 2d 162 (1977)                                                  15

*People v. Bautista*
115 Cal. App. 4th 229
8 Cal. Rptr. 3d 862 (2004)                                                8

08CV0457

iii

**TABLE OF AUTHORITIES  (continued)**

Page

*People v. Duvall*
9 Cal. 4th 464
37 Cal. Rptr. 2d 259
886 P.2d 1252 (1995) ..................................................... 18

*People v. Johnson*
158 Cal. App. 3d 850
 204 Cal. Rptr. 877 (1984) .............................................. 20

*People v. Phillips*
22 Cal. 4th 226
92 Cal. Rptr. 2d 58
99 P.2d 145, 152 (2000) ................................................. 16

 *People v. Rogers*
5 Cal. 3d 129, 133
95 Cal. Rptr. 601
 486 P.2d 129 (1971) ...................................................... 16

*People v. Romero*
8 Cal. 4th 728
35 Cal. Rptr. 2d 270
883 P.2d 388 ................................................................. 18

*People v. Shelton*
37 Cal. 4th 759
37 Cal. Rptr. 3d 354
125 P.3d 290, 294 (2006) ............................................... 13

*People v. Soriano*
194 Cal. App. 3d 1470
240 Cal. Rptr. 328 (1987) ............................................... 8

*People v. Tigner*
133 Cal. App. 3d  430
184 Cal. Rptr. 61 (1982) ................................................. 15

*People v. Watts*
67 Cal. App. 3d 173
136 Cal. Rptr. 496 (1977) ............................................... 15

*Phillips v. Woodford*
267 F.3d 966 (9th Cir. 2001) .......................................... 23

*Purkett v. Elem*
514 U.S. 765
115 S. Ct. 1769
131 L. Ed. 2d 834 (1995) ............................................... 5, 11

*Riley v. Payne*
352 F.3d 1313 (9th Cir. 2003) ........................................ 19

08CV0457

### TABLE OF AUTHORITIES  (continued)

Page

*Rios v. Rocha*
299 F.3d 796 (9th Cir. 2002)                                          12

*Sanders v. Ratelle*
21 F.3d 1446 (9th Cir. 1994)                                          6

*Schriro v. Landrigan*
(2007) 550 U.S. ___
127 S. Ct. 1933
167 L. Ed. 2d 482 (2007)                                          22-25

*Siripongs v. Calderon*
133 F.3d 732 (9th Cir. 1998)                                          19

*Smith v. McCormick*
914 F.2d 1153 (9th Cir. 1990)                                          22

*Sophanthavong v. Palmateer*
365 F.3d 726 (9th Cir. 2004)                                          11

*Stankewitz v. Woodford*
365 F.3d 706 (9th Cir. 2002)                                          22

*Strickland v. Washington*
466 U.S. 668
104 S. Ct. 2052
80 L. Ed. 2d 674 (1984)                                   6, 11, 18, 19

*Thompson v. Keohane*
516 U.S. 99
116 S. Ct. 457
133 L. Ed. 2d 383 (1995)                                          5

*Tinsley v. Borg*
895 F.2d 520 (9th Cir. 1990)                                          11

*United States v. Palomba*
31 F.3d 1456 (9th Cir. 1994)                                          6

*United States v. Quintero-Barraza*
78 F.3d 1344 (9th Cir. 1995)                                          6

*United States v. Simmons*
923 F.2d 934 (2nd Cir. 1991)                                          11

*Weighall v. Middle*
215 F.3d 1058  (9th Cir. 2000)                                   6, 12, 22

*Williams v. Taylor*
529 U.S. 362
120 S. Ct. 1495
146 L. Ed. 2d 389 (2000)                                   4-6, 12, 22

08CV0457

## TABLE OF AUTHORITIES  (continued)

Page

*Williams v. Woodford*
384 F.3d 567 (9th Cir. 2004)                                                23

*Woodford v. Garceau*
538 U.S. 202
123 S. Ct. 1398
155 L. Ed. 2d 363 (2003)                                                    4

Ylst v. Nunnemaker
 501 U.S. 797
115 L. Ed. 2d 706 (1991)                                                   10

**Constitutional Provisions**

United States Constitution
    Sixth Amendment                                                         6

**Statutes**

Antiterrorism and Effective Death Penalty Act  ("AEDPA")
Pub. L. No. 104-132, 110 Stat. 1214 (1996)                    4, 6, 11, 12, 23, 24

California Business and Profession Code
        § 4140                                                              2

California Health and Safety Code
    § 1160                                                                 15
    § 11351                                                                 2
    § 11352                                                                13
    § 11359                                                                 2
    § 11360                                                                13
    § 11364                                                                 2
    § 11377(b)(2)                                                           2
    § 11378                                                                 2
    § 11379                                                                13

California Penal Code
    § 32                                                                   16
    § 1191.5                                                               15

 Title 28 United States Code
    § 2254                                                                1, 4
    § 2254(b)(1)(A)                                                        25
    §  2254(d)                                              2, 5, 6, 10, 18, 22, 24
    § 2254(d)(1)                                                          4, 5
    § 2254(d)(2)                                                 4, 5, 11, 23, 24
    § 2254(e)(1)                                                         5, 11

08CV0457

**TABLE OF AUTHORITIES  (continued)**

**Page**

**Court Rules**

California Rules of Court
   rule 4.552(f)                         17

**Other Authorities**

ABA Standards for Criminal Justice, std. 14-1.6
 (2nd ed. 1980) at 14.32             15

CALJIC
   No. 12.02                       16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

08CV0457