1
2
3
4
5
6
7

cal_____

8
9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

10
11 | ERNEST RIVAS LOPEZ,                          )   Civil No. 08cv457 LAB (AJB)
                                                 )
12 |                   Petitioner,                )
    | v.                                          )   Report and Recommendation Re: Denying
13 |                                              )   Petition for Writ of Habeas Corpus and
    | MACK JENKINS, Chief Probation Officer, et   )   Denying Petitioner's Request for
14 | al.                                          )   Evidentiary Hearing
                                                 )
15 |                   Respondents.               )
                                                 )
16
17          Petitioner Ernest Rivas Lopez, a state prisoner represented by counsel, filed a Petition for Writ of

18 | Habeas Corpus pursuant to 28 U.S.C. § 2254, on March 12, 2008.  [Doc. No. 1.]  Petitioner also filed a

19 | Notice of Exhibits in support of his Petition.  [Doc. No. 2.]  On April 22, 2008, Lopez filed a First

20 | Amended Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus.

21 | [Doc. Nos. 5, 6.]  Petitioner asserts that he received ineffective assistance of trial counsel when his

22 | attorney failed to advise him of possible plea bargains that would allow him to avoid the negative

23 | immigration consequences of a conviction for an aggravated felony.  He also claims his trial counsel

24 | was ineffective for failing to investigate possible defenses to present at trial.  Petitioner requests an

25 | evidentiary hearing to resolve the disputed factual issues.   Respondents filed an Answer to Petition for

26 | Writ of Habeas Corpus and a Notice of Lodgment on June 18, 2008.  [Doc. No. 10.]  A Reply [doc. no.

27 | 11] was filed on July 18, 2008, followed by a First Amended Memorandum of Points and Authorities in

28 | Support of Reply [doc. no. 12] on August 6, 2008.  On September 16, 2008, Petitioner filed a Supple-

1   mental Memorandum [doc. no. 14] discussing a recently-decided Ninth Circuit case.  Based upon the

2   Court's review of all papers submitted, and for the reasons set forth below, it is recommended that

3   Lopez's Petition be DENIED.

4                                    ***Procedural History***

5          On May 13, 2005, Petitioner was convicted after a jury trial of (1) possession of cocaine for sale,

6   (2) possession of methamphetamine for sale, (3) possession of marijuana for sale, (4) possession of

7   ketamine, (5) possession of paraphernalia used for narcotics, and (6) unauthorized possession of a

8   hypodermic needle or syringe.  (Lodgment No. 3, Rep.'s Tr. vol. 4, at 283-84, May 13, 2005.)  He was

9   sentenced to five years probation on the condition that he spend 365 days in the county jail.  (Lodgment

10  No. 3, Rep.'s Tr. vol. 5, at 362, June 23, 2005.)  Lopez filed an appeal alleging that the trial court's jury

11  instructions on specific intent relating to the three possession-for-sale counts were erroneous, and the

12  court's order written order granting probation did not accurately reflect the probation terms actually

13  imposed by the judge.  (Lodgment No. 4, Appellant's Opening Br. at 7, 16, People v. Lopez, No.

14  D046705 (Cal. Ct. App. June 2, 2006).)  The California Court of Appeal affirmed the judgment but

15  remanded the case for the trial court to redetermine the probation terms.  (Lodgment No. 7, People v.

16  Lopez, No. D046705, slip op. at 12 (Cal. Ct. App. June 2, 2006).)  Petitioner filed a petition for review

17  in the California Supreme Court, which was denied on August 16, 2006.  (Lodgment No. 8, Pet. for

18  Review, People v. Lopez, No. S144907 (Cal. Aug. 16, 2006); Lodgment No. 9, People v. Lopez, No.

19  S144907, order (Cal. Aug. 16, 2006).)

20         On September 7, 2006, Lopez filed a habeas petition in the San Diego County Superior Court,

21  alleging that his trial counsel rendered ineffective assistance by failing to pursue an "upward plea" that

22  would result in a more severe sentence but would not have the adverse immigration consequences of his

23  convictions for aggravated felonies, and his attorney was also ineffective for failing to investigate and

24  present evidence demonstrating that Petitioner did not possess the drugs with intent to sell.  (Lodgment

25  No. 10, Pet. at 3, 7, In re Lopez, No. SCD187886 (Cal. Super Ct. filed Sept. 7, 2006).)  The court issued

26  an order to show cause, after which the District Attorney's office filed a return and Lopez filed a

27  traverse.  (Lodgment No. 11, In re Lopez, No. SCD187886, Order to Show Cause (Cal. Super. Ct. filed

28  Nov. 3, 2006); Lodgment No. 12, Return, In re Lopez, No. SCD187886 (Cal. Super. Ct. filed Dec. 4,

1  2006); Lodgment No. 13, Traverse, In re Lopez, No. SCD187886 (Cal. Super. Ct. filed Dec. 13, 2006).)

2  On January 24, 2007, the superior court denied the petition, finding that Petitioner's counsel adequately

3  informed Lopez about the immigration consequences of a conviction or guilty plea, and the failure to

4  seek an "upward plea" was not prejudicial because the prosecutors clearly indicated they would not have

5  accepted an upward plea.  (Lodgment No. 14, In re Lopez, No. SCD187886, Order Den. Pet. at 5-7 (Cal.

6  Super. Ct. Jan. 24, 2007).)

7       Petitioner filed a habeas petition in the California Court of Appeal on February 27, 2007,

8  asserting the same two grounds for relief.  (Lodgment No. 15, Pet. at 4-5, In re Lopez, No. D050345

9  (Cal. Ct. App. filed Feb. 27, 2007).)  The petition was denied on March 13, 2007.  (Lodgment No. 16, In

10  re Lopez, No. D050345, slip op. at 2 (Cal. Ct. App. Mar. 13, 2007).)  Lopez also filed a petition in the

11  California Supreme Court, which was summarily denied on February 13, 2008.  (Lodgment No. 17, Pet.,

12  In re Lopez, No. S154133 (Cal. Feb. 13, 2008); Lodgment No. 20, In re Lopez, No. S154133, order

13  (Cal. Feb. 13, 2008).)  Lopez's federal petition was subsequently filed in this Court on March 12, 2008.

