# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO RIVAS LOPEZ,<br><br>                     Plaintiff,<br>   vs.<br><br>MACK JENKINS, Chief Probation Officer, et al.,<br><br>                   Defendants. | CASE NO. 08cv0457-LAB (AJB)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

## I.  Introduction

Ernesto Rivas Lopez filed a petition for writ of habeas corpus (the "Petition") in this Court on March 12, 2008.  Pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(d), the Petition was referred to Magistrate Judge Anthony J. Battaglia for a report and recommendation (R&R).  Mr. Lopez was not in custody when he filed the Petition.  Rather, he was, and still is, on probation.  His term of probation is scheduled to expire on June 20, 2010.

## II.  Factual Background

On May 13, 2005, a jury convicted Lopez of (1) possession of cocaine for sale, (2) possession of methamphetamine for sale, (3) possession of marijuana for sale, (4) possession of ketamine, (5) possession of paraphernalia used for narcotics, and (6) unauthorized possession of a hypodermic needle or syringe. He was sentenced to 365 days

in county jail and five years on probation. His Petition raises two ineffective assistance of counsel claims, accusing his attorney, first, of not pursuing an "upward plea" that would have avoided the adverse immigration consequences of an aggravated felony conviction, and second, of failing to investigate possible defenses to the charges that Lopez possessed drugs with the intent to sell them.

## III. Legal Standards

A district court has jurisdiction to review a Magistrate Judge's report and recommendation. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). In other words, "the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

## IV. Discussion

Under 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.

28 U.S.C.A. 2254(d). With two ineffective assistance of counsel claims, this standard leaves the Court with four questions to ask of the California Court of Appeal's decision denying Lopez habeas relief. First and second, was the Court of Appeals' rejection of Lopez's ineffective assistance claim based on his trial counsel's failure to pursue an upward plea an unreasonable application of federal law, and was it an unreasonable determination of the facts in light of the evidence? Third and fourth, was the Court of Appeals' rejection of

Lopez's ineffective assistance claim based on his trial counsel's failure to investigate possible defenses an unreasonable application of federal law, and was it an unreasonable determination of the facts in light of the evidence? The R&R gave a thorough treatment to each question, as did Lopez's objection to the R&R. The Court will take up each question in the same sequence as the R&R.

### A. Ineffective Assistance - Failure to Pursue an Upward Plea

As the R&R explains, Lopez was granted asylum by the United States in 1999, and he stands to lose his asylum status and face deportation because of his conviction for possessing cocaine, methamphetamine, and marijuana for sale. Lopez maintains, however, that he was denied the effective assistance of trial counsel when his attorney failed to advise him of – and failed to pursue – "potential plea bargains that did not include felonies considered aggravated felonies under federal immigration law – plea bargains that would have avoided the mandatory loss of Mr. Lopez's asylum." (Pet. 6.) These bargains are called "upward pleas" because they are pleas to more serious offenses that carry lengthier custodial sentences; the upside is the reduction or elimination of collateral consequences, such as the loss of one's asylum status.

Central to Lopez's claim is the declaration of his trial counsel, Neil Addison Besse, that he didn't attempt to negotiate an upward plea and believes he "could have negotiated a plea agreement that would have satisfied the government while giving Mr. Lopez a fighting change in immigration court." (R&R 7.) Two Deputy District Attorneys, however, submitted declarations in opposition to the Petition in which they testified that they would not have accepted an upward plea in Lopez's case. For example, one of these attorneys, also the head of the Case Disposition Unit of the District Attorney's office, said the District Attorney "do[es] not make special pleas to allow non-citizen defendants to avoid deportation as a consequence of their crimes." (R&R 8.)

The Court of Appeal rejected Lopez's ineffective assistance claim – and without holding an evidentiary hearing – because he could not show he was prejudiced by his counsel's failure to pursue an upward plea. It concluded, "Even if counsel were ineffective

by not pursuing an 'upward plea,' Lopez cannot show we was prejudiced because the People would not have agreed to the plea bargain." (R&R 8.) To reach this conclusion, obviously, the Court of Appeal had to credit the Deputy District Attorneys' declarations above that of Besse. The R&R takes the Court of Appeal's side: "It was not unreasonable for the state appellate court to determine that the evidentiary record before it conclusively established the District Attorney's Office would not have accepted an upward plea in Lopez's case." (R&R 13.)

### 1. § 2254(d)(2) - Unreasonable Determination of the Facts

Lopez argues that "[i]t was objectively unreasonable for the state court to hold the prosecutors' declarations as conclusive when it also had before it sworn, detailed, and contradictory declarations from Mr. Lopez's trial attorney." (Obj. to R&R 4.) If that's so, it would constitute a violation of § 2254(d)(2).