14  ***Factual Background***

15       On December 29, 2004, officers with the San Diego Police Department executed a search

16  warrant at Lopez's apartment.  (Lodgment No. 3, Rep.'s Tr. vol. 2, at 15-17, May 11, 2005.)  The

17  officers found a telephone bill and immigration paperwork in Petitioner's name and photographs of

18  Petitioner in the apartment.  (Id. at 19-20, 28-31.)  Drugs were found in several places in the bedroom.

19  Police uncovered a tin box containing four bottles of ketamine under the bed.  (Id. at 20-21.)  A black

20  vinyl pouch containing 14.30 grams of cocaine was found in a plastic organizer bin next to the bed.  (Id.

21  at 72, 75-76.)  Also in the plastic bin, the police found three plastic baggies containing a total of 0.2

22  grams of methamphetamine, four baggies containing 56.06 grams of marijuana, four pipes with

23  marijuana residue, a plastic bag containing eight methamphetamine pipes, and a second bag containing

24  six methamphetamine pipes.  (Id. at 77-80.)  A black and red pouch was found containing syringes and

25  two empty small zip top bags.  (Id. at 81.)

26       A wooden box found on the nightstand held a glass methamphetamine pipe, a plastic straw for

27  snorting drugs, and two plastic containers holding a total of 20.78 grams of methamphetamine.  (Id. at

28  83-84.)  A smaller wooden box on the nighstand held a small bag of marijuana and an empty glass vial.

(Id. at 84.)  Also on the nightstand, the police found a black metal tin containing 2.53 grams of methamphetamine and a digital scale,  (id. at 85), and a silver tin holding two baggies of methamphetamine, totaling 1.46 grams, and three baggies with methamphetamine residue, (id. at 86).  A search of the living room uncovered a tin box containing four glass methamphetamine pipes, a metal pipe, syringes, a digital scale, and empty plastic baggies.  (Id. at 46, 88.)

While the police were searching the apartment, Lopez returned home, accompanied by his friend Richard Mancha.  (Id. at 47-49, 53.)  Petitioner and Mancha both appeared to be under the influence of a controlled substance.  (Id. at 53-55.)  Officer Brown stopped the two men as they were walking up the stairs to the apartment.  While the officer was placing Lopez under arrest for possession of the controlled substances found in his apartment, Mancha dropped the grocery bag he was holding and attempted to run.  (Id. at 55-56.)  Officer Brown searched Petitioner during the arrest and found $280 cash in his pants pocket.  (Id. at 49.)

A police detective testified at trial that based on the manner in which the cocaine, methamphetamine, and marijuana were stored, along with the quantity in the apartment and the associated paraphernalia, his opinion was that the drugs were possessed for sale rather than personal use.  The cocaine had a street value of $1,120 and the methamphetamine had a street value of $1,875.  (Id. at 93-98.)

### ***Standard of Review***

Review of Lopez's Petition is governed by the provisions of 28 U.S.C. § 2254(d), as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 2006).  Federal habeas relief is only available for violations of the Constitution or federal statutes, not for errors of state law.  Hernandez v. Ylst, 930 F.2d 714, 719 (9th Cir. 1991).

AEDPA establishes a "highly deferential standard for evaluating state-court rulings." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)  Under 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West 2006).

A state court's decision may be "contrary to" clearly established Supreme Court precedent in two ways:  (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court decision may involve an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407.  An unreasonable application may also occur "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." Williams, 529 U.S. at 412.

Habeas relief is also available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court." 28 U.S.C. § 2254(d)(2).  In order to satisfy this provision, Petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable.  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

08cv457 LAB (AJB)

### *Discussion*

Petitioner asserts that his trial counsel rendered ineffective assistance by (1) failing to pursue an upward plea to avoid the adverse immigration consequences of a conviction and (2) failing to investigate available defenses to the aggravated felony charges.  (Pet. 6-7.)  He asserts that, in regard to both claims, the state court made an unreasonable determination of the facts under § 2254(d)(2) and the court unreasonably applied clearly-established law under § 2254(d)(1).  (Pet'r's Am. Mem. P. & A. Supp. Pet. 8, 13, 17-18.)  Petitioner requests an evidentiary hearing to resolve the disputed issues of fact.  (<u>Id.</u> at 22.)

The clearly-established federal law applying to ineffective assistance claims is found in <u>Strickland v. Washinton</u>, 466 U.S. 668 (1984).  <u>See</u> <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003).  To prove ineffective assistance under <u>Strickland</u>, Petitioner must first demonstrate that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Strickland</u>, 466 U.S. at 687.  Petitioner must "overcome a strong presumption that counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,' and establish that [counsel's] performance was 'outside the wide range of professionally competent assistance'."  <u>Clabourne v. Lewis</u>, 64 F.3d 1373, 1377 (9th Cir. 1995) (quoting <u>Strickland</u>, 466 U.S. at 690).  In addition, Petitioner must prove that he was actually prejudiced by his counsel's deficient performance.  <u>Strickland</u>, 466 U.S. at 687.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  <u>Id.</u> at 691.  In this context, prejudice means Petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id.</u> at 694.

## I.   Ineffective Assistance Based on Failure to Pursue an Upward Plea

Lopez was granted asylum by the United States Immigration Court in 1999.  (Lodgment No. 16, <u>In re Lopez</u>, No. D050345, slip op. at 1.)  Because Petitioner was convicted of possession for sale of cocaine, methamphetamine, and marijuana, all of which are considered aggravated felonies under federal immigration law, he will lose his asylum status and be subject to deportation.  (<u>Id.</u>)  Petitioner

1   asserts that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel

2   when his attorney failed "to advise Mr. Lopez about potential plea bargains that did not include felonies

3   considered aggravated felonies under federal immigration law – plea bargains that would have avoided

4   the mandatory loss of Mr. Lopez's asylum." (Pet. 6.)  Petitioner claims his attorney should have

5   pursued a plea to a more serious offense, such as offering to sell, transporting, or offering to transport,

6   which would have carried a more severe sentence but would not have resulted in the loss of asylum.  (Id.

7   at 4.)

8           Petitioner's argument is based on People v. Bautista, 115 Cal. App. 4th 229 (Ct. App. 2004), in

9   which the California Court of Appeal held that a habeas petitioner stated a prima facie case of ineffec-

10  tive assistance where his attorney did not pursue a plea to a non-aggravated felony that would have

11  prevented Bautista's mandatory deportation.  Bautista's attorney correctly notified him that a conviction

12  for possession of marijuana for sale would result in deportation, nevertheless, the court reversed

13  Bautista's conviction because his attorney "did not attempt to 'plead upward,' that is pursue a negotiated

14  plea for violation of a greater but nonaggravated offense such as sale, transport, or offer to sell or

15  transport . . . ."  Bautista, 115 Cal. App. 4th at 238.