For a state court's factual determinations to violate § 2254(d)(2), they must be objectively unreasonable. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). It is objectively unreasonable, for example, to fail to make an obvious factual finding, to misapprehend or misstate the record with respect to material facts, or to ignore evidence in support of a petitioner's claim. *Taylor v. Maddox*, 366 F.3d 992, 1000-1001 (9th Cir. 2004).

The R&R makes very clear, however, that the Court of Appeal "did not completely ignore or disregard Mr. Besse's declarations." (R&R 10.) To the contrary, the Court of Appeal's opinion summarized the substance of Mr. Besse's declaration and acknowledged his belief that he failed to negotiate an advantageous plea for Lopez. The problem was, Besse's declaration did nothing other than convey his speculative belief that he could have negotiated an upward plea for Lopez. This belief was undercut substantially by the declarations of Deputy District Attorneys "who stated unequivocally that an upward plea would not have been accepted." (R&R 11.) It was not objectively unreasonable for the Court of Appeal to reach the conclusion that the latter declarations trumped the former. Lopez argues that "[t]he speculation of prosecutors should not be accorded conclusory weight while Mr. Besse's declarations are given none." This is not what happened. First, the prosecutors'

statements weren't speculative; they were statements of the official policy of the District Attorney. Second, Besse's declarations weren't given zero weight. Rather, they were considered by the Court of Appeal and ultimately found to be unpersuasive given the competing declarations submitted by the Deputy District Attorneys. This finding was not objectively unreasonable.

It is also an "unreasonable determination" of the facts, and therefore a violation of § 2254(d)(2), for a state court to "make[] evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence." *Taylor*, 366 F.3d at 1001. Much of Lopez's Petition, as well as his objection to the R&R, relies upon this principle. He accuses the Court of Appeal and the R&R, for example, of "draw[ing] credibility findings from dueling declarations (i.e., sworn declarations from members of the bar) without resolving those conflicting declarations at an evidentiary hearing." (Obj. to R&R 2.)

Lopez concedes that a state court can make a credibility determination when faced with sworn declarations that are in conflict, but only "when the petitioner's allegations are so incredible and illogical that they could not possibly be true." (Obj. to R&R 3.) Lopez's allegations, he follows up, don't fit this description. To the contrary:

> They are not so fantastical that they could not possibly be true. Moreover, they are supported by the detailed, sworn, declarations of Mr. Besse – a member of the bar with a sworn duty of honesty to the court. Mr. Besse's declarations were not cryptic, nor conclusory, nor implausible. They were detailed and based on Mr. Besse's direct experience 'negotiat[ing] hundreds of cases, many with [the Deputy District Attorneys]'

(Obj. to R&R 4.) The Court questions whether Lopez isn't exaggerating the correct legal standard here, that is, whether a state court can make a factual determination without an evidentiary hearing only when a petitioner's allegations "could not possibly be true." He relies heavily on *Perez v. Rosario*, 449 F.3d 954 (9th Cir. 2006), in which the Ninth Circuit held that evidentiary hearings "are unnecessary where the allegations are said to be incredible in light of the record, or, which is much the same thing, when the record already before the court is said to establish a fact completely." *Id*. at 961. However, the preceding sentence in the *Perez* decision notes that "evidentiary hearings and similar judicial processes

are unnecessary in the unusual case where the allegations to be proven at the hearing are extremely unlikely." *Id.* It goes on to cite another habeas case, *Davis v. Woodford*, 384 F.3d 628 (9th Cir. 2004) in which an evidentiary hearing was denied because "petitioner's proffered evidence was flimsy." *Id.* The Court is very comfortable with the conclusion that it is extremely unlikely that Besse could have negotiated an upward plea for Lopez, as well as the conclusion that Besse's declaration to the contrary is "flimsy." "Where there is no likelihood that an evidentiary hearing would have affected the determination of the state court, its failure to hold one does not make such determination unreasonable." *Id.* at 962.

Lopez is not entitled to an evidentiary hearing unless it would enable him to prove certain factual allegations that, if true, would entitle him to habeas relief. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). If the record refutes those allegations, however, no evidentiary hearing is required. *Id.* Lopez's allegation that his attorney failed to negotiate an upward plea, and *could have done so*, was sufficiently refuted by the Deputy District Attorneys' declarations that, as a matter of policy, the District Attorney doesn't accept special pleas because of a defendant's immigration status. The R&R concluded that "[i]t was not unreasonable for the state appellate court to determine that the evidentiary record before it conclusively established the District Attorney's Office would not have accepted an upward plea in Lopez's case." (R&R 13.) The Court agrees, and Lopez's objection to the R&R is **OVERRULED**.