16          Petitioner presented his ineffective assistance argument to the California Court of Appeal in a

17  petition for habeas corpus.  In support of this claim, Lopez submitted a declaration from Neil Addison

18  Besse, his trial attorney.  (See Lodgment No. 15, Pet. Ex. F, In re Lopez, No. D050345.)  Besse declared

19  that he advised Petitioner a conviction could result in harsh immigration consequences including the

20  loss of his asylum and deportation, and that for the aggravated felony (possession for sale) counts,

21  deportation and exclusion from readmission were mandatory.  (Id. ¶¶ 3-5.)  He declares further,

22  however, that he was not aware Petitioner could avoid mandatory deportation by pleading to a more

23  serious felony, such as offering to sell a controlled substance, which is not an aggravated felony under

24  federal immigration law.  Accordingly, he did not attempt to negotiate an upward plea.  (Id. ¶¶ 7-21.)

25  Besse stated, "I believe I could have negotiated a plea agreement that would have satisfied the

26  government while giving Mr. Lopez a fighting chance in immigration court."  (Id. ¶ 10.)  The appellate

27  court was also presented with a declaration from Lopez, wherein he stated that if his attorney had

28  advised him that only the possession-for-sale counts would result in mandatory deportation and loss of

1   asylum, he would have told his attorney to do whatever was possible to avoid those consequences,

2   including a plea to an offense that carried a longer jail sentence but would not result in deportation.

3   (Lodgment No. 15, Pet. Ex. A, In re Lopez, No. D050345.)

4          The court of appeal denied Lopez's petition because it found Petitioner could not show he was

5   prejudiced by his counsel's failure to pursue an upward plea.  (Lodgment No. 16, In re Lopez, No.

6   D050345, slip op. at 2.)  The court stated, "Even if counsel were ineffective by not pursuing an 'upward

7   plea,' Lopez cannot show he was prejudiced because the People would not have agreed to the plea

8   bargain."  (Id.)  This finding was based on the declarations of Deputy District Attorneys Greg Walden

9   and Kathleen Lewis, which were submitted in opposition to Lopez's habeas petition.  Kathleen Lewis

10  was the Deputy District Attorney from the Case Disposition Unit assigned to Lopez's case.  (See Pet'r's

11  Ex. L [doc. no. 2-13].)  She declared that if Lopez's attorney had offered a plea to transportation or

12  offering to transport or sell narcotics, she would have rejected the offer.  (Id.)  This was reiterated by

13  Deputy District Attorney Greg Walden, the head of the Case Disposition Unit, who oversaw plea

14  bargain negotiations and set the office's disposition policies.  (Pet'r's Ex. M [doc. no. 2-14].)  Both

15  Lewis and Walden "declared they would not have accepted the 'upward plea' because the District

16  Attorney 'do[es] not make special pleas to allow non-citizen defendants to avoid deportation as a

17  consequence of their crimes.'"  (Lodgment No. 16, In re Lopez, No. D050345, slip op. at 2 (alteration in

18  original).)

19         Because the California Supreme Court denied Lopez's habeas petition without citation or

20  comment, (see Lodgment No. 20, In re Lopez, No. S154133, order at 1), this Court must review the

21  California Court of Appeal's decision denying habeas relief.  See Ylst v. Nunnemaker, 501 U.S. 797,

22  801-06 (1991) (holding that where the last state court opinion is a summary denial, the Court must look

23  through that order and review the last reasoned state court opinion).

24     **A.      *§ 2254(d)(2) Unreasonable Determination of the Facts***

25         Petitioner claims the California Court of Appeal's decision involved an unreasonable determina-

26  tion of the facts under 28 U.S.C. § 2254(d)(2).  (Pet'r's Am. Mem. P. & A. Supp. Pet. 8.)  Under §

27  2254(d)(2), "a decision adjudicated on the merits in a state court and based on a factual determination

28  will not be overturned on factual grounds unless objectively unreasonable in light of the evidence

presented in the state-court proceedings." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).  The Ninth

Circuit has recognized several different ways in which a state court can make an unreasonable

determination of the facts under AEDPA.  For example, a court unreasonably determines the facts when

it fails to make a factual finding where it should have, or it makes a finding based on a misapprehension

of the correct legal standard.  <u>Taylor v. Maddox</u>, 366 F.3d 992, 1000-01 (9th Cir. 2004).  Similarly, a

court unreasonably determines the facts when its fact-finding process is defective because the court does

not allow the habeas petitioner to present evidence supporting his claim, it misstates the record, or it

ignores evidence presented by the petitioner.  <u>Id.</u> at 1001.  Lopez asserts the latter type of error – failure

to consider evidence that was properly before the state appellate court.  (<u>See</u> Pet'r's Am. Mem. P. & A.

Supp. Pet. 8.)

When considering Lopez's habeas petition, the California Court of Appeal was presented with a

declaration from Lopez's trial attorney stating that if he had realized a plea to a more serious felony

would avoid mandatory deportation, he would have pursued an upward plea, and he believes he could

have successfully negotiated one.  (Pet'r's Ex. F ¶ 11.)  Mr. Besse submitted a second declaration in

which he indicated that he has negotiated hundreds of pleas with the District Attorney's Office, and

based on his experience, he believes he could have negotiated an upward plea that would have been

acceptable to the District Attorney.[1]  (Pet'r's Ex. G ¶¶ 6-14.)  Lopez argues that the appellate court

"completely disregarded this evidence.  Instead, the court took at face value two competing declarations

from Deputy District Attorneys."  (Pet'r's Am. Mem. P. & A. Supp. Pet. 8.)  He asserts this was an

unreasonable determination of the facts in light of the evidence presented because, under California law,

the court should have ordered an evidentiary hearing to resolve the factual dispute rather than choosing

to believe the prosecutors and disbelieve the defense attorney.  (<u>Id.</u>)

---

[1] It appears that the second Besse declaration, dated December 10, 2006, was not submitted to the California Court of Appeal, because it is not attached as an exhibit to the habeas petition filed in that court.  Nevertheless, the appellate court stated that in reaching its decision, it took judicial notice of the San Diego Superior Court file in case number HC 18635, Petitioner's earlier habeas case in the superior court.  (Lodgment No. 16, <u>In re Lopez</u>, No. D050345, slip op. at 1.)  The December 10, 2006, declaration was submitted to the superior court as an exhibit to Petitioner's traverse.  (Lodgment No. 13, Traverse Ex. A, <u>In re Lopez</u>, No. HC18635.)  Accordingly, the Court presumes that the appellate court had both of Besse's declarations before it when it rendered its decision.