### 2. § 2254(d)(1) - Unreasonable Application of Federal Law

The above discussion addresses the reasonableness of the Court's of Appeal's factual determination that Lopez's counsel could not have negotiated an upward plea for his client, and therefore was not ineffective. This went to the availability of habeas relief under § 2254(d)(2). Lopez may also be entitled to habeas relief, however, if the Court of Appeal's opinion was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1). A state court's decision may be contrary to established Supreme Court precedent in two ways, as the R&R observes: (1) "if the state court applies a rule that

contradicts the governing law set forth in [the Supreme Court's] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrive at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

The Court looks to *Strickland v. Washington*, 466 U.S. 668 (1984) for the clearly established federal law relating to ineffective assistance of counsel claims. Under *Strickland*, Lopez must show that his lawyer made serious errors and that he was actually prejudiced by them. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. It is permissible to skip straight to the prejudice question "[i]f it is easier to dispose of an ineffectiveness claim on [that] ground." *Id.* at 697. This is precisely what the Court of Appeal did, finding that "even if Lopez's trial counsel had rendered deficient performance, Petitioner could not establish ineffective assistance because he could not establish prejudice." (R&R 14.)

Lopez argues that a state court's decision is unreasonable if it "makes an unreasonable assumption about critical facts or commits a clear error regarding the evidence," essentially recycling his arguments under § 2254(d)(2) as arguments under § 2254(d)(1). (Obj. to R&R 6.) That may be true, but the Court has just considered and rejected the underlying argument that the Court of Appeal made an unreasonable factual determination in light of the evidence. This being the case, the Court of Appeal did not unreasonably apply *Strickland* in finding that Lopez wasn't prejudiced by his counsel's failure to negotiate an upward plea.

Finally, Lopez argues that his case is "not materially distinguishable" from *People v. Bautista*, 115 Cal. App. 4th 229 (Ct. App. 2004), a case in which the California Court of Appeal held that a habeas petitioner stated a claim for ineffective assistance of counsel when his attorney didn't pursue an upward plea. The R&R makes the differences between *Bautista* and this case clear: First, the petitioner submitted reliable expert testimony that an upward plea would have been accepted, and second, no contradictory evidence was

submitted. The reverse is true in this case: Lopez's counsel merely believes he could have negotiated an upward plea, and the Respondent submitted reliable, testimonial evidence that an upward plea would not have been accepted. *Bautista* is easily distinguishable from this case, and the Court of Appeal's rejection of Lopez's ineffective assistance claim did not violate clearly established federal law. Lopez's objection to the R&R on this point is **OVERRULED**.

### B.     Ineffective Assistance - Failure to Investigate

In addition to his counsel's alleged failure to negotiate an upward plea, Lopez also claims his counsel was ineffective for failing to locate witnesses – four friends of Lopez – who would have testified that they never saw Lopez sell drugs, and that many of the drugs found in Lopez's apartment did not belong to him but to others who kept the drugs there for their own use. These friends submitted declarations to the Court of Appeal, which was not persuaded by them:

> Lopez also claims trial counsel failed to investigate and present evidence that would have shown he was guilty only of possession of drugs, leaving him eligible for relief from deportation. The declarations offered in support of this claim are from addicts who used drugs with Lopez and state, among other things, that they have never seen Lopez sell drugs and believe he has never sold drugs. The proffered evidence does not establish a meritorious defense that would have resulted in a better outcome for Lopez.

(Lodgment No. 16.) Lopez calls this determination "conclusory," and argues it "was patently unreasonable in light of the evidence presented" as well as "a clearly unreasonable application of Strickland." (Am. Mem. in Supp. of Pet. 17-18.)

#### 1.     § 2254(d)(2) - Unreasonable Determination of the Facts

The Court agrees with the R&R that, in fact, the Court of Appeal made no factual determination that is reviewable under § 2254(d)(2), but rather reached the legal conclusion that Lopez's jury would not have reached a different result had his counsel called as witnesses his friends who submitted declarations along with the Petition. The Court of Appeal concluded that "[t]he proffered evidence does not establish a meritorious defense"; that is a legal determination rather than a factual one. Thus, there is no need to review the

Court of Appeal's decision under § 2254(d)(2). Lopez's objection that the Court of Appeal *did* make a factual determination is **OVERRULED**.