08cv457 LAB (AJB)

1    Petitioner relies heavily on <u>Taylor v. Maddox</u>, 366 F.3d 992 (9th Cir. 2004).  (<u>See</u> Pet'r's Am.

2    Mem. P. & A. Supp. Pet. 10-12.)  In that case, Taylor alleged that his confession was coerced and

3    obtained in violation of <u>Miranda v. Arizona</u>, 451 U.S. 477 (1981), because the police detectives

4    continued to interview him after he repeatedly requested to speak to his attorney and his mother.

5    <u>Taylor</u>, 366 F.3d at 998.  The trial judge conducted a pre-trial evidentiary hearing on Taylor's motion to

6    suppress the confession.  <u>Id.</u>  The court heard testimony from three witnesses:  (1) Taylor, (2) Detective

7    Remine, who was one of two detectives who interrogated Taylor, and (3) Arthur Close, an attorney who

8    spoke to Taylor shortly after the interrogation.  <u>Id.</u> at 998, 1001-06.  During their phone conversation,

9    Taylor had told Close about the interrogation and his confession.  <u>Id.</u> at 1005, 1007 n.11.

10   The trial court denied the suppression motion, treating the factual dispute "as a swearing-contest

11   between Taylor and Remine" and stating that the court believed Remine's testimony over Taylor's.  <u>Id.</u>

12   at 1004.  In its ruling, the court completely failed to mention Close's testimony.  <u>Id.</u>  On appeal after

13   Taylor was convicted, the appellate court also failed to acknowledge that Close has testified at the

14   hearing.  <u>Id.</u> at 1005.  The Ninth Circuit held, "the state courts' failure to consider, or even acknowledge,

15   Close's highly probative testimony casts serious doubt on the state-court fact-finding process and

16   compels the conclusion that the state-court decisions were based on an unreasonable determination of

17   the facts."  <u>Id.</u>  Close's testimony corroborated Taylor's testimony with important details.  <u>Id.</u> at 1006.

18   In finding it was unreasonable for the state courts to ignore the evidence, the Ninth Circuit noted, "A

19   rational fact-finder might discount it or, conceivably, find it incredible, but no rational fact-finder would

20   simply ignore it.  Yet this is precisely what the state courts did in Taylor's case."  <u>Id.</u> at 1006-07.

21   Lopez asserts his case is similar to <u>Taylor</u> because the state appellate court disregarded credible

22   evidence supporting Petitioner's ineffective assistance claim.  Petitioner argues, "It was an unreasonable

23   determination of the facts for the court to state categorically that an 'upward plea' offer would not have

24   been accepted by the District Attorney's Office when the court had before it persuasive evidence that

25   such a plea offer would have been accepted."  (Pet'r's Am. Mem. P. & A. Supp. Pet. 12 (emphasis

26   omitted).)  Contrary to Lopez's assertion, however, the California Court of Appeal did not completely

27   ignore or disregard Mr. Besse's declarations.  The court's opinion includes a short summary of Besse's

28   declarations, including the attorney's statements that he never considered offering an upward plea

1  because he did not know it would avoid negative immigration consequences, but had he known about

2  the possibility of an upward plea (as described by the California Supreme Court in <u>Bautista</u>), he could

3  have negotiated such a plea.  (Lodgment No. 16, <u>In re Lopez</u>, No. D050345, slip op. at 1-2.)

4          The appellate court did not list all of the facts contained in Besse's two declarations, but that

5  level of detail is not required in judicial opinion-writing.  "[T]he state courts are not required to address

6  every jot and tittle of proof suggested to them, nor need they 'make detailed findings addressing all the

7  evidence before [them].'"  <u>Taylor</u>, 366 F.3d at 1001 (quoting <u>Miller-El v. Cockrell</u>, 537 U.S. at 347).

8  Instead,

9          [t]o fatally undermine the state fact-finding process, and render the resulting finding
          unreasonable, the overlooked or ignored evidence must be highly probative and central to
10         petitioner's claim.  In other words, the evidence in question must be sufficient to support
          petitioner's claim when considered in the context of the full record bearing on the issue
11         presented in the habeas petition.

12  <u>Id.</u>

13          Here, Petitioner has not established that the state appellate court made an unreasonable

14  determination of the facts because, rather than simply disregarding the evidence presented by Petitioner,

15  the court found Petitioner's evidence was not sufficient to show Lopez was entitled to habeas relief.

16  Besse stated in his September 6, 2006, declaration, "Had I known [about <u>Bautista</u>] when I was

17  representing Mr. Lopez, I believe I could have negotiated a plea agreement that would have satisfied the

18  government while giving Mr. Lopez a fighting chance in immigration court."  (Pet. Ex. F ¶ 11.)  He

19  further declares, "I did not try to negotiate such a deal because I was not aware that such a plea would

20  have helped Mr. Lopez in immigration removal proceedings."  (<u>Id.</u> ¶ 20.)  All this establishes is that Mr.

21  Besse believed he could get the government to accept an upward plea, and he believes now that he

22  should have attempted to negotiate such a plea.

23          Besse's belief was contradicted by the declarations of Deputy District Attorneys Lewis and

24  Walden, who stated unequivocally that an upward plea would not have been accepted.  (Pet. Ex. L ¶ 6,

25  Ex. M ¶ 10.)  The policies of the District Attorney's Office precluded the prosecutors from accepting

26  special pleas based on a defendant's immigration status.  (Pet. Ex. M ¶¶ 4-5.)  After reviewing the

27  declarations of Lewis and Walden, Mr. Besse completed a second declaration in which he stated that he

28  has "negotiated hundreds of cases, many with Ms. Lewis and Mr. Walden[,]" and based on that

1    experience he believes that he could have convinced the prosecutors to accept an upward plea in this

2    case.  (Pet. Ex. G ¶¶ 6-10.)