### 2. § 2254(d)(1) - Unreasonable Application of Federal Law

As above, the question here is whether the Court of Appeal misapplied the *Strickland* standard to Lopez's claim that his counsel was ineffective for not investigating witnesses with allegedly exculpatory information. Lopez argues that "[t]he state court failed to recognize a reasonable probability that the outcome of the trial would have been different if counsel's performance had been effective." (Obj. to R&R 9.)

"[Counsel] has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. A trial counsel is ineffective "where he neither conducted a reasonable investigation nor made a showing of strategic reasons for failing to do so." *Avila v. Galaza*, 297 F.3d 911, 918-19 (9th Cir. 2002) (internal quotations omitted). "A lawyer who fails adequately to investigate, and to introduce into evidence, records that demonstrate his client's factual innocence, or that raise sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999).

As with Lopez's ineffective assistance claim based on his counsel's failure to negotiate an upward plea, the Court of Appeal skipped straight to the prejudice prong of the *Strickland* analysis, finding that the evidence Lopez believes a diligent investigation would have yielded would not have changed the result in his case. To be thorough, the Court is not even convinced that Lopez's counsel was deficient in the first instance. Lopez says his counsel "did no investigation whatsoever of the charges against [him]." (Am. Mem. in Supp. of Pet. 14.) There is no evidence of that; Lopez's counsel certainly doesn't admit, in the declaration he submitted along with the Petition, that he didn't investigate Lopez's case. Nor does Besse admit that he only met with Mr. Lopez once, as the Petition suggests – a fact that, even if true, would not by itself establish that he was ineffective. And it may not be true that Besse "only met with Mr. Lopez on one occasion." (Am. Mem. in Supp. of Pet. 14.) Lopez's own declaration reads differently: "When I was in the Central Jail in May and June

of 2005, leading up to my trial, my trial attorney visited me only one time." (Lopez Decl. ¶ 9.) Finally, there is nothing to suggest, other than Lopez's own blanket assertions, that his attorney knew, should have known, or could have known that Lopez's friends were willing to testify that he was not a drug dealer. Lopez argues that "[d]espite numerous, easily located witnesses, Mr. Lopez's trial attorney failed to investigate and present witnesses in Mr. Lopez's favor to show the jury that the drugs were not possessed for sale," but that is all Lopez argues. (Am. Mem. in Supp. of Pet. 14.) In other words, somewhere out there were witnesses who were willing to testify in Lopez's defense, and Besse failed to track them down and enlist their testimony.

However, while the declaration submitted by Besse is very up front about his failure to negotiate an upward plea for Lopez, it is utterly silent on the question whether he properly investigated Lopez's case. The mere claim by Lopez, "If my attorney had properly advised me . . . I could have presented numerous witnesses to testify on my behalf" merely begs the question. (Lopez Decl. ¶ 23.) It is likewise insufficient for Lopez's appellate counsel to claim, "Given that the undersigned obtained this exculpatory evidence with minimal effort, an investigation by trial counsel would have been reasonably likely to uncover it." (Am. Mem. in Supp. of Pet. 15.) "A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Lopez, however, takes a conclusory, results-oriented approach to his ineffective assistance of counsel claim by identifying no particular acts or omissions on Besse's part, but rather the mere fact that Besse didn't uncover allegedly exculpatory evidence, from which he reasons backwards to the conclusion that an investigative failure *must* be to blame. This will not do. The Court is therefore inclined to reach a conclusion that the Court of Appeal did not, namely that there is insufficient evidence that Lopez's counsel was ineffective in the first instance, before even arriving at the question whether Lopez was prejudiced by Besse's alleged ineffectiveness.

Now comes the question of prejudice. According to Lopez, "It is virtually certain that a result more favorable to Mr. Lopez would have occurred if trial counsel had followed his

duty to investigate." (Am. Mem. in Supp. of Pet. 15.)  There appear to be two senses in which Lopez believes he was prejudiced by Besse's failure to better investigate his case. First, "readily available evidence would have provided a factual basis for Mr. Lopez to 'plead up' . . . ." (Am. Mem. in Supp. of Pet. 15.)  The Court has already rejected that argument; an upward plea was simply not in the cards in this case.  Second, "the evidence uncovered by an investigation would have provided a strong defense to the 'possession for sale' counts . . . making it reasonably probable that Mr. Lopez would have been acquitted of those charges had he gone to trial." (Am. Mem. in Supp. of Pet. 16.)  Lopez explains: "Trial counsel would have had several witnesses to call on Mr. Lopez's behalf; those witnesses would have testified that the drugs found were theirs, and that Mr. Lopez did not sell drugs." (Am. Mem. in Supp. of Pet. 16.)