3            Petitioner asserts that when presented with this evidence, "[i]t [was] an objectively unreasonable

4    determination of the facts to take four conflicting declarations, all from sworn members of the California

5    Bar, and to adopt one side as the facts."  (Pet'r's Am. Mem. P. & A. Supp. Pet. 8.)  Petitioner's

6    argument is not persuasive.  The appellate court was provided with evidence that Petitioner's attorney

7    believed he could have successfully negotiated an upward plea.  This is not the same as evidence

8    establishing that he could have negotiated an upward plea, but rather it only shows that, based on his

9    speculation, he thinks it would have been possible.  At the same time, the court had evidence establish-

10   ing that Deputy District Attorneys Lewis and Walden would not have accepted an upward plea to assist

11   Lopez in maintaining his asylum status.  When confronted with this evidence, it was not unreasonable

12   for the court to find the prosecutors' declarations to be conclusive.

13           Further, Mr. Besse's own declarations undermine his assertion that he would have been able to

14   negotiate an upward plea.  The attorney admitted that he has never presented a prosecutor with an offer

15   to have a client plead to a more serious offense.  Besse describes this as "a novel approach . . . ."  (Pet.

16   Ex. G ¶ 11.)  Although he declares, "I am not aware of the D.A. ever rejecting such a counteroffer[,]" he

17   fails to provide any information that would lead the Court to believe the D.A. has ever accepted such a

18   counteroffer either.  (Id.)  It is no more than speculation to believe that the prosecutors in Lopez's case

19   would have accepted an upward plea if Petitioner's attorney had offered one.

20           Petitioner also cites Miller-El v. Dretke, 545 U.S. 231 (2005), in support of his Petition.  (Pet'r's

21   Mem. P. & A. Supp. Pet. 9.)  In that case, the Supreme Court found the state court made an unreason-

22   able determination of the facts where it accepted the evidence presented by the prosecutors tending to

23   show race-neutral reasons for striking prospective jurors while disregarding the defendant's evidence

24   tending to show the strikes were motivated by race.  Contrary to Petitioner's argument, however, this

25   case does not support Lopez's Petition.  The Supreme Court did not find an unreasonable determination

26   of the facts in Miller-El v. Dretke simply because the state court was confronted by conflicting evidence,

27   but instead found that the prosecutors' evidence was not credible because the purported race-neutral

28   explanations "simply fail[ed] to explain what the prosecutors did."  Miller-El v. Dretke, 545 U.S. at 260;

1   see also id. at 265.  Thus, the evidence viewed cumulatively was "too powerful to conclude anything but

2   discrimination."  Id. at 265.  In Lopez's case, the California Court of Appeal was confronted with

3   seemingly conflicting evidence, but the court was able to resolve the evidence on the record before it.

4          Lopez further asserts that the court of appeal unreasonably determined the facts in this case

5   because it was required under California law to hold an evidentiary hearing, but the court decided the

6   habeas petition based on the declarations submitted without holding a hearing.  (Pet'r's Am. Mem. P. &

7   A. Supp. Pet. 8; Pet'r's Am. Mem. P. & A. Supp. Reply 8.)  However, a state court does not make an

8   unreasonable determination of the facts by failing to hold and evidentiary hearing where the record

9   before the state court contains sufficient evidence to conclusively establish the disputed facts.  Perez v.

10  Rosario, 449 F.3d 954, 961-62 (9th Cir. 2006) (citations omitted).  "Where there is no likelihood that an

11  evidentiary hearing would have affected the determination of the state court, its failure to hold one does

12  not make such determination unreasonable."  Id. at 962.  As recognized by the Ninth Circuit in Nunes v.

13  Mueller, it is not unreasonable for a state court to make factual findings without holding a hearing when

14  the record before the court demonstrates that the "allegations are entirely without credibility or that the

15  allegations would not justify relief even if proved . . . ."  Nunes v. Mueller, 350 F.3d 1045, 1055 (9th

16  Cir. 2003) (citing United States v. Navarro-Garcia, 926 F.2d 818, 822 (9th Cir. 1991)).

17         It was not unreasonable for the state appellate court to determine that the evidentiary record

18  before it conclusively established the District Attorney's Office would not have accepted an upward plea

19  in Lopez's case.  Cf. Strong v. Johnson, 495 F.3d 134, 139-40 (4th Cir. 2007) (discussing situations

20  where state court appropriately makes credibility determinations from affidavits rather than holding an

21  evidentiary hearing, such as when one affidavit is conclusory or unsupported while the competing

22  affidavit gives a detailed account of events); see also Lambert v. Blodgett, 393 F.3d 943, 965-66 (9th

23  Cir. 2004) (declining to read into AEDPA a requirement that an evidentiary hearing be held before a

24  federal court is required to give deference to a state court's factual determinations).  Accordingly, the

25  state court of appeal's failure to hold an evidentiary hearing did not constitute an unreasonable

26  determination of the facts under AEDPA.

27  //

28  //

**B.**      *§ 2254(d)(1) Unreasonable Application of Federal Law*

"After surviving an intrinsic review [under § 2254(d)(2)] . . ., the state court's factual conclu-sions are then 'dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence.'" Lambert, 393 F.3d at 972 (quoting Taylor, 366 F.3d at 999). Thus, in the present case, the California Court of Appeal's factual findings are presumed to be correct and can only be overturned by this Court if Petitioner presents clear and convincing proof that the findings were in error. See Taylor, 366 F.3d at 999 (citing 28 U.S.C. § 2254(e)(1)). However, only the state court's factual findings are presumed to be correct. Lambert, 393 F.3d at 976. Because ineffective assistance of counsel is a mixed question of fact and law, the Court is not required to presume the correctness of the state appellate court's ultimate conclusions on the performance and prejudice prongs of Strickland. Id. at 977 (citing Strickland, 466 U.S. at 698).

Petitioner asserts that the state court unreasonably applied Strickland to his case by finding Lopez could not have been prejudiced by his attorney's failure to offer an upward plea. (Pet'r's Am. Mem. P. & A. Supp. Pet. 13.) The California Court of Appeal found that even if Lopez's trial counsel had rendered deficient performance, Petitioner could not establish ineffective assistance because he could not establish prejudice. (Lodgment No. 16, In re Lopez, No. D050345, slip op. at 2.) When addressing a claim of ineffective assistance of counsel, the Court need not address both prongs of the Strickland test if the petitioner makes an insufficient showing as to one prong. Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

A habeas petitioner cannot establish prejudice from his counsel's failure to negotiate a particular plea when there is no evidence that the prosecution would have accepted the plea or that the plea would have been acceptable to the trial court. See United States v. Boone, 62 F.3d 323, 327 (10th Cir. 1995); see also Smith v. United States, No. 05-cv-568, 2008 WL 2388122, at *3 (E.D. Tenn. June 9, 2008) (finding no ineffective assistance where evidence showed the government would not have accepted a plea agreement, because counsel cannot be found ineffective for "failing to negotiate a plea agreement that was not available."). That is precisely the situation in Lopez's case. Petitioner cannot demonstrate a reasonable probability that if his attorney had proposed an upward plea to the prosecutors, the plea

1   would have been accepted.  Instead, the declarations from Deputy District Attorneys Lewis and Walden

2   establish that no upward plea would have been accepted.  Accordingly, any attempt by Lopez's counsel

3   to pursue an upward plea would have been futile.  The state court's conclusion was not an unreasonable

4   application of Strickland.

5          Petitioner's argument is based on the California Supreme Court's decision in People v. Bautista,

6   but the present case differs from Bautista in one important way:  In that case, the court was provided

7   with a declaration from an immigration expert who said it was reasonably probable that Bautista's

8   attorney could have negotiated an upward plea, as evidenced by the fact that the expert witness had seen

9   upward pleas accepted in five different cases, two of which the expert handled personally.  Bautista, 115

10  Cal. App. 4th at 240.  There was no evidence submitted to the court contradicting the expert's state-

11  ments.  See id.  Here, however, the evidence before the court of appeal established there was no

12  reasonable probability that an upward plea would have been accepted.  Lopez did not have any evidence

13  that upward pleas had ever been accepted by the San Diego District Attorney's Office in similar

14  circumstances.  More importantly, the government presented unequivocal declarations that an upward

15  plea was not available to Lopez.  This is a significant fact that warrants departure from Bautistia.

16         For these reasons, Petitioner has failed to establish prejudice from his attorney's failure to pursue

17  an upward plea to a more serious offense.  The court of appeal's decision to deny this claim was not

18  based on an unreasonable determination of the facts in light of the evidence presented, nor was it an

19  unreasonable application of clearly established federal law.  Therefore, the Court recommends that

20  Lopez's Petition be DENIED on this ground.

21  **II.   Ineffective Assistance Based on Failure to Investigate**

22         In his second ground for relief, Petitioner claims his trial counsel was ineffective because he did

23  not perform an investigation into Lopez's case, so he was not able to present a defense at trial.  (Pet'r's

24  Am. Mem. P. & A. 14.)  He claims there were witnesses who could have been easily located by Mr.

25  Besse who would have testified that Petitioner did not sell drugs, and indeed many of the drugs in

26  Lopez's apartment did not belong to him.  (Id.)  Petitioner claims that his attorney's failure to investi-

27  gate the case resulted in prejudice because if Mr. Besse had performed an adequate investigation, he

28  would have uncovered evidence that would have made it possible to negotiate a favorable plea bargain,

or evidence that could have been presented at trial in defense to the possession-for-sale counts. (Id. at 15-16.)

When Petitioner presented this argument in a habeas petition to the California Court of Appeal, he provided the state court with the declarations of four of Lopez's friends – Richard Granstaff, Jose Carlos Clark, Carlos F. Estrada, and Richard Mancha. (See Lodgment No. 15, Pet. Exs. B-E, In re Lopez, No. D050345.) Each of these friends stated in their declarations that they never saw Lopez sell drugs at his apartment. They further stated that Petitioner's apartment was a place where all of his friends would go to use drugs. Lopez allowed men to stay at his apartment and store their belongings there, including drugs and paraphernalia, because he did not like to be alone. The four friends all stated they were never contacted by Lopez's attorney, but if they had been contacted, they would have willingly testified at trial on Petitioner's behalf.

The state appellate court rejected this argument, finding that the testimony of these four individuals would not have resulted in a more favorable outcome at trial. (Lodgment No. 16, In re Lopez, No. D050345, slip op. at 2.) The court stated as follows:

> Lopez also claims trial counsel failed to investigate and present evidence that would have shown he was guilty only of possession of drugs, leaving him eligible for relief from deportation. The declarations offered in support of this claim are from addicts who used drugs with Lopez and state, among other things, that they have never seen Lopez sell drugs and believe he has never sold drugs. The proffered evidence does not establish a meritorious defense that would have resulted in a better outcome for Lopez.

(Id.) Thus, the court found that even if his attorney was ineffective, Petitioner could not establish any prejudice, so the habeas petition was denied. (See id.) This is the last reasoned opinion of the state courts.

## A.    § 2254(d)(2) Unreasonable Determination of the Facts

Petitioner asserts that the California Court of Appeal made an unreasonable determination of the facts in light of the evidence presented when it concluded that the testimony of Lopez's four friends would not have resulted in a more favorable outcome at trial. (Pet'r's Am. Mem. P. & A. Supp. Pet. 17.) He claims that because the witnesses' declarations were not rebutted by the government, the appellate court was objectively unreasonable to make this factual determination without holding an evidentiary hearing. (Id.)

1    The court of appeal, however, did not make any express factual findings that can be analyzed

2    under § 2254(d)(2).  As recognized by the Petitioner, there were no unresolved factual questions or

3    competing evidence presented to the state court.  (See Pet'r's Am. Mem. P. & A. Supp. Pet. 17.)

4    Because the Attorney General did not produce evidence rebutting the declarations submitted by Lopez's

5    four friends, there were no factual disputes needing to be resolved between the Petitioner's evidence and

6    the government's evidence.  Rather than making a "factual determination" within the meaning of §

7    2254(d)(2), the appellate court found that based on the facts contained in the witnesses' declarations,

8    there was no reasonable probability that the jury in Lopez's case would have reached a different result.

9    (See Lodgment No. 16, In re Lopez, No. D050345, slip op. at 2.)  This is a legal conclusion that must be

10   reviewed under 28 U.S.C. § 2254(d)(1) rather than (d)(2).

11          **B.      *§ 2254(d)(1) Unreasonable Application of Federal Law*

12          Petitioner asserts that the California Court of Appeal unreasonably applied Strickland by finding

13   Lopez was not prejudiced by his attorney's failure to interview Petitioner's four friends and admit their

14   testimony at trial.  (Pet'r's Am. Mem. P. & A. Supp. Pet. 18, 22.)  Respondent argues, on the other hand,

15   that the state court's conclusion was not unreasonable because Lopez failed to demonstrate his attorney

16   knew of the witnesses before trial, and he failed to show his attorney would have called the witnesses at

17   trial even if he had known about them.  (Resp't's Mem. P. & A. Supp. Answer 18.)

18          Ineffective assistance may be established by an attorney's failure to investigate the facts of his

19   client's case.  "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision

20   that makes particular investigations unnecessary."  Strickland, 466 U.S. at 691.  "[S]trategic choices

21   made after thorough investigation of law and facts relevant to plausible options are virtually unchal-

22   lengeable; and strategic choices made after less than complete investigation are reasonable precisely to

23   the extent that reasonable professional judgments support the limitations on investigation."  Id.

24   Deficient performance can be found where an attorney completely fails to conduct an investigation,

25   because "'counsel can hardly be said to have made a strategic choice when [he] has not yet obtained the

26   facts on which such a decision could be made.'"  Sanders v. Ratelle, 21 F.3d 1446, 1457 (9th Cir. 1994)

27   (emphasis omitted) (quoting United States v. Gray, 878 F.2d 702, 711 (2d Cir. 1989)).

28

                                              17

1    "To prevail on a claim that counsel was ineffective for failing to call a witness, petitioner must

2    identify the witness, state with specificity what the witness would have testified to, and explain how that

3    testimony might have altered the outcome." Gomez v. Adams, 555 F. Supp. 2d 1070, 1086 (C.D. Cal.

4    2008) (citations omitted).  Here, Petitioner has produced the declarations of four of his friends who

5    indicate they were not interviewed by Lopez's attorney, but if contacted, they would have been willing

6    to testify at his trial.  The four potential witnesses each stated in their declarations that they never saw

7    Lopez sell drugs out of his apartment, and they do not believe Petitioner sells drugs.  (Pet'r's Ex. H ¶¶

8    29, 36; Ex. I ¶¶ 11, 23; Ex. J ¶¶ 9, 16-17; Ex. K ¶¶ 15, 25.)  They further indicated that Lopez allowed

9    many people to spend time at his apartment, and he allowed them to store possessions and drugs there.

10   (Pet'r's Ex. H ¶¶ 13-20, 30-31; Ex. I ¶¶ 4-8, 13, 19-20; Ex. J ¶¶ 8, 12, 18; Ex. K ¶¶ 5-8, 11-12.)  Lopez's

11   friends state that people "often left illicit drugs at Ernesto's apartment in the plastic set of drawers so

12   that they could use the drugs at a later time."  (Pet'r's Ex. J ¶ 18.)

13       Nevertheless, none of these potential witnesses provided any specific, exculpatory information.

14   While the declarations establish that Petitioner sometimes allowed people to store their belongings at his

15   apartment, there is no information regarding whether anyone was storing their belongings at Lopez's

16   apartment on the day he was arrested.  There is no testimony demonstrating that particular items found

17   in the apartment – for example the digital scales, the empty ziploc bags, the particular bags of drugs –

18   belonged to anyone other than Petitioner.  This is not a case where the missing testimony "would have

19   altered significantly the evidentiary posture of the case." Brown v. Myers, 137 F.3d 1154, 1157 (9th

20   Cir. 1998) (finding prejudice by counsel's failure to interview several alibi witnesses who would have

21   testified the defendant was with them at the time of the shooting and one witness who saw someone

22   other than defendant run from the crime scene).  The four witnesses' declarations do not provide any

23   specific information about what drugs were stored in Lopez's apartment on or near the day of his arrest

24   or who was storing drugs there.  The witnesses' generalized belief that Lopez did not own the seized

25   drugs and paraphernalia is not sufficient to undermine confidence in the outcome of Petitioner's trial.

26       Lopez asserts that his case is similar to Riley v. Payne, 352 F.3d 1313 (9th Cir. 2003).  In Riley,

27   the defendant was convicted of assault after he shot the victim in alleged self defense. Riley, 352 F.3d

28   at 1316.  Riley argued at trial that he acted in self defense after the victim threatened to shoot him during

a verbal confrontation.  Id.  In his post-conviction petition, Riley asserted that his trial counsel rendered ineffective assistance by failing to interview a witness who was present during the verbal altercation. Id. at 1316-17.  The witness heard the victim threaten to shoot Riley, and he believed it was a serious threat.  Id. at 1318.  The witness ran away before the shooting.  He heard a gunshot and several minutes later Riley met up with him and said, "He tried to shoot me."  Id.  The witness indicated that he was never contacted by Riley's attorney, but if he had been contacted, he would have been willing to testify about what he saw and heard.  Id.  The Ninth Circuit found that Riley was entitled to habeas relief because his attorney rendered deficient performance by failing to interview the witness, and it was reasonably probable that the outcome of the trial would have been different if the jury had heard the witness's testimony.  Id. at 1318, 1321.

Petitioner asserts that, like Riley, there was a reasonable probability he would not have been convicted if the jury had been presented with the testimony of his four friends.  The missing witness's testimony in Riley, however, provided clear and unequivocal statements about the events leading up to the shooting.  The witness could have provided direct, eyewitness testimony corroborating Riley's testimony.  Id. at 1320.  Here, the proposed witnesses' testimony would not have provided such clear corroboration.  Lopez's four friends have not provided concrete details about who was staying at Petitioner's house or storing drugs there near the time of his arrest.  Lopez cannot demonstrate that he was prejudiced by his counsel's performance because the witnesses' generalized and conclusory statements do not create a reasonable probability that the jury would have acquitted Petitioner of the possession-for-sale charges.

Strickland's prejudice inquiry must be made in light of the strength of the government's evidence.  Strickland, 466 U.S. at 696.  "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."  Id.  In Petitioner's case, the prosecution had significant evidence to support the possession-for-sale counts. Detective Norris, a member of the narcotics unit of the police department, testified about the search of Lopez's apartment and the conclusions he drew from the evidence found there.  (See Lodgment No. 3, Rep.'s Tr. vol. 2, at 63.)  Detective Norris testified that both the quantity of the cocaine, methamphet-amine, and marijuana, and the manner in which the drugs were packaged and stored indicated they were

08cv457 LAB (AJB)

possessed for sale.  (Id. at 95-98.)  The police officers found containers with large quantities of each drug, along with smaller bags of each drug in a size suitable for selling on the street, plus empty baggies and digital scales that would be used to measure and divide the drugs further.  The detective testified that, based on his experience, the way the drugs were stored indicated they were possessed for sale, not merely for individual use.  See People v. Carter, 55 Cal. App. 4th 1376, 1378 (Ct. App. 1997) (stating that convictions of possession for sale are often upheld where "experienced officers . . . give their opinion that the narcotics are held for purposes of sale based on such matters as the quantity, packaging and normal use of an individual").

In light of the weight of the government's evidence, the Court cannot find a reasonable probability that the proffered testimony of Lopez's four friends would have changed the outcome of his trial.  Accordingly, the Court recommends that Lopez's Petition be DENIED on this ground.

**III.    Petitioner's Request for an Evidentiary Hearing**

Petitioner asks the Court to hold an evidentiary hearing, asserting that he has colorable claims of ineffective assistance but has not been given the opportunity to develop the factual basis of his claims.  (Pet'r's Am. Mem. P. & A. Supp. Pet. 22.)  Respondent claims that Petitioner's request for an evidentiary hearing is unavailing because the Supreme Court recently overruled Ninth Circuit authority allowing for a federal court to grant an evidentiary hearing where the petitioner has a "colorable claim" for relief.  (Resp't's Mem. P. & A. Supp. Answer 22-24.)  Respondent further asserts, "Lopez cannot show that an evidentiary hearing could enable him to prove that the factual allegations of his Petition, if true, would entitle him to federal habeas relief."  (Id. at 25.)

Respondent argues that the Supreme Court overruled the Ninth Circuit's "colorable claim" test in Schriro v. Landrigan, __ U.S. __, 127 S. Ct. 1933 (2007).  In Schriro, the Supreme Court reversed the Ninth Circuit's determination that the petitioner was entitled to an evidentiary hearing to prove his ineffective assistance claim, finding that the record before the Court contained sufficient evidence to conclude that the petitioner was not prejudiced by his counsel's performance.  Schriro, __ U.S. at __, 127 S. Ct. at 1941-42.  The Court stated, "Landrigan could not demonstrate prejudice under Strickland even if granted an evidentiary hearing."  Id. at __, 127 S. Ct. at 1942.  Contrary to Respondent's assertion, nothing in Schriro indicates that the Supreme Court intended to overrule Ninth Circuit

1   precedent and set a new standard for the granting of an evidentiary hearing.  Instead, the Court held that,

2   applying the prevailing standards to the facts of Landrigan's case, no evidentiary hearing was required

3   because the evidence Landrigan sought to develop "would not have changed the result" of his sentenc-

4   ing.  Id. at __, 127 S. Ct. at 1944.

5        "AEDPA allows for an evidentiary hearing when a petitioner (1) alleges facts, which, if proven,

6   would entitled him to relief; and (2) shows that he did not receive a full and fair hearing in the state

7   court."  Houston v. Schomig, 533 F.3d 1076, 1083 (9th Cir. 2008) (citing 28 U.S.C. § 2254(e)(2);

8   Alberni v. McDaniel, 458 F.3d 860, 873 (9th Cir. 2006)).  "In deciding whether to grant an evidentiary

9   hearing, a federal court must consider whether such a hearing could enable an applicant to prove the

10  petitioner's factual allegations, which , if true, would entitle the applicant to federal habeas relief."

11  Schriro, __ U.S. at __, 127 S. Ct. at 1940 (citing Mayes v. Gibson, 210 F.3d 1284, 1287 (10th Cir.

12  2000)).  The Court is not required to hold an evidentiary hearing where "the record refutes the appli-

13  cant's factual allegations or otherwise precludes habeas relief . . . ."  Id.; see also Baja v. Ducharme, 187

14  F.3d 1075, 1078 (9th Cir. 1999); Totten v. Merkle, 137 F.3d 1172, 1176 (1998).

15       In the present case, the Court finds that an evidentiary hearing is not necessary because Lopez

16  has not presented a colorable claim for relief.  With regard to Petitioner's first ground for relief, the

17  evidence presented to this Court, and the state courts, establishes that a upward plea was not available to

18  Lopez.  Petitioner has not alleged any facts which, if proven, would entitle him to relief on this claim.

19  Further, it is unlikely that an evidentiary hearing would uncover any additional evidence that would

20  establish Lopez was prejudiced by his counsel's performance during the plea bargaining stage of his

21  case.  Petitioner is likewise not entitled to an evidentiary hearing on his second ground for relief because

22  all of the facts alleged by Lopez, taken as true, do not entitle him to habeas relief.  Even if this Court

23  were to accept the testimony of Petitioner's four friends as credible, Lopez still fails to establish

24  prejudice from his counsel's failure to interview these witnesses and introduce their testimony at trial

25  because none of the witnesses could provide any specific information about the drugs that were seized

26  from Lopez's apartment on the day he was arrested.  If they testified consistently with their declarations,

27  it is not reasonably probable that the generalized testimony these witnesses could have provided would

28

1   have resulted in a different verdict.  For these reasons, an evidentiary hearing is not appropriate because

2   it would not yield evidence that would entitle Lopez to habeas relief.[2]

3                                            ***Conclusion***

4          For the reasons set forth above, it is recommended that Lopez's Petition for Writ of Habeas

5   Corpus be DENIED.  This report and recommendation will be submitted to the United States District

6   Judge assigned to this case, pursuant to the provisions of 28 U.S.C. §636 (b)(1) (1988).  Any party may

7   file written objections with the court and serve a copy on all parties by **November 18, 2008**.  The

8   document should be captioned "Objections to Report and Recommendation."  Any reply to the

9   objections shall be served and filed by **December 9, 2008**.  The parties are advised that failure to file

10  objections within the specified time may waive the right to raise those objections on appeal of the

11  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12         IT IS SO ORDERED.

13

14  DATED:  October 14, 2008

15                                          _____

16                                          Hon. Anthony J. Battaglia
                                            U.S. Magistrate Judge
17                                          United States District Court

18

19

20

21

22

23

24

25         [2] After filing his Reply, Petitioner submitted a Supplemental Memorandum [doc. no. 14]
    regarding a recently-decided Ninth Circuit case, Tilcock v. Budge, 538 F.3d 1138 (9th Cir. 2008).  In
26  Tilcock, the Ninth Circuit held that the petitioner was entitled to an evidentiary hearing on his claim of
    ineffective assistance of counsel because his allegations – that his attorney failed to investigate whether
27  eight prior convictions could be used to sentence him as a habitual criminal – stated a colorable claim
    for relief.  Id. at 1145-46.  Tilcock does not change the outcome in Lopez's case, however, because the
28  record evidence demonstrates that Petitioner is not entitled to habeas relief.  Taking Petitioner's
    allegations and true and believing the testimony presented in the witnesses' declarations, Lopez fails to
    state a colorable claim.