This misrepresents the substance of the declarations submitted by Lopez's friends, each of whom testified they never *saw* Lopez sell drugs in his home, and had no *knowledge* of him selling drugs. (Granstaff Decl. ¶¶ 29, 36; Clark Decl. ¶¶ 11, 23; Estrada Decl. ¶¶ 9, 16; Mancha Decl. ¶¶ 15, 25.)  These statements, which leave wide open the possibility that Lopez sold drugs in and outside his home, are not very revealing.  Just as important, none of Lopez's friends testified in their declarations that the drugs found in Lopez's apartment when he was arrested belonged to them.  They simply said that they and others had left drugs in Lopez's home in the past. (Granstaff Decl. ¶¶ 16, 18, 20, 31; Clark Decl. ¶¶ 6, 8, 13, 20; Estrada Decl. ¶¶ 12, 18; Mancha Decl. ¶¶ 7, 8, 12, 17, 22.)  The R&R reasoned

> none of these potential witnesses provided any specific, exculpatory information.  While the declarations establish that petitioner sometimes allowed people to store their belongings at his apartment, there is no information regarding whether anyone was storing their belongings at Lopez's apartment on the day he was arrested.  There is no testimony demonstrating that particular items found in the apartment – for example the digital scales, the empty ziploc bags, the particular bag of drugs – belonged to anyone other than Petitioner.  This is not a case where the missing testimony 'would have altered significantly the evidentiary posture of the case.' Brown v. Myers, 137 F.3d 1154, 1157 (9th Cir. 1998)

(R&R 19.)  The Court agrees.  On the basis of the declarations submitted by his friends, Lopez cannot show that he was prejudiced by Besse's failure to interview them.  Their

statements are general and conclusory, and as such do not meaningful increase the odds that the jury would have acquitted Lopez of possessing drugs with the intent to sell them.

Finally, the Court is not persuaded that the Court of Appeal unreasonably applied *Strickland* in finding no prejudice in Besse's alleged failure to investigate. Lopez relies heavily on *Riley v. Payne*, 352 F.3d 1313 (9th Cir. 2003). The R&R thoroughly distinguishes *Riley*, and the Court approves its analysis. Lopez's objection is **OVERRULED**.

### 3. Request for Evidentiary Hearing

The final consideration for the Court is whether Lopez is entitled to an evidentiary hearing on the ineffective assistance claim based on his counsel's failure to investigate. As the Court noted above, an evidentiary hearing is only appropriate if it would enable Lopez to prove certain factual allegations that would entitle him to habeas relief. *Schriro*, 550 U.S. at 474. "AEDPA allows for an evidentiary hearing when a petitioner (1) alleges facts, which, if proven, would entitle him to relief; and (2) shows that he did not receive a full and fair hearing in the state court." *Houston v. Schomig*, 533 F.3d 1076, 1083 (9th Cir. 2008). The Report and Recommendation observed that if Lopez's alleged witness "testified consistently with their declarations, it is not reasonably probable that the generalized testimony these witnesses could have provided would have resulted in a different verdict." (R&R 21-22.) Lopez argues that the R&R mistakes the assertions in the witness declarations he submitted for the actual facts alleged in the Petition: "When a district court determines whether a petitioner has presented a colorable claim for relief and thus is entitled to an evidentiary hearing, the court must look to the facts alleged in the petition, not purely to evidence presented in support of that petition." (Obj. to R&R 9.)

That is a fair enough point, but here the facts alleged in the petition are subtle misrepresentations of the witnesses' declaration statements. Lopez says his trial counsel, had he performed a diligent investigation, "would have had several witnesses to call on Mr. Lopez's behalf; those witnesses would have testified that the drugs found were theirs, and that Mr. Lopez did not sell drugs." (Obj. to R&R 16.) However, the witness declarations submitted by Lopez say no such thing. The Court doesn't *just* ask whether Lopez's alleged

facts, if true, would entitle him to habeas relief; it also considers the likelihood that they can be proven to be true in the first instance. *Schriro*, 550 U.S. at 474. Given the lack of specific, exculpatory information in the witness declarations – information, that is, that would substantially alter the evidentiary posture of the case, as the R&R noted – the Court finds that no evidentiary hearing is justified. Lopez's request for one is **DENIED**.

**IV.    Conclusion**

Having reviewed the record de novo and given fair consideration to Lopez's arguments and objections, the Court finds the objections must be **OVERRULED**, and the R&R is **ADOPTED** in its entirety.

**IT IS SO ORDERED**.

DATED: December 10, 2009

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